## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SUSAN FOX, individually, and on behalf of all others similarly situated,

                Plaintiff,

    v.

TIME, INC., a Delaware Corporation,

                Defendant.

Case No. 4:12-cv-14390-GAD-MKM

[Hon. Gershwin A. Drain]

[Magistrate Judge Mona K. Majzoub]

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

Henry M. Scharg – P28804
LAW OFFICE OF HENRY M. SCHARG
302 W. Main Street
Northville, Michigan 48167
Tel: (248) 596-1111
Fax: (248) 596-1578
hmsattyatlaw@aol.com

Ari J. Scharg
EDELSON MCGUIRE, LLC
350 N. LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
ascharg@edelson.com

*Counsel for Plaintiff Susan Fox
and the Putative Class*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................1

FACTUAL BACKGROUND .............................................................................2

    *Michigan's Video Rental Privacy Act* ...........................................................2

    *Time Sells Its Michigan Customers' Private Magazine Subscription*
    *Information* ...................................................................................................3

    *Fox Never Consented to Time's Disclosure of Her Personal Reading*
    *Information* ...................................................................................................4

ARGUMENT .....................................................................................................4

    I.     TIME'S ATTACKS ON FOX'S STANDING FALL FLAT ...........................4

          A.     Fox Has Standing To Sue For Time's Violations Of The VRPA
                Because Fox Was Identified In Records Disclosed By Time
                Without Her Consent .....................................................................5

          B.     Time's Article III Standing Arguments Seriously Misunderstand
                The Instant Case (And Controversy) ..............................................7

          C.     Fox Sufficiently Pleads Economic Loss—Not That Doing So Was
                Required To Establish Either Statutory Or Article III Standing ........9

    II.    FOX PLEADS A VRPA CLAIM—THE ACT COVERS MAGAZINES
          AND TIME CAN'T AVAIL ITSELF OF THE STATUTE'S "DIRECT
          MARKETING" DEFENSE ...........................................................11

          A.     Time Can't Overcome The Fact That The VRPA's Plain
                Language Expressly Applies To All "Written Materials," Which
                Includes Magazines .....................................................................11

          B.     Time's Cherry-Picking Of The Legislative History Ignores That
                Michigan's Legislature Provided Greater Privacy Protections
                Than The Federal VPPA ...............................................................13

          C.     Time's Supposed First Amendment Argument Is Devoid Of Merit,
                 And Time's Choice To Include It Undermines The Credibility Of
                Its Other Arguments ....................................................................14

          D.     Time Can't Hide Behind The Act's Direct Marketing Defense..........16

                1.     Time's direct marketing defense can't be adjudicated on a
                          motion to dismiss...............................................................16

i

       **2.**    **Time's disclosures weren't exclusively for direct marketing purposes** ........................................................................17

       **3.**    **Time hasn't shown that it provided timely or adequate notice under the Act** .........................................................17

**III.**    **FOX SUFFICIENTLY STATES A CLAIM FOR BREACH OF CONTRACT, WHICH SHE SPECIFICALLY ALLEGES INCORPORATED THE VRPA** ...........................................19

**IV.**    **TIME'S ATTACK ON FOX'S UNJUST ENRICHMENT CLAIM IGNORES THE COMPLAINT'S PLAIN LANGUAGE** ...............................19

**CONCLUSION** ..............................................................................20

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).................................................................4

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) ............................................8

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992)...........................................12

*Doe v. Chao*, 540 U.S. 614 (2004).........................................................................6

*IMS v. Sorrell Health, Inc.*, 131 S. Ct. 2653 (2011) .....................................15, 16

*Lamie v. U.S. Trustee*, 540 U.S. 526 (2005) .......................................................11

*Raines v. Byrd*, 521 U.S. 811 (1997) ..................................................................8, 9

*U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991)..................................................8

*Vermilye & Co. v. Adams Express Co.*, 88 U.S. 138 (1874) ...............................13

*Warth v. Seldin*, 422 U.S. 490 (1975)...................................................................8

**United States Circuit Court of Appeals Cases**

*Beaudry v. Telecheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009),
    *cert. denied* 130 S. Ct. 2379 (2010)........................................................5, 9 n.3

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009) ..........................16

*In re Carter*, 553 F.3d 979 (6th Cir. 2009) ..........................................7, 8, 9, 9 n.3

*Klimas v. Comcast Cable Commc'ns., Inc.*, 465 F.3d 271 (6th Cir. 2006) ...........5

*Newton v. Merill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266 (3d Cir. 1998) ................13

*Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003)...........................................13

*Pfeil v. State Street Bank & Trust Co.*, 671 F.3d 585 (6th Cir. 2012) ..........16, 17

*Ohio Citizen Action v. City of Englewood*, 671 F.3d 564 (6th Cir. 2012) ...........7

*Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012)................................9, 20

*Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535 (7th Cir. 2012) .............5, 6

*Tetro v. Elliott Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*,
173 F.3d 988 (6th Cir. 1999) ................................................................14

*Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199 (4th Cir. 2009)............................................6

*White v. U.S.*, 601 F.3d 545 (6th Cir. 2010) ................................................................4

**United States District Court Cases**

*Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855 (N.D. Cal. 2011)............................................9 n.4

*Deacon v. Pandora Media, Inc.*,
No. 11-cv-04674 SBA, 2012 WL 4497796 (N.D. Cal. Sept. 28, 2012) ....................6, 7, 8

*Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010)..............................................10

*Gasperoni v. Metabolife, Int'l Inc.*,
No. 00-cv-71255, 2000 WL 33365948 (E.D. Mich. Sept. 27, 2000) ................................12

*In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) ................................10

*In re Hulu Privacy Litig.*,
No. 11-cv-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ...............................17

*In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299 (E.D.N.Y. 2005) ....................10

*Kinder v. United Bancorp Inc.*,
No. 11-cv-10440, 2012 WL 4490874 (E.D. Mich. Sept. 28, 2012) ....................................5

*Kirch v. Embarq Mgmt. Co.*,
No. 10-cv-02047-JAR, 2011 WL 3651359 (D. Kan. Aug. 18, 2011) ........................18 n.6

*Murray v. Time, Inc.*,
No. C 12-00431 JSW, 2012 WL 3634387 (N.D. Cal. Aug. 24, 2012) ............................10

*Redman Agency, Inc. v. Allstate Ins. Co.*,
No. 1:89-cv-114, 1991 WL 526300 (W.D. Mich. Oct. 30, 1991) ....................................19

*Vinton v. CG's Prep Kitchen & Cafe*,
No. 1:09-cv-707, 2010 WL 748221 (W.D. Mich. Mar. 2, 2010) ........................................7

*Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011) ................................9

**State Court Cases**

*In re Acquisition of Land for Virginia Park Neighborhood Development Program,
Michigan A-4-2*, 283 N.W. 2d 771 (Mich. Ct. App. 1979)............................................9, 10

*Ziegler v. Witherspoon,* 49 N.W.2d 318 (Mich. 1951) ................................................19

**United States Statutes**

Fair Credit Reporting Act, 15 U.S.C. § 1681n ................................................5

Video Privacy Protection Act, 18 U.S.C. § 2710 ................................................2

**State Statutes**

M.C.L. §§ 55.263−67 ................................................12

M.C.L. §§ 256.623−27 ................................................12

M.C.L. § 338.3843 ................................................12

M.C.L. § 429.351 ................................................12

M.C.L. § 442.351a ................................................12

Michigan Consumer Protection Act, M.C.L. § 445.911 ................................................7

Michigan Public Safety Solicitation Act, M.C.L. § 14.321 ................................................7 n.2

Michigan Regulation of Collection Practices Act, M.C.L. § 445.257 ................................................7 n.2

Michigan Rental-Purchase Agreement Act, M.C.L. § 445.964 ................................................7 n.2

Video Rental Privacy Act, M.C.L. §§ 445.1711−15 ................................................*passim*

**Federal and Local Rules**

Civ. L.R. 9.1(b) ................................................15

**Legislative History Materials**

*Privacy: Sales, Rentals of Videos, etc.*, House Legislative Analysis Section,
  H.B. No. 5331 (Jan. 20, 1989) ................................................1, 2, 3, 14

Video and Library Privacy Protection Act, S. 2361, 100th Cong. (1988) ................................................2

**Secondary Sources**

Black's Law Dictionary (9th ed. 2009) ................................................12, 13

Expert Witness Report of Dr. Serge Egelman, Ph.D.,
*In re Netflix Privacy Litig.*, No. 5:11-cv-00379-EJD,
Dkt. No. 191-2, Ex. 2 (N.D. Cal. Oct. 31, 2012) ......................................................10 n.5

*Frequently Asked Questions*, TIME.com,
http://www.time.com/time/faq/#magazine (last accessed Dec. 24, 2012)........................13

*Retail*, Merriam-Webster Online Dictionary,
http://www.merriam-webster.com/dictionary/retail (last accessed Dec. 24, 2012)...........13

## STATEMENT OF ISSUES PRESENTED

Should the Court deny Defendant's Motion to Dismiss Plaintiff's claims under Rules 12(b)(1) and 12(b)(6) because Michigan's Video Rental Privacy Act confers privacy rights, the invasion of which are sufficient to confer standing both statutory and constitutional standing?

Plaintiff Answers: Yes.

Should the Court deny Defendant's Motion to Dismiss Plaintiff's claims under Rules 12(b)(1) and 12(b)(6) because Plaintiff alleges that Defendant's unlawful conduct caused her economic harm, thereby providing an additional basis for statutory and constitutional standing?

Plaintiff Answers: Yes.

Should the Court deny Defendant's motion to dismiss Plaintiff's claim under the Video Rental Privacy Act because the statute, by its plain text, applies to the disclosure of magazine subscription lists, and because Defendant cannot meet the requirements of the Video Rental Privacy Act's "direct marketing defense"?

Plaintiff Answers: Yes.

Should the Court deny Defendant's motion to dismiss Plaintiff's state common law claims under Rule 12(b)(6) because the claims are adequately pled?

Plaintiff Answers: Yes.

**CONTROLLING AND MOST IMPORTANT AUTHORITY**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *White v. U.S.*, 601 F.3d 545 (6th Cir. 2010).

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963); *U.S. Dep't of State v. Ray*, 502 U.S. 164 (1991); *Warth v. Seldin*, 422 U.S. 490 (1975); *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702 (6th Cir. 2009), *cert. denied* 130 S. Ct. 2379 (2010); *In re Carter*, 553 F.3d 979 (6th Cir. 2009); *Klimas v. Comcast Cable Commc'ns., Inc.*, 465 F.3d 271 (6th Cir. 2006); *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564 (6th Cir. 2012); *Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012); *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535 (7th Cir. 2012); *Van Alstyne v. Elec. Scriptorium, Ltd.,* 560 F.3d 199 (4th Cir. 2009); *Deacon v. Pandora Media, Inc*., No. 11-cv-04674 SBA, 2012 WL 4497796 (N.D. Cal. Sept. 28, 2012); *Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010); *Kinder v. United Bancorp Inc*., No. 11-cv-10440, 2012 WL 4490874 (E.D. Mich. Sept. 28, 2012).

*In re Acquisition of Land for Virginia Park Neighborhood Development Program, Michigan A-4-2*, 283 N.W. 2d 771 (Mich. Ct. App. 1979); *Doe 1 v. AOL, LLC.*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010).

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992); *Lamie v. U.S. Trustee*, 540 U.S. 526 (2004); *See Vermilye & Co. v. Adams Express Co.*, 88 U.S. 138 (1874); *Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003); *Tetro v. Elliott Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*, 173 F.3d 988 (6th Cir. 1999); *Gasperoni v. Metabolife, Int'l Inc*., No. 00-cv-71255, 2000 WL 33365948 (E.D. Mich. Sept. 27, 2000).

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009); *Pfeil v. State Street Bank & Trust Co.*, 671 F.3d 585 (6th Cir. 2012); *In re Hulu Privacy Litig.*, No. 11-cv-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012).

*Ziegler v. Witherspoon,* 49 N.W.2d 318 (Mich. 1951); *Redman Agency, Inc. v. Allstate Ins. Co.,* 1:89-cv-114, 1991 WL 526300 (W.D. Mich. Oct. 30, 1991).

**PRELIMINARY STATEMENT**

This case challenges Defendant Time, Inc.'s ("Time") systematic practice of selling its customers' detailed magazine purchase records—without permission—to data mining companies and, really, anybody else willing to pay for them, in violation of Michigan's Video Rental Privacy Act, M.C.L. §§ 445.1711–15 ("VRPA" or the "Act"). The VRPA recognizes that "a person's choice in reading, music, and video entertainment is a private matter," and, as such, prohibits companies from disclosing their customers' reading, listening, and video viewing records without consent. *See Privacy: Sales, Rentals of Videos, etc*., House Legislative Analysis Section, H.B. No. 5331 (Jan. 20, 1989) (attached hereto as Exhibit A). Acting as though it doesn't exist, however, Time systematically sells its customers' detailed magazine purchase records.

Plaintiff Susan Fox ("Fox" or "Plaintiff"), a subscriber to *TIME* and some of Defendant's other magazines, is just one customer whose information Time sold without consent. Rather than bring its conduct into compliance with the VRPA, Time attacks Fox's Complaint with a scattershot of often overlapping arguments, all of which miss their targets. Time asserts that: (1) Fox has no statutory standing because she supposedly didn't suffer actual damages from the disclosure, (2) Fox lacks Article III standing, (3) the VRPA (amazingly) doesn't apply to magazines, (4) Time's disclosures fall within the Act's "direct marketing" defense, (5) the breach of contract claims fail for a lack of detail and the absence of any damages, and (6) that there's nothing unjust about Time profiting from its unlawful conduct. Failing all this, Time makes the remarkable argument that it cannot be liable because no one else has ever bothered to sue it under this law.

None of Time's assertions support dismissal. Fox sufficiently pleads both statutory and

Article III standing. Time wrongfully disclosed her information, violated the Act, invaded her privacy, and caused her to both overpay for her subscriptions and to lose the value of her information. Further, the VRPA plainly applies to magazines, and any argument to the contrary is nonsensical. Nor can Time seek refuge in the VRPA's direct marketing defense, which is available only where the disclosure is *exclusively* for direct marketing purposes. Finally, Time breached its contract with Fox by failing to comply with all applicable laws, and the Complaint specifically details how Time was unjustly enriched by its unlawful sale of Fox's magazine purchasing history.

For all these reasons, as discussed more fully below, Time's Motion to Dismiss should be denied in its entirety.

## FACTUAL BACKGROUND

### *Michigan's Video Rental Privacy Act*

Congress passed the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), in 1988, giving substantial privacy protections to consumers' video purchase and rental histories. Originally, the VPPA was broad, protecting video and audio recordings as well as library rentals. *See* S. 2361, 100th Cong. (1988), but in its final form, its protections were limited to video rental and purchase records. *See* 18 U.S.C. § 2710.

Michigan's legislature decided to go a step further and passed the VRPA "to preserve personal privacy with respect to the purchase, rental, or borrowing of *written materials*, sound recordings, and video recordings." (Ex. A (emphasis added).) The VRPA "recognize[s] [that] a person's choice in reading, music, and video entertainment is a private matter, and not a fit subject for consideration by gossipy publications, employers, clubs, or anyone else, for that matter." *Id.* In the name of safeguarding privacy, the Act provides that:

> a person, or an employee or agent of the person, engaged in the business of selling
> at retail . . . books or other written materials . . . *shall not disclose* to any person,
> other than the customer, *a record or information concerning the purchase . . . of
> those materials by a customer that indicates the identity of the customer.*

M.C.L. § 445.1712 (emphasis added). Any customer whose information is disclosed in violation

of the VRPA "may bring a civil action against the person and may recover both of the following:

(a) Actual damages, including damages for emotional distress, or $5,000.00, whichever is

greater; and (b) Costs and reasonable attorney fees." M.C.L. § 445.1715. Though the original

draft of the VRPA did not provide for a private right of action, this civil action provision was

added to "offer more in the way of recourse for injured parties." (*See* Ex. A.)

### Time Sells Its Michigan Customers' Private Magazine Subscription Information

Time holds itself out as "one of the largest branded media companies in the world." (*See*

Plaintiff's Class Action Complaint, Dkt. 1 ["Compl."], ¶ 1.) Despite the substantial revenue its

magazine subscriptions generate, Time double dips by selling its customers' magazine

subscription records—including their full names, home addresses, and magazine subscription

titles ("Personal Reading Information")—to data miners[1] and others. (*Id.* at ¶¶ 2, 3, 33–39, 45,

46, 61–63.)

To increase the value of its customer lists, Time discloses its customers' magazine purchase

records to data mining companies like Acxiom Corporation, for them to enhance Time's lists

with detailed personal information about the subscribers from their own databases. (*Id.* at ¶¶ 33,

34, 62.) This information includes each subscriber's age, number of children, gender, household

income, net worth, home ownership, home value, length of residence, marital status, health

conditions, hobbies and interests, charitable donations, travel habits, investment preferences,

---

[1]   Data miners are companies that purchase, trade, and collect massive databases of information
about individuals and then sell that information to others. (*Id.* at ¶¶ 21–25.)

sports interests, clothing size, electronics and technology ownership, religion, and ethnicity. (*See* Dkt. 1-1.) These "enhanced" lists are then returned to Time, who in turn, sells them to anyone willing to pay. (Compl. ¶¶ 3, 34, 46, 63.)

***Fox Never Consented to Time's Disclosure of Her Personal Reading Information***

No matter how they subscribe, Time's customers never consent to disclosure of their magazine subscription records. (*Id.* at  ¶¶ 4, 36, 37, 39, 43, 44, 46, 66, 67.) During the subscription process, Time's customers are never presented with or required to consent to any terms or policies informing them of Time's disclosure practices. (*Id.* at ¶¶ 37, 43, 44, 66, 67.) Likewise, even after subscribing, Time fails to notify its customers that it will disclose their personal magazine subscription records. (*Id.* at ¶¶ 4, 37, 39, 43, 44, 46, 66, 67.)

## ARGUMENT

On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff, *White v. U.S.*, 601 F.3d 545, 551 (6th Cir. 2010), and a complaint survives dismissal where it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## I.   TIME'S ATTACKS ON FOX'S STANDING FALL FLAT.

Time's first argument is that the entire case fails for lack of statutory and Article III standing. Time asserts that showing injury here requires Fox to plead actual damages, which she supposedly fails to do. (Defendant's Memorandum of Law in Support of Motion to Dismiss, Dkt. 22 ["Def. Br."] at 10.) The problem for Time is that actual damages aren't required. The VRPA allows for statutory damages to any "customer identified in a record or other information that is disclosed in violation of [the] act," M.C.L. § 445.1715, and Fox pleads an invasion of privacy sufficient to establish Article III standing. Moreover, Fox alleges economic harm in the form of

overpaying for her subscription as well as in the reduced value of her personal information.

### A. Fox Has Standing To Sue For Time's Violations Of The VRPA Because Fox Was Identified In Records Disclosed By Time Without Her Consent.

Time's first argument, that Fox hasn't pled actual damages, (Def. Br. at 6), is simply a red

herring (in addition to being incorrect factually)—the VRPA doesn't have an actual damages

requirement. Rather, the VRPA provides:

> Regardless of any criminal prosecution for a violation of this act, a person who violates this act shall be liable in a civil action for damages to the customer identified in a record or other information that is disclosed in violation of this act. The customer may bring a civil action against the person and may recover both of the following . . . (a) Actual damages, including damages for emotional distress, *or $5,000.00, whichever is greater* [plus] (b) Costs and reasonable attorney fees.

M.C.L. § 445.1715 (emphasis added). Examining similar language under the Fair Credit

Reporting Act, 15 U.S.C. § 1681n, the Sixth Circuit has explained that "Because 'actual damages'

represent an *alternative* form of relief and because the statute permits a recovery when there are

no identifiable or measurable actual damages, this subsection implies that a claimant need not

suffer (or allege) consequential damages to file a claim." *Beaudry v. TeleCheck Servs., Inc.*, 579

F.3d 702, 705–06 (6th Cir. 2009), *cert. denied* 130 S. Ct. 2379 (2010) (emphasis in original).

The Honorable Judge Hood recently found the same with respect to the Electronic Funds

Transfer Act. *See Kinder v. United Bancorp Inc*., No. 11-cv-10440, 2012 WL 4490874 (E.D.

Mich. Sept. 28, 2012) (Where a statute "allow[s] consumers to recover actual damages, if any,

[and] statutory damages . . . [t]he statute allows recovery even when there are no actual

damages.").

Courts routinely reject arguments that actual damages are required when statutory damages

are provided as an alternative, especially in consumer privacy cases. *See*, *e.g.*, *Klimas v. Comcast*

*Cable Commc'ns., Inc.*, 465 F.3d 271, 275–76 (6th Cir. 2006) (Cable Act does not require actual

damages); *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 538 (7th Cir. 2012) (Video

Privacy Protection Act allows "$2,500 in 'liquidated damages,' without the need to prove 'actual

damages,'" on a claim of unlawful disclosure).

Not surprisingly, the only Court to have interpreted the VRPA rejected Time's actual

damages requirement. *See Deacon v. Pandora Media, Inc.*, No. 11-cv-04674 SBA, 2012 WL

4497796, at *4 (N.D. Cal. Sept. 28, 2012) (finding that the VRPA "does not explicitly impose an

actual injury requirement."). Time attacks the *Deacon* Court's reasoning in a footnote, claiming

it is dicta that conflicts with the rulings of courts interpreting other privacy statutes. (Def. Br.

at 9 n.5.) This is incorrect. True, the Court in *Doe v. Chao*, 540 U.S. 614 (2004), found that the

Privacy Act of 1974 required a showing of actual damages, but that statute provides for "actual

damages sustained by the individual . . . but in no case shall a person entitled to recovery receive

less than the sum of $1,000." *Id.* at 619. As the Court held, such language does not present

statutory damages as an alternative since "a person entitled to recovery" is limited by those who

suffered "actual damages." *Id.* at 620–21. The VRPA contains no such requirement.

Time's second case, *Van Alstyne v. Elec. Scriptorium, Ltd.,* 560 F.3d 199 (4th Cir. 2009),

offers it even less help. The *Van Alstyne* court found that statutory damages under the Stored

Communications Act were only available upon a showing of actual damages because the act's

language mirrored that in *Chao. Id.* at 205. But the Fourth Circuit went on to explain that if

Congress wanted to provide free-standing statutory damages, it "could have written a simpler,

unambiguous statute," stating that "the United States shall be liable to the individual in an

amount equal to the sum of (A) whichever is greater: actual damages sustained by the individual

as a result of the refusal or failure, or $1,000"—language basically identical to the VRPA. *Id.* at

205 (distinguishing the Wiretap Act and Driver's Privacy Protection Act on such grounds.)

It is little surprise then that the only case from any Michigan Court that Time is able to cite—

*Vinton v. CG's Prep Kitchen & Cafe*, No. 1:09-cv-707, 2010 WL 748221 (W.D. Mich. Mar. 2,

2010)—is both unreported and not on-point. The statute involved in that case, the Michigan

Consumer Protection Act, specifically limits recovery to a person "who suffers a loss as a result

of violation of this Act." M.C.L. § 445.911(2).[2] Though Time acknowledges this fact it fails to

appreciate its import. Put simply, the VRPA contains no comparable loss requirement, and the

*Pandora* Court's decision was correct. *See Deacon v. Pandora*, 2012 WL 4497796, at *4.

Accordingly, because the VRPA doesn't require a showing of actual damages, Time's first

attack on Fox's statutory standing falls flat.

### B.  Time's Article III Standing Arguments Seriously Misunderstand The Instant Case (And Controversy).

Time's claim that money damages are also required by Article III purposes badly

misunderstands the standing requirement in federal court. (*See* Def. Br. at 9–11 ). Time's

argument fails for three reasons: it misapprehends what is required to establish Article III

standing, ignores precedent establishing that statutory privacy violations confer standing, and

overlooks Fox's allegations of economic harm.

To start, "The minimal standing requirements of Article III" require a plaintiff show:

> (1) . . . an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 580 (6th Cir. 2012). Standing "may

---

[2]   Other statutes demonstrate the Michigan legislature's ability to impose an actual damages requirement when it wants to. *See* M.C.L. § 445.257 (limiting claim to a person "who suffers injury, loss, or damage"); M.C.L. § 445.964(2) (limiting claim to "[a] person who suffers loss as a result of a violation"); M.C.L. § 14.321(2) (same).

7

exist solely by virtue of statutes creating legal rights, *the invasion of which creates standing*."
*In re Carter*, 553 F.3d 979, 989 (6th Cir. 2009) (emphasis in original) (internal quotation
omitted); *see also Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64 n.6 (1963) (violation of
statutory right causes "a legal injury" sufficient to confer standing). In cases involving statutory
rights, "the standing question . . . is whether the . . . statutory provision on which the claim rests
properly can be understood as granting persons in the plaintiff's position a right to judicial relief."
*Warth v. Seldin*, 422 U.S. 490, 500 (1975).

Here, the VRPA creates a right to privacy of reading information, and it grants a right to
relief to any "customer identified in a record or other information that is disclosed in violation of
this act." M.C.L. §§ 445.1712, 15. Fox alleges that Time violated her right to privacy in the
information she reads, (*see* Compl. ¶¶ 2, 5, 33–39, 40–48, 57–74), and she has brought suit to
exercise her right to relief. (*See id.* at ¶ 74; M.C.L. § 445.1715.) Thus, Fox has standing to sue.
*See Deacon*, 2012 WL 4497796, at *4 (VRPA claims confer Art. III standing); *see also Klimas*,
465 F.3d at 276 (Violations of Cable Act's privacy provisions confer Art. III standing); *cf. U.S.
Dep't of State v. Ray*, 502 U.S. 164, 176 (1991) ("Although disclosure of [individuals'] personal
information constitutes only a *de minimis* invasion of privacy when the identities of the
[individuals] are unknown, the invasion of privacy becomes significant when the personal
information is linked to particular [individuals].").

Time's arguments offer nothing to suggest otherwise. Time contends that privacy violations
without actual harm cannot confer standing because "'Congress cannot erase Article III's
standing requirements by statutorily granting the right to sue to a plaintiff who would not
otherwise have standing.'" (Def. Br. at 10 (*quoting Raines v. Byrd*, 521 U.S. 811, 820 n.3
(1997)). But *Raines* dealt with a statute that purported to grant individuals a right to sue without

conferring any underlying substantive right to be vindicated. *See Raines*, 521 U.S. at 815−16. No

such problem exists here, because the VRPA *does* grant a substantive right to privacy, and Fox

brings suit to vindicate it. *See In re Carter*, 553 F.3d at 988 ("Congress no doubt has the right to

create legal rights, and it generally has the authority to create a right of action whose only injury-

in-fact involves the violation of that statutory right.").[3] Thus, Fox sufficiently pleads her Article

III standing.

### C. Fox Sufficiently Pleads Economic Loss—Not That Doing So Was Required To Establish Either Statutory Or Article III Standing.

Though Time focuses only on allegations that its disclosure diluted the value of Fox's

personal information,[4] Fox also alleges that Time forced her to overpay for her subscription, a

well-recognized form of loss. Where a plaintiff alleges that she paid for a good or service and

didn't receive the full benefit of the bargain, the plaintiff alleges economic injury in the form of

overpayment. *See*, *e.g.*, *In re Acquisition of Land for Virginia Park Neighborhood Development

Program, Michigan A-4-2*, 283 N.W. 2d 771, 773 (Mich. Ct. App. 1979); *Resnick v. AvMed, Inc.*,

693 F.3d 1317, 1328 (11th Cir. 2012) (finding unjust enrichment where Plaintiff alleged she did

not receive paid-for data security protections); *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618,

628 (N.D. Cal. 2011) (Plaintiff overpaid and suffered economic loss because Defendant's

"conduct caused him either to buy a product that he would not have bought, or to buy a product

---

[3]   Time's attempt to explain away *In re Carter* and *Beaudry*, (Def. Br. at 10 n.7), is meritless.
The *Beaudry* court in no way predicated its standing decision on the statute's "willful violation"
requirement, and instead referenced willfulness *only* in responding to concerns about creation of
a strict liability regime. *Beaudry*, 579 F.3d at 708. Likewise, that the statute in *In re Carter* "does
not authorize suit by members of the public at large," (Def. Br. at 10 n.7 (quoting *In re Carter*,
553 F.3d at 989)), is irrelevant. The VRPA does not authorize suit by members of the public at
large either—it authorizes suit *only* by customers who, like Fox, have had their information
disclosed in violation of the Act. *See* M.C.L. § 445.1715.

[4]   Allegations that a defendant disclosed valuable personal information alone can confer
Article III standing. *See Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 861 (N.D. Cal. 2011).

that was inferior, of lower quality and less value, than that offered.").

Here, Fox alleges that she paid money for her Time subscriptions, (Compl. ¶¶ 48, 70, 80, 84, 89), which entitled her to privacy in her subscription records. (*Id.* at ¶¶ 48, 70, 78, 84, 91.) So her theory goes, Time's unlawful disclosures prevented Fox from receiving the full benefit of those privacy protections. (*Id.* at ¶¶ 48, 70–71, 83–84, 93–94.) Thus, Fox alleged economic harm because she did not receive the full benefit of the bargain she paid for.[5] *See In re Acquisition of Land*, 283 N.W. 2d at 773; *see also Doe 1 v. AOL, LLC.*, 719 F. Supp. 2d 1102, 1111 (N.D. Cal. 2010) (finding economic harm where "disclosure of [Class's] undeniably sensitive information is not something that [they] bargained for when they signed up and paid fees for [Defendant's] service.").

The cases Time cites do not reject Fox's injury. Time relies on three cases—*In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299 (E.D.N.Y. 2005); and *Murray v. Time, Inc.*, No. C 12-00431 JSW, 2012 WL 3634387 (N.D. Cal. Aug. 24, 2012)—to assert that Fox could not have suffered damages as a result of its unlawful disclosures. (Def. Br. at 6–9.) But none of the cases hold that privacy compliance has no value in a transaction. In fact, *JetBlue* recognizes that privacy can form part of the basis of the bargain. *See In re JetBlue*, 379 F. Supp. 2d at 327 (noting that plaintiffs "may well have expected that in return for providing their personal information to JetBlue and paying the purchase price, they would obtain a ticket for air travel and the promise that their personal information would be safeguarded consistent with the terms

---

[5] Recent studies confirm that consumers price privacy into their purchases. *See* Expert Witness Report of Dr. Serge Egelman, Ph.D., *In re Netflix Privacy Litig.*, No. 5:11-cv-00379-EJD, Dkt. No. 191-2, Ex. 2 (N.D. Cal. Oct. 31, 2012) (attached hereto as Exhibit C) (confirming that consumers would command a discount in exchange for waiving privacy protections, and describing similar studies).

of the privacy policy."). As such, Time's attacks on Fox's overpayment allegations fail.

Hence, neither the Constitution nor the VRPA requires actual damages to confer standing. And even if they did, Fox alleges actual economic harm by virtue of overpayment.

## II.  FOX PLEADS A VRPA CLAIM—THE ACT COVERS MAGAZINES AND TIME CAN'T AVAIL ITSELF OF THE STATUTE'S "DIRECT MARKETING" DEFENSE.

Stating a claim under the VRPA requires that: (1) Time "was engaged in the business of selling at retail . . . books or other written materials," (2) Time disclosed "a record or information concerning the purchase" of the books or written materials to "any person, other than the customer," and (3) the disclosure "indicat[ed] the identity of the customer." M.C.L. § 445.1712. Time doesn't dispute that Fox has satisfied the second and third elements. Instead, Time argues that, even if Fox has standing to bring such a claim, the VRPA doesn't apply to the sale of magazines and that its conduct falls under the Act's "direct marketing" defense. Both arguments fail to withstand scrutiny.

### A.  Time Can't Overcome The Fact That The VRPA's Plain Language Expressly Applies To All "Written Materials," Which Includes Magazines.

Time first argues that magazines are not protected by the VRPA because they are not "books or other written materials." (Def. Br. at 12–14.) According to Time, "it is self-evident that disclosure of someone's subscription to a magazine or newspaper – containing a variety of articles – is entirely different from disclosure that someone rented or purchased a particular video (or book) and is not the activity covered by the act." (Def. Br. at 13.) This argument ignores the plain language and purpose of the VRPA.

"It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (internal quotation

omitted). Courts "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). When the statutory language is unambiguous, "judicial inquiry is complete." *Id*. at 254.

Here, the VRPA is unambiguous: it protects records relating to the purchase of "books or other written materials." M.C.L. § 445.1712. Magazines plainly fall within the definition of "other written materials," and Time cannot seriously contend otherwise. The legislature could have simply limited the Act to books—but it didn't. Indeed, what "other written materials" could the VRPA possibly encompass if not magazines? Like books, magazines are bound, contain pages of text, are publicly available, and can reveal to others information regarding the reader's interests, beliefs, age, gender, political affiliation, income, and more. Time's confusion of Merriam-Webster's separate definitions of "written" and "material" aside, (Def. Br. at 13), that the term "written material" would be too challenging for one of the world's leading publishers to grasp is simply implausible.

Moreover, Time reads too much into its conclusion that no Michigan statute, "including the [VRPA], includes magazines in its definition of written materials." (Def. Br. at 13.) None of the statutes that Time cites suggest the phrase "written material" within the VRPA wouldn't include magazines. *See* M.C.L. §§ 55.263–67; 256.623–27; 338.3843; 429.351; 442.351a. The phrase is a catchall term that should be construed broadly to effectuate the statute's purpose. *See Gasperoni v. Metabolife, Int'l Inc*., No. 00-cv-71255, 2000 WL 33365948, at *7 (E.D. Mich. Sept. 27, 2000).

Even less credible than its definition of "other written material" is Time's claim that it cannot be held liable because it is "not in the 'retail' business as that word is commonly understood." (Def. Br. at 12.) "Retail" refers to "the sale of goods or commodities to ultimate consumers, as

opposed to the sale for further distribution or processing." Black's Law Dictionary (9th ed. 2009). Similarly, Webster's defines "retail" as "the sale of commodities or goods in small quantities to ultimate consumers . . . ." *Retail*, Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/retail (last accessed Dec. 24, 2012). Fox alleges that Time sells subscriptions directly to consumers, (*see* Compl. ¶¶ 37, 58, 59), and Time's own website admits that it sells individual magazines directly to consumers. *See Frequently Asked Question*, TIME.com, http://www.time.com/time/faq/#magazine (last accessed Dec. 24, 2012) (providing phone number for ordering individual "back issues" of *TIME*). Thus, Fox sufficiently pleads that Time sells magazines "at retail."

Time's remaining argument, that magazine publishers cannot be subject to the VRPA because they have been selling mailing lists since before the VRPA was enacted, also fails. (Def. Br. at 12.) Industry-wide misconduct is not a defense to statutory violation. *See Vermilye & Co. v. Adams Express Co.*, 88 U.S. 138, 146 (1874) ("If [Defendants] have been in the habit of disregarding the law, this does not relieve them from the consequences nor establish a different law."); *see also Newton v. Merill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 274 (3d Cir. 1998) (rejecting industry practice defense).

### B. Time's Cherry-Picking Of The Legislative History Ignores That Michigan's Legislature Provided Greater Privacy Protections Than The Federal VPPA.

Thwarted by the plain language, Time turns to the legislative history, arguing that the Act's history bears repeated references to books, but less often to "other written materials." Time's argument fails for three reasons.

To start, the Court should disregard Time's legislative history discussion entirely because the VRPA is straightforward and unambiguous. The Court "may resort to a review of congressional intent or legislative history only when the language of the statute is not clear." *Mitchell v.*

13

2:12-cv-14390-GCS-MKM   Doc # 26   Filed 12/24/12   Pg 23 of 30   Pg ID 392

*Chapman*, 343 F.3d 811, 826 (6th Cir. 2003). As explained above, "books or other written materials" plainly includes magazines, so there is no need to consult the legislative history.

Second, the VRPA's legislative history provides no help to Time and, in fact, supports a reading that would include the protection of magazines. For example, the VRPA "create[s] a new public act to preserve personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings, and video recordings." (Ex. A.) By using "written materials" without books there, the legislature demonstrated its intent to cover more than just books.

Third, Time's own arguments about the federal VPPA confirm that magazines are considered "other written materials." Time asserts that because the federal VPPA does not protect magazines, neither can the VRPA, because it supposedly followed the federal act. (Def. Br. at 14.) But that rewrites history. Rather than merely parrot the federal statute, the VRPA extends to "books and other written materials, [and] sound recordings." M.C.L. § 445.1712. The VRPA's plain text thus evinces an intent to protect *more* content than the VPPA, giving no reason to read "other written materials" as excluding magazines.

In the end, any doubt about whether "other written materials" covers magazines should be resolved consistent with the Act's purpose of protecting personal privacy. When faced with ambiguity (and there isn't any here), the Court "look[s] to the purpose of the statute for its proper interpretation." *Tetro v. Elliott Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*, 173 F.3d 988, 995 (6th Cir. 1999). The VRPA's purpose is simple: "to preserve personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings, and video recordings." (Ex. A.) The Court should therefore reject Time's assertions and find that magazines are "other written materials" under the VRPA.

14

**C.  Time's Supposed First Amendment Argument Is Devoid Of Merit, And Time's Choice To Include It Undermines The Credibility Of Its Other Arguments.**

Time purports to bring a constitutional challenge—that applying the VRPA to magazines would raise First Amendment issues. (Def. Br. at 15–16.) This is incorrect.

First, Time provides no support for its claim that "[i]f the Court were to find the Michigan statute applies to the sharing of facts concerning magazine subscriptions, that reading would raise difficult First Amendment issues." (Def. Br. at 15.) Time fails to identify any First Amendment issues unique to applying the VRPA to magazine sales, as opposed to the book sales and rentals Time concedes are within the Act's scope.

Second, Time failed to state to the right of the case caption that it was making a "Claim of Unconstitutionality." For this reason alone, the Court may disregard Time's unconstitutionality assertion entirely. *See* Civ. L.R. 9.1(b). And even if considered, Time's argument still fails. Time contends that the Supreme Court's decision in *IMS v. Sorrell Health, Inc.*, 131 S. Ct. 2653 (2011), invalidates privacy statutes like the VRPA. (Def. Br. at 15.) In *Sorrell*, the Supreme Court struck down a Vermont statute prohibiting disclosure and use of certain pharmacy records. 131 S. Ct. at 2659. The Vermont statute was unconstitutional because it sought not to effectively protect personal privacy, but to insulate physicians from pharmaceutical advertising. *Id.* at 2663–65. The Court noted that if Vermont had used a "more coherent policy" to address a "privacy interest by allowing the information's sale or disclosure in only a few narrow and well-justified circumstances," rather than "allow[ing] the information to be studied and used by all but a narrow class of disfavored speakers," it "would present quite a different case." *Id.* at 2668.

The VRPA succeeds where the Vermont act failed. The VRPA advances an "asserted privacy interest" in protecting consumers' magazine preferences and reading histories "by allowing the information's sale or disclosure in only a few narrow and well-justified circumstances," such as

15

with the consumer's consent, pursuant to a court order, as necessary for debt collection, exclusively for direct marketing purposes, and pursuant to a search warrant. *See id.* at 2668; M.C.L. § 445.1713. Rather than being rendered unconstitutional by *Sorrell*, the VRPA represents the type of privacy statute the Supreme Court said *would not* conflict with the First Amendment.

### D.  Time Can't Hide Behind The Act's Direct Marketing Defense.

Time next argues that its disclosures are excused under the VRPA's direct marketing defense. (Def. Br. at 16–18.) The VRPA allows disclosure where it "is for the exclusive purpose of marketing goods and services directly to the consumer," and if the "person disclosing the information . . . inform[s] the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information." M.C.L. § 445.1713(d). Time can't use this defense on a motion to dismiss—factual issues abound regarding the purposes for which the information was disclosed and the timing and adequacy of Time's supposed notice.

### 1.  Time's direct marketing defense can't be adjudicated on a motion to dismiss.

Time's direct marketing defense initially fails because a motion to dismiss may be granted on the basis of an affirmative defense only "where the undisputed facts conclusively establish an affirmative defense as a matter of law." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009). For that to happen, "the facts establishing the defense [must be] definitively ascertainable from the allegations of the complaint." *Id.* (internal quotation omitted).

As explained below, the facts central to Time's defense are in dispute, including the purpose of the disclosures and the sufficiency of Time's supposed notice. *See* M.C.L. § 445.1713(d). Fox's allegations that the disclosures were not for the *exclusive* purpose of marketing goods and services directly to her, (*see* Compl. ¶¶ 2, 3, 33–34, 45, 62–63), and that Time failed to provide

16

notice, (*id.* at ¶¶ 4, 36, 37, 39, 43, 44, 46, 66, 67), govern at the pleadings stage. *See Pfeil v. State Street Bank & Trust Co.*, 671 F.3d 585, 598 (6th Cir. 2012) (A statutory affirmative defense "is not appropriate for consideration on a motion to dismiss when . . . the plaintiffs do not raise it in the complaint."); *see also In re Hulu Privacy Litig.*, No. 11-cv-03764 LB, 2012 WL 3282960, *7 (N.D. Cal. Aug. 10, 2012) (finding application of VPPA's "ordinary course of business" defense raised "factual questions that cannot be resolved in a motion to dismiss.")

Accordingly, Time can't secure dismissal based on the VRPA's direct marketing defense.

### 2. Time's disclosures weren't exclusively for direct marketing purposes.

Worse still for Time, the information disclosed isn't covered by the exception. The direct marketing defense only applies "[i]f the disclosure is *for the exclusive purpose* of marketing *goods and services directly* to the customer," and if Time "inform[ed] the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information." M.C.L. § 445.1713(d) (emphasis added). Fox alleges that Time's disclosures were *not* for the exclusive purpose of marketing goods and services directly to her. Fox specifically alleges that Time disclosed her Personal Reading Information to data mining companies, including Acxiom and others, (Compl. ¶¶ 2, 33, 45, 62), and that these disclosures were made to allow Time to later sell enhanced versions of its mailing lists at higher prices. (*See Id.* ¶¶ 33–34, 62–63.) Further, Fox's Complaint provides no basis for concluding that data miners such as Acxiom even offer goods and services directly to consumers. (¶¶ 21–23.) Because Fox alleges that Time's disclosures were not for the exclusive purpose of marketing goods and services directly to her, Time can't defeat this lawsuit by relying on the defense.

### 3. Time hasn't shown that it provided timely or adequate notice under the Act.

Third, Time fails to show it provided proper notice. Time asserts that its magazines notify

17

Fox that her information may be disclosed to others. (Def. Br. at 16–18.) But neither Time's motion nor its supporting affidavits establish that such notices were provided to Fox or the Class before Time disclosed their information. The magazine clippings are dated July and August of 2012, (*see* Dkt. 22-1, at 6–10), whereas Fox alleges Time began disclosing her information as soon as she first subscribed. (Compl. ¶¶ 45, 61.) Likewise, Time provides no information regarding the timing of any notice supposedly provided via its website. As such, Time's supposed notices fail to show that Fox was notified prior to Time's disclosures or given the opportunity to opt out. (*See id.* at ¶¶ 4, 36, 37, 39, 43, 44, 46, 66, 67.)

Moreover, Time didn't actually provide notice of anything. Time contends that its website notifies consumers of its information sharing policies. (Def. Br. at 17.) But nothing in Fox's Complaint suggests that she signed up online, and Time does not establish how subscribers receive notice of the Website Privacy Policy.[6] Further, Time's purported in-magazine notices—stating that Time makes a portion of its mailing list available to reputable firms—do not identify what information is included on such lists, what portion is disclosed, or what makes a firm reputable. Moreover, the terms are buried in font so small they may not be legible, on pages that—at least on their faces—have nothing to do with information privacy. (*See* Dkt. No. 22-1 at 6–10.) Time offers no authority for its assertion that Fox should be bound by terms contained in fine print in a non-contractual document.[7]

---

[6]   In a footnote, Time relies on a summary judgment decision, *Kirch v. Embarq Mgmt. Co.*, No. 10-cv-02047-JAR, 2011 WL 3651359, at *8 (D. Kan. Aug. 18, 2011), to argue that its subscribers consented to the disclosures. (Def. Br. at 18.) But in *Kirch*, "as a condition of [Defendant's service], [Defendant's] subscribers were required to agree to the terms of [Defendant's] Privacy Policy." *Kirch*, 2011 WL 3651359, at *5. Here, however, Fox specifically alleges that she and the Class did not agree to any privacy policy as part of their subscriptions. (Compl. ¶¶ 4, 36, 37, 39, 43, 44, 46, 66, 67.) Thus, *Kirch* is not applicable here.

[7]   And even if it did, Time offers no similar materials to show that *Real Simple* and *This Old*

## III. FOX SUFFICIENTLY STATES A CLAIM FOR BREACH OF CONTRACT, WHICH SHE SPECIFICALLY ALLEGES INCORPORATED THE VRPA.

Time's attack on Fox's breach of contract claim fares no better. Time asserts that Fox hasn't identified the contract terms that it allegedly breached or that she incurred damages as a result. Neither argument has merit.

First, Fox expressly alleges that her contract for magazine purchases incorporated the applicable laws at the time and place of creation, including the VRPA. (Compl. ¶ 79.) "Without a doubt, all contracts incorporate the law as it stands at the time of contracting." *Redman Agency, Inc. v. Allstate Ins. Co.,* No. 1:89-cv-114, 1991 WL 526300, at *5 (W.D. Mich. Oct. 30, 1991) (citing *Ziegler v. Witherspoon,* 49 N.W.2d 318, 327 (Mich. 1951)).

Fox alleges that by disclosing her Personal Reading Information, Time breached the term of the subscription contract requiring VRPA compliance. (Compl. ¶ 82.) Thus, Time's contention that Fox doesn't identify the term breached, (*see* Def. Br. at 18), ignores both the law and the plain allegations in the Complaint.

Time's argument that Fox alleges no injury also goes nowhere. (Def. Br. at 19.) First, Fox alleges that as a result of Time's breach, she overpaid for her subscriptions and Time gained excess profits. (Compl. ¶¶ 82–85.) And as explained in Section I.C, *supra*, Fox's allegations of overpayment—to say nothing of her demand for disgorgement—allege economic harm sufficient to support a breach of contract claim. Accordingly, Fox's breach of contract claim should survive.

## IV. TIME'S ATTACK ON FOX'S UNJUST ENRICHMENT CLAIM IGNORES THE COMPLAINT'S PLAIN LANGUAGE.

Time says Fox's unjust enrichment claim must be dismissed because "[t]he Complaint fails to allege any benefit that Time received" from its disclosures. (Def. Br. at 20.) But Fox's

---

*House* magazines contained the purported notices. Thus, as to those periodicals, at the very least, Time fails to establish that it provided the required notice and opt-out instructions to Fox.

1em

Complaint details that Time received her Personal Reading Information and subscription

payment, and that it unjustly retained that money and the money gained from disclosing her

Personal Reading Information. (*See* Compl. ¶¶ 89, 92.) Time doesn't dispute that Fox and the

Class expected their Personal Reading Information would be kept confidential as part of their

purchases, (*id.* at ¶ 91), or that Time's duty to maintain such confidentiality represented part of

the value of the subscription Fox paid for, (*id.* at ¶¶ 93–94.) As such, Fox alleges that Time

improperly retains benefits conferred by Fox, and Time's Motion to Dismiss the unjust

enrichment claim also fails. *See Resnick*, 693 F.3d at 1328 (finding plaintiff stated unjust

enrichment claim where she alleged that data privacy was included in the price of a paid service,

but not provided).

## CONCLUSION

For the reasons stated above, Plaintiff Susan Fox, individually and on behalf of all others

similarly situated, respectfully requests this Honorable Court deny Time's Motion to Dismiss

and award such other relief as it deems necessary, reasonable, and just.


Dated: December 24, 2012          Respectfully submitted,

                                  **Susan Fox**, individually and on behalf of a class of
                                  similarly situated individuals,

                                  By: /s/  Ari J. Scharg
                                        One of her Attorneys

Henry M. Scharg – P28804          Ari J. Scharg
LAW OFFICE OF HENRY M. SCHARG     EDELSON MCGUIRE, LLC
302 W. Main Street                350 N. LaSalle, Suite 1300
Northville, Michigan 48167        Chicago, Illinois 60654
Tel: (248) 596-1111               Tel: (312) 589-6370
Fax: (248) 596-1578               Fax: (312) 589-6378
hmsattyatlaw@aol.com              ascharg@edelson.com

*Counsel for Plaintiff Susan Fox and the Putative Class*

## **CERTIFICATE OF SERVICE**

      I, Ari J. Scharg, an attorney, certify that on December 24, 2012, I served the above and foregoing ***Plaintiff's Opposition to Time, Inc.'s Motion to Dismiss*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this December 24, 2012.


/s/  Ari J. Scharg