UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SUSAN FOX, individually, and on behalf of all others similarly situated, | Case No. 4:12-cv-14390 |
| Plaintiff, | Hon. Gershwin A. Drain |
| v. | Magistrate Judge Mona K. Majzoub |
| TIME, INC., a Delaware Corporation, | |
| Defendant. | |

DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

Sharon L. Schneier
Collin J. Peng-Sue
DAVIS WRIGHT TREMAINE LLP
1633 Broadway – 27th Floor
New York, New York 10019
Telephone: (212) 489-8230
Facsimile: (212) 489-8340
sharonschneier@dwt.com
collinpengsue@dwt.com

Robert M. Jackson (P40732)
Arthur T. O'Reilly (P70406)
HONIGMAN MILLER SCHWARTZ
AND COHN LLP
660 Woodward Avenue
Detroit, MI 48226
Telephone: (313) 465-7400
rjackson@honigman.com
aoreilly@honigman.com

*Attorneys for Defendant Time Inc.*

Plaintiff seeks to save her complaint from dismissal by elaborating on her truly novel damages theory that her Personally Identifiable Information constitutes property, the loss of which results in damage or harm.[1]  *See* Opp. (Dkt. No. 26) at 6-9, 11.  Plaintiff's theory, as she now frames it, is that because Time deprived her of the right to sell her own personal information she was over-charged for her magazine subscription and suffered an "economic injury" sufficient to confer standing.  *Id*. at 9.  Plaintiff relies on conclusory allegations that Time "diluted" the value of her personal information, but alleges no facts either substantiating the claim that her personal information has value or making any logical connection between Time's alleged misconduct and that value.  In an effort to plead a damages theory, and establish her statutory and constitutional standing, Plaintiff has simply gone too far.  These types of speculative and implausible allegations are insufficient to state a claim upon which relief can be granted.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Complaint should be dismissed.

## I. PLAINTIFF LACKS STANDING

As set forth in Time's Opening Brief, Plaintiff has failed to set forth the "*damages* to the customer" required for standing under the Video Rental Privacy Act.  *See* Opening (Dkt. No. 22) at 6-9.[2]  Fox provides no response to Time's argument that the allegation that Time has diluted the value of her information does not constitute cognizable damages to confer statutory standing under the Video Rental Privacy Act.  In Opposition, Fox argues that when she purchased a Time

---

[1] Defined terms are consistent with those found in Time's Opening Brief.

[2] Plaintiff (Opp. at 5-6) points to cases discussing Article III, rather than statutory standing.  *See* Opening at 9 n.5; 10 n.7 for a fuller discussion of the cases.  *See also* page 3, *infra*.  Plaintiff also cites *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535 (7th Cir. 2012), for the proposition that damages are not required to confer Article III standing when a statute also provides for statutory damages.  In *Sterk,* the Seventh Circuit held that the federal VPPA does not provide for a private right of action for unlawful retention of personal information (*id.* at 538), and did not address standing under that act's non-disclosure provision.  *See Sterk v. Best Buy Stores, L.P.*, No. 11 C 1894, 2012 WL 5197901, at *5 (N.D. Ill. Oct. 17, 2012) (dismissing plaintiff's claim under the VPPA for failure to plead lack of injury-in-fact sufficient to confer standing).

magazine she bargained for the privacy of her Personally Identifiable Information, and because Time did not maintain her privacy, she overpaid for her subscriptions, and thus suffered damages. Opp. at 10.

Initially, Plaintiff's suggestion that she could somehow "sell" her personal information lacks any factual support. Moreover, even assuming Fox's personal information did, in fact, have some "value" to *her*, nothing supports the idea that Time's alleged disclosure deprived *her* of that value. *See* Opening at 7-9; *see also Sterk,* 2012 WL 5197901, at *6-7; *Low v. Linkedin Corp.,* No. 11-CV-1468 (LHK), 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011); *Bose v. Interclick*, 10 Civ. 9183 (DAB), 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011); *LaCourt v. Specific Media, Inc.* SACV 10-1256 GW(JCGx), 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011).[3]

Fox's Complaint also fails to plead that Time indicated to her in any way that it was offering that privacy protection such that she did, in fact, specifically contract for it when she subscribed to the Time Magazines. The cases cited by Plaintiff for that proposition are entirely distinguishable for that very reason. In *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1328 (11th Cir. 2012), for example, the plaintiffs alleged they had actually paid premiums that were used specifically to "pay for the administrative costs of data management and security." And in *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 626 (N.D. Cal. 2011), the plaintiff alleged that he "bargained to purchase a product with a certain advertised capacity and performance." Those circumstances are not present particularly where, as here, she was aware from Time that her information would be disclosed for marketing purposes. Opening at 16-18.[4]

---

[3] Plaintiff's citation in the Opp. to an expert report in an unrelated litigation has no bearing here, and does not "confirm that consumers price privacy into their purchases." Opp. at 10 n.5.

[4] In *In re JetBlue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299 (E.D.N.Y. 2005), the issue was the airline's own privacy policy which contained certain representations. Similarly, in *Doe 1 v. AOL, LLC.*, 719 F. Supp. 2d 1102, 1111 (N.D. Cal. 2010), defendant had "assured its users that, as a matter of company policy, their personal information would be safeguarded and would not

2

Further, as discussed in Time's Opening Brief, Plaintiff lacks Article III standing because she has failed to allege any concrete and particularized injury. Opening at 9-11. In fact, Fox offers no response to the recent decision by the District Court for the Northern District of Illinois dismissing a case under the federal VRPA for lack of Article III standing because the plaintiff failed to allege any injury besides a violation of the statute. *See Sterk,* 2012 WL 5197901, at *6-7. Mere assertions of abstract, theoretical injury are insufficient even in the privacy context and should be rejected. *See LaCourt,* 2011 WL 1661532, at *3-5 (no Article III standing where privacy violation did not establish any "particularized example" of harm to plaintiff). Additionally, the Act does not permit damages absent injury. *See* M.C.L. § 445.1715. Plaintiff cannot therefore rely on a pure violation to request damages and maintain Article III standing.

Because Plaintiff lacks statutory and Article III standing, the Complaint must be dismissed.

## II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE ACT

In response to the legislative history of the Video Rental Privacy Act indicating that it was not intended to cover magazines, Plaintiff points to the Act's "plain language and purpose." Opp. at 11. But the plain language of the Act is, at a minimum, ambiguous. Indeed, the title of the Act itself refers only to videos – a fact which Plaintiff studiously avoids by referring to it as the "VRPA" in the Complaint and its Opposition Brief. Moreover, the editorially-supplied caption for the Act reads, "Purchase, rental, or borrowing of *books, or sound or video recordings*; preservation of personal privacy" (emphasis added). Even the legislative history Plaintiff cites points to a narrow interpretation: it refers to "one's choice in videos, records, and books" and does not refer to magazines. *Id.*, Ex. A. And Michigan Law defines "written material" as an advertisement, stationery, letterhead, a business card, a brochure, a label, a catalog, a prospectus, or a flyer – again offering no indication that magazines were meant to be

---

be shared with any third parties." This case is entirely different in the scope of representations allegedly made as well as the nature of the information collected and disclosed.

3

covered.  Opening at 13-14.  Plaintiff's strained attempt to broadly expand the reach of the Video Rental Privacy Act to include magazines (or newspapers), which contain a variety of articles, does not make sense given that disclosure of these types of subscriptions is entirely different from the disclosure that someone rented or purchased a particular video (or book).[5]  Moreover, because magazines, like newspapers, are disseminated through a variety of open channels of distribution, legitimate privacy concerns would not be served by applying the statute here.

Finally, Plaintiff claims that Time cannot avail itself of the Video Rental Privacy Act's direct marketing exception because she has pled that "the disclosures were not for the *exclusive* purpose of marketing goods and services directly to her."  Opp. at 16.  But Plaintiff has pled no such thing.  Plaintiff has only alleged that Time sells the information to data miners, but never pleads that the data miners do anything but use that data for marketing goods and services to her.  Indeed, according to the Complaint, the only effect of the alleged disclosure is "an influx of third-party print *advertisements* and *marketing calls*."  Compl. ¶ 72 (emphasis added).  Plaintiff's efforts to avoid the clear and repeated disclosures by Time that her "Personally Identifiable Information" would be disclosed for marketing purposes underscores the weakness of her claim.[6]

## III. PLAINTIFF'S COMMON LAW CLAIMS FAIL

Plaintiff's claims for breach of contract and unjust enrichment must be dismissed as well.  Opening at 19-20.  Plaintiff concedes that there are no terms in her alleged contract with Time that prohibit the sale of subscription lists.  Rather, she now claims that the Act supplied this

---

[5] Plaintiff's criticism of Time for bringing the *Sorrell* decision to the Court's attention is misplaced.  To find that the Act could require civil and criminal penalties for protected speech does, indeed, counsel against application of the statute here.  Opening at 15-16.

[6] In response to Time's online privacy policy, Fox claims that nothing in the Complaint "suggests that she signed up online."  Opp. at 18.  But the burden is on the Plaintiff to plead something "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 677-78.  In other words – it is *Plaintiff* who must plead that she did *not* sign up online – something she has failed to do.  Moreover, Time Magazines and the Websites' Privacy Policies are readily available and can be easily accessed.  Indeed, a link to Time's Privacy Policy is provided at the end of Exhibit E to Plaintiff's Opposition Brief.

4

promise because "her contract for magazine purchases incorporated the applicable laws at the time and place of creation." Opp. at 19. The case cited for that broad proposition, *Redman Agency, Inc. v. Allstate Ins. Co.*, No. 1:89-CV-114, 1991 WL 526300, at *5 (W.D. Mich. Oct. 30, 1991), does not support the pronouncement of the law applied here. In that case, the relevant statute, the Michigan Essential Insurance Act, applied to an identified term of an agency agreement entered into between the parties, and the legislation was intended to regulate the relationship between insurers and agents which was the subject of the contract. Plaintiff's view would lead to the absurd result of incoporating any law in the country into any relationship to provide goods or services notwithstanding the absence of any contractal terms.

Further, Plaintiff cannot base her contract claim on the speculative harm alleged in the complaint. Under Michigan law, a breach of contract claim requires a showing of cognizable damages or loss stemming from the breach. *See Hendricks v. DSW Shoe Warehouse, Inc.,* 444 F. Supp.2d 775 (W.D. Mich. 2006) (dismissing contract claim to recover the cost of a credit monitoring product purchased by store customer who sought to protect herself from identity theft after her personal information was compromised). *See also Sterk,* 2012 WL 5197901, at *8 (dismissing breach of contract claim under Illinois law based on Best Buys' retention of his Personally Identifiable Information). While Plaintiff alleges that she suffered "injury" (Opp. at 19), she fails to allege a *cognizable* injury. *See* Part I. And Plaintiff's unjust enrichment claim fails for similar reasons; there is no cognizable "benefit" that Time received here. *Id.*; Opening at 20.

Dated: January 7, 2013

| | |
|---|---|
| Robert M. Jackson (P40732) | By: /s/ Sharon L. Schneier |
| Arthur T. O'Reilly (P70406) | Sharon L. Schneier |
| Honigman Miller Schwartz and Cohn LLP | Collin J. Peng-Sue |
| 660 Woodward Avenue | Davis Wright Tremaine LLP |
| Detroit, MI 48226 | 1633 Broadway – 27th Floor |
| Telephone: (313) 465-7400 | New York, New York 10019 |
| rjackson@honigman.com | Telephone: (212) 489-8230 |
| | sharonschneier@dwt.com |

5

CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2013, I electronically filed the foregoing document with the Clerk of the Court via the ECF system, which shall send a notification of such filing to all counsel of record.

/s/ Sharon L. Schneier
Sharon L. Schneier
Collin J. Peng-Sue
DAVIS WRIGHT TREMAINE LLP
1633 Broadway – 27th Floor
New York, New York 10019
Telephone:  (212) 489-8230
Facsimile:  (212) 489-8340
sharonschneier@dwt.com
collingpengsue@dwt.com