## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ROSE COULTER-OWENS, individually, and on behalf of all others similarly situated, | Case No. 2:12-cv-14390-GCS-MKM |
| | Hon. George C. Steeh |
| Plaintiff, | **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| v. | |
| TIME INC., a Delaware Corporation, | |
| Defendant. | |

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff Rose Coulter-Owens respectfully requests that this Court certify this case as a class action and appoint her counsel as class counsel. Pursuant to Local Rule 7.1(a), Plaintiff's counsel conferred with counsel for Defendant Time, Inc., at which time Plaintiff's counsel explained the nature of the motion and its legal basis. Plaintiff's counsel requested, but did not obtain, concurrence in the relief sought.

For the reasons discussed in the accompanying brief, Plaintiff's motion should be granted.

## BRIEF IN SUPPORT
## OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

### ISSUE PRESENTED

Should this Court certify a proposed class of subscribers to *Time*, *Fortune*, and *Real Simple* magazines whose private information was disclosed by Defendant Time, Inc. in violation of Michigan's Video Rental Privacy Act. M.C.L. §§ 445.1711-.1715?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Federal Rule of Civil Procedure 23

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     THE VRPA ............................................................................................... 3

III.    FACTUAL BACKGROUND ....................................................................... 4

        A.    Time Discloses Its Subscribers' Private Information to
              Acxiom as Part of Its List-Rental Business.......................................... 5

        B.    Time Discloses Its Subscribers' Private Information to
              Wiland ████████████████████████
              ████████ .................................................................................... 8

        C.    Time Does Not Obtain Consent to Disclose Customers'
              Information Through Its Third Party "Agent" Subscription
              Model, and Uses Identical "Opt Out" Notices .................................... 9

        D.    Plaintiff Coulter-Owens's Experience ............................................... 11

IV.     ARGUMENT ........................................................................................... 12

        A.    The Proposed Class Satisfies the Requirements of Rule 23(a) ......... 13

              1.    The Proposed Class is Sufficiently Numerous ....................... 13

              2.    The Claims of the Proposed Class Share Common
                    Questions of Law and Fact ...................................................... 14

              3.    Plaintiff's Claims are Typical of the Proposed Class
                    Members' Claims ..................................................................... 18

              4.    Plaintiff and her Counsel Will Adequately Represent
                    the Class................................................................................... 20

        B.    The Proposed Class Falls within Rule 23(b) .................................... 21

              1.    Common Questions of Law and Fact Predominate ............... 22

2.   A Class Action is Superior to Other Available
Methods of Adjudication ........................................................ 23

C.   Plaintiff's Counsel Should Be Appointed Class Counsel .................. 25

V.   CONCLUSION ............................................................ 25

TABLE OF AUTHORITIES

UNITED STATES SUPREME COURT CASES:

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) .............................. 13, 21

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*,
    133 S. Ct. 1184 (2013) ................................................................ 23

*Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011) ................... 22

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........................................ 15

UNITED STATES CIRCUIT COURT OF APPEALS CASES:

*In re Am. Med. Sys., Inc.* 75 F.3d 1069 (6th Cir. 1996) ......................................... 19

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ................................................. *passim*

*Powers v. Hamilton Cnty. Public Defender Comm'n*,
    501 F.3d 592 (6th Cir. 2007) ...................................................... 22

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) .............................. 19

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) ................. 12, 24

UNITED STATES DISTRICT COURT CASES:

*Date v. Sony Elecs., Inc.*, 2013 WL 3945981 (E.D. Mich. July 31, 2013) ............ 20

*Davidson v. Henkel Corp.*, 302 F.R.D. 427 (E.D. Mich. 2014) ....................... 13,14

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001) .............. 24

*In re CMS Emergency Erisa Litig.*, 225 F.R.D. 539 (E.D. Mich. 2004) ......... 13, 20

*In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583 (E.D. Mich.1985) ........ 24

*In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD,
    2012 WL 2598819 (N.D. Cal. July 5, 2012) ........................................ 16, 17

*Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236 (E.D. Mich. 1997).............. 20

*Miller v. Optimum Choice, Inc.,* 2006 WL 2130640 (D.Md. July 28, 2006) ........ 17

*Parker v. Time Warner Entm't Co.*, 239 F.R.D. 318 (E.D.N.Y. 2007) ........... 16, 17

*Rice v. U.S.*, 211 F.R.D. 10 (D.D.C. 2002)............................................................ 16

*Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389 (N.D. Ohio 2012) .............. 17

*Supnick v. Amazon.com, Inc.*,
    2000 WL 1603820 (W.D. Wash. May 18, 2000) ........................................ 16

STATE COURT CASES:

*Banks v. Exxon Mobil Corp.*, 725 N.W.2d 455 (Mich. 2007) ............................... 18

*Jackson v. Detroit Med. Ctr.,* 278 Mich. App. 532 (2008).................................... 18

STATUTES:

Federal Rule of Civil Procedure 23 .................................................................*passim*

Michigan's Preservation of Personal Privacy Act,
    M.C.L. §§ 445.1711-15 ........................................................................ *passim*

Video Privacy Protection Act, 18 U.S.C. § 2710 .......................................... *passim*

MISCELLANEOUS:

Hon. William B. Murphy & John VandenHombergh,
    *Michigan Non-Standard Jury Instr. Civil* § 32:10 (2014)........................... 15

Natasha Singer, *Mapping, and Sharing, the Consumer Genome*, N.Y. Times
    (June 16, 2012), http://www.nytimes.com /2012/06/17/technology/acxiom-
    the-quiet-giant-of-consumer-database-marketing.html (last visited March 6,
    2015).......................................................................................................... 5

*Privacy: Sales, Rentals, of Videos, Etc.*, House Legislative Analysis Section,
H.B. No. 5311, Jan. 20, 1989 ........................................................................ 3

## I.   INTRODUCTION

This lawsuit challenges Defendant Time, Inc.'s ("Defendant" or "Time") systematic violation of Michigan's Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-15, which is commonly referred to as the Video Rental Privacy Act ("VRPA" or "the Statute"). Over the past six years, Time[1] has acted in total disregard of the VRPA by selling and trading its customers' magazine purchase records—including their full names, addresses, and subscription titles—to a host of unrelated companies as a matter of policy and practice. ████████████ ████████████████████████████████████████████████ ████████████████████████████████ to third-party data miner Acxiom Corporation ("Acxiom") and a third-party "database cooperative" company called Wiland Direct ("Wiland").

Given that these automatic disclosures establish a *prima facie* claim under the VRPA, the main focus of summary judgment and/or trial will be on Time's affirmative defenses, namely (i) whether Time obtained its customers' "written permission" to disclose their magazine purchase records, and (ii) whether the disclosures were made for the "exclusive purpose of marketing goods and services directly to the consumer" (and if so, whether the statutorily required opt-out notice

---

[1] Throughout this brief, "Time" refers to the publisher, Defendant Time, Inc., while "*TIME*" refers to the magazine of that title.

was provided). § 445.1713(a), (d). Discovery has shown that these issues will necessarily be resolved on a class-wide basis. Indeed, for customers that purchased a subscription through a third-party website—the proposed class defined below—Time admits ████████████████████████████████████████ ██████████████████████████████████████████. And, Time can't claim that it's otherwise exempt from liability because the disclosures at issue were not made for the "exclusive purpose" of direct marketing, nor did Time even provide the requisite opt-out notice before the disclosures were made.

That said, now is not the time to decide the merits and Time's liability. Rather, the focus at this stage of the case is strictly on whether class certification is appropriate. To that end, Plaintiff requests that the following class be certified:

> All Michigan residents who between March 31, 2009 and November 15, 2013 purchased a subscription to *TIME*, *Fortune*, or *Real Simple* magazines through any website other than Time.com, Fortune.com, and RealSimple.com. (the "Class").

This case presents a textbook example of a claim suitable for class certification. Plaintiff's claims—and the facts giving rise to them—are the exact same for every single member of the Class. Indeed, the Class members' claims arise from Time's automatic disclosure of their magazine purchase records to a variety of unrelated third party companies, including Acxiom and Wiland.

Thus, looking forward, this litigation is able to resolve for the entire class—in a single stroke—every factual and legal issue in this case, including whether

Time obtained written permission from its customers to disclose their magazine purchase records, and whether the disclosures were otherwise exempted by the Statute. Regardless of how the fact finder decides, the answer will be the same the entire Class, making this case readily amendable to class-wide adjudication.

Accordingly, Plaintiff respectfully requests that the Court certify this case as a class action pursuant to Fed. R. Civ P. 23(b)(3).

## II.   THE VRPA

The VRPA prohibits Time and other magazine publishers from disclosing certain information about their subscribers. The statute was passed shortly after its more limited federal analogue, the federal Video Privacy Protection Act, 18 U.S.C. § 2710[2], which resulted from the bipartisan outrage over the disclosure of the video rental records of then-Supreme Court nominee Robert Bork's family. *See Privacy: Sales, Rentals, of Videos, Etc.*, House Legislative Analysis Section, H.B. No. 5311, Jan. 20, 1989. The Michigan Legislature acknowledged that Michiganders "recognize that a person's choice in reading, music, and video entertainment is a private matter, and not fit for consideration by gossipy publications, employers, clubs, or anyone else." *Id.*

---

[2] As the federal legislative history demonstrates, one of the major motivations behind enactment of the federal law was Congressional concern over the creation of individual digital dossiers of ordinary consumers' behavior, precisely like Time is enabling with the disclosures of its subscribers reading materials. Sen. Rep. 100-599, at 5-6.

The VRPA is clear about the conduct it prohibits:

> a person, or an employee or agent of the person . . . engaged in the business of selling at retail . . . written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712. The only two relevant exceptions to this general prohibition—the disclosures are permitted (1) if made "with the written permission of the customer," and (2) "if the disclosure is for the exclusive purpose of marketing goods and services directly to the consumer . . . [and the disclosing party informs] the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information." (*See* dkts. 47, 65 at 11, 16-17); M.C.L. § 445.1713(a), (d). As noted above and explained further below, the factual evidence needed for Plaintiff and every other class member to establish each element of their case (and defeat Time's defenses) are common and focus solely upon its conduct.

## III.   FACTUAL BACKGROUND

Time is company that sells subscriptions to special interest magazines. (*See* Ex. A.)[3] But Time is not just in the business of publishing magazines—Time

---

[3] All references to Exhibits refer to Exhibits that are attached to the Declaration of Ari J. Scharg ("Scharg Decl."), which submitted concurrently with, and in support of, this Motion. References to page numbers within Exhibits refer to the Bates numbers that appear on the documents produced through discovery.



■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. When a consumer subscribes to a Time

magazine, Time ■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■." (Dep. Tr. of Time's Rule 30(b)(6) designee

Scott Breininger ["Breininger Dep."] (Ex. B), at 19:10-23; 130:6-133:19; Def.'s

Resps. 2d Interrogs. (Ex. C) at No. 2; *see also* Time_RCO_0047660-68 (Ex. D).)

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■.

## A.  Time Discloses Its Customers' Private Information to Acxiom as Part of Its List-Rental Business.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■. (Breininger Dep. at 19:24-

20:20; 67:1-8.) Acxiom has been described as "the quiet giant of a multi-billion

dollar industry known as database marketing." Natasha Singer, *Mapping, and

Sharing, the Consumer Genome*, N.Y. Times (June 16, 2012),

http://www.nytimes.com /2012/06/17/technology/acxiom-the-quiet-giant-of-

consumer-database-marketing.html (last visited March 13, 2015). It has reportedly

amassed the world's largest commercial database on consumers, integrating what it

knows about their offline, online, and mobile behavior to create in-depth profiles

of 190 million individuals and 126 million households in the United States. *Id.*



(Breininger Dep. at 19:10-20:20, 67:1-24)—

(*id.* at 235:4-236:4).

. (*Id.* at 132:5-24; 156:7-157:10; 179:12-180:21.)

. (*See* Ex. C at No. 3; *see also* Def.'s Resps. 1st Interrogs. (Ex. E) at No. 10; Breininger Dep. at 250:18-23.)

. (Breininger Dep. at 10:14-11:1; 104:22-105:20; 121:11-123:11.)[4] But rather than simply "renting" its customer subscription lists, Time offers the much more valuable opportunity to target specific subsets of its customers based on the particular needs of the "renter." For example, one can rent subsets of the *TIME*

---

[4] *See* "Time's 2012 List Rental Corporate Overview" (Group Ex. F) at 001661 (                                                                );
"Time's Top Lists for Fundraising and Nonprofit Membership Offers" (Ex. G).

subscription list based on over ██ ethnic or religious "selects," such as African-

American, Catholic, ██████ or Jewish subscribers. (*See* Time Datacards (Group

Ex. H); *see also* Time-Axciom Restatement of Work (Ex. I) at 000961-95.) Time

also offers lists of subscribers based on a variety of other "selects" including age,

income level, political affiliation, children's ages, homeownership, pet ownership,

charitable donations, and past purchasing behavior, amongst hundreds of others.

(Group Ex. H; Ex. I.) When a renter chooses which attributes (in addition to

subscribing to a particular Time magazine) to target, ██████████████████

████████████████████████████████████████████

████████████████. (Breininger Dep. at 30:18-31:13.) ██████████████

████████████████████████████████████████████

(Ex. E No. 10.)[5] While certain of these facts highlight the privacy intrusions that

Michigan sought to prevent with the VRPA, here, all that matters is that discovery

has confirmed that the same information was provided by Time to Acxiom about

Plaintiff and the proposed class members in the exact same manner.

---

[5] ██████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████, (Time-Acxiom Contract
(Ex. J) at 001013) ████████████████████████
██████████████████ (*see id.* at 001001; Ex. I at
000897, 000920-926). ██████████████████████████
██████████████. (*Id.* at 000910-911.)

**B.     Time Discloses Its Customers' Private Information to Wiland** ███

███████████████████████████████████████████

███████████████████████████████████████████████

███ (Breininger Dep. at 72:16-18, 76:8-21, 85:22-86:19; Time-Wiland Contract (Ex K) at 000212.) Wiland is a self-described "leading marketing intelligence company," also known as "big-data." (*See* Wiland Website Screenshots (Group Ex. L) at 2-3.) It offers a variety of services to magazine publishers, including assisting with subscriber acquisition and reactivating expired subscribers. (*Id.* at 6-17.)

To provide these services, Wiland maintains a "cooperative database" that contains information on a staggering 235 million consumers, 110 million households, and around 160 million known magazine subscriptions. (*Id.* at 9-17.) Wiland boasts that "[w]ith transaction data regularly supplied by our 2,500+ clients, this database enables us to understand the reading, buying, and giving behavior of virtually every adult in the U.S." *Id.*

Time is one of the 2,500+ clients who regularly supply data to Wiland. ███

██████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████



(Ex. K at 000212; Breininger Dep. at 87:9-88:24.)

. (Breininger Dep. at 74:5-76:21; Amendments to Time-Wiland Contract (Group Ex. M).)

.

### C.   Time Does Not Obtain Consent to Disclose Customers' Information Through Its Third Party "Agent" Subscription Model, and Uses Identical "Opt Out" Notices.

Two other uniform aspects of Time's disclosure practices are relevant to class certification: (1) what, if any, efforts Time makes to secure its customers' written consent to its disclosure practices during the subscription process itself, and (2) what, if anything, is provided allowing those who subscribe to opt-out of third party disclosures.

While subscriptions can be purchased from Time, ██████ Time's magazine subscriptions are sold through its various "agents." (Ex. E, No. 3; Breininger Dep. at 124:22-130:2.)



---

6 ██████████████████████████████████████████
████████████████████████████████████ (Ex. K at 000212.)

███████████████████████████████████████████████████

███████████████. (Ex. B, No. 1; Ex. E, Nos. 4, 5.) Discovery has shown that

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████. As Scott Breininger, Time's Vice President of

Marketing and Rule 30(b)(6) designee, testified:



(Breininger Dep. at 174:17-175:10.)[7]

Much like the uniformity in the lack of written consent for the disclosures,

---

[7] Time's interrogatory answers confirm this. When asked to explain how it purportedly obtained customers' written permission to disclose their protected information, Time stated that ████████████████████████████████ ████████████████████████████ (Ex. E., No. 14) Time did *not* state that it obtained written permission from those who did *not* purchase subscriptions directly through Time's online subscription process (*i.e.*, those who subscribed through third-party agents); rather, Time asserted ████████████████████████████████ ████████████████████████ " (*Id.*)

discovery has also shown that Time's "opt-out notices" were identical in form and content. The supposed "notices" were provided at the bottom of a single page of each *TIME*, *Fortune*, and *Real Simple* magazine in miniscule font and were identical for all issues published during the relevant time period.[8] (*See* Scharg Decl. ¶¶ 7-10.) The "notices," broken down by magazine, stated:

- *TIME:* "Mailing List: We make a portion of our mailing list available to reputable firms. If you would prefer that we do not include your name, please call, or write us at P.O. Box 60001, Tampa, Fla. 33630, or send us an email at privacy@time.customersvc.com. . . ." (*See* Ex. N.)

- *Fortune*: "Mailing List: We make a portion of our mailing list available to reputable firms." (*See* Ex. O.)

- *Real Simple*: "Mailing List: We make a portion of our mailing list available to reputable firms." (*See* Ex. P.)

(Scharg Decl. ¶¶ 7-10.) In addition, ██████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████. (Breininger Dep. 215:7-216:6 .)

### D.    Plaintiff Coulter-Owens's Experience

Plaintiff is a Michigan resident who purchased subscriptions to *TIME*, *Fortune*, and *Real Simple* in November 2009.. (Ex. E, No. 4; Dep. Tr. of Rose Coulter-Owens ("Rose Tr.") (Ex. Q) 56:4-57:19.) Plaintiff purchased her subscriptions online through one of Time's agents. (Ex. E, Nos. 4, 5.) At no time

---

[8] What's more, the notices were provided weeks *after* the disclosures to Acxiom had been made. (Breininger Dep. 132:5-24; 156:7 – 157:10; 179:12 – 180:21.)

when purchasing the subscriptions nor any time thereafter did Plaintiff provide

Time with consent to disclose her name and address in connection with her

magazine subscription information to third parties. (Breininger Dep. at 174:17-

175:10.) Nonetheless, discovery has confirmed that, like every member of the

proposed class, ████████████████████████████████████████████

██████████████████████████████████████. (Ex. C, Nos. 3, 4; Ex. E,

No. 9; Breininger Dep. at 19:24-20:20; 67:1-8, 72:16-18, 76:8-21, 85:22-86:19.)

## III.   ARGUMENT

To be certified, a proposed class must satisfy all the criteria set forth in

Federal Rule of Civil Procedure 23(a) and one of the criteria set forth in Rule

23(b). *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722

F.3d 838, 850 (6th Cir. 2013).[9] This Court must perform a "rigorous analysis" of

whether the Rule 23 factors are met, which may include "touching" aspects of the

merits. *Id*. at 851. Nevertheless, consideration of the merits is limited to

determining whether the Rule 23 factors are met, and certification proceedings are

---

[9]  In addition, the definition of a proposed class "must be sufficiently definite so
that it is administratively feasible for the court to determine whether a particular
individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*,
693 F.3d 532, 537-38 (6th Cir. 2012). For a class to be sufficiently defined, "the
court must be able to resolve the question of whether class members are included
or excluded from the class by reference to objective criteria." *Id*. at 538. Here,
every element of the proposed class definition (Michigan residency, magazines
subscribed to, and purchase method) is objective and present in Time's records,
thus rendering the proposed class sufficiently definite.

not "a dress rehearsal for trial on the merits." *Id.* at 851-52. Further, any doubts about granting class certification should be resolved in favor of certification. *In re CMS Emergency Erisa Litig.*, 225 F.R.D. 539, 542 (E.D. Mich. 2004). Here, the proposed class easily satisfies all the requirements of Rule 23(a) and of the categories of Rule 23(b). Consequently, the proposed class should be certified.[10]

### A.   The Proposed Class Satisfies the Requirements of Rule 23(a).

Rule 23(a) requires (1) that the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity), (2) that there are questions of law or fact common to the proposed class (commonality), (3) that the claims of the plaintiff are typical of those of the class (typicality), and (4) that the plaintiff will fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a). Each of these elements is met here.

### 1.   The Proposed Class is Sufficiently Numerous.

The first requirement of Rule 23(a)—numerosity—is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). While no strict numerical test exists, "substantial" numbers of affected consumers satisfy this requirement. *Whirlpool*, 722 F.3d at 852. It is "generally

---

[10] This Court previously certified a class of subscribers in a similar VRPA action against a publisher. *See Halaburda v. Bauer Publ'g Co.*, No. 2:12-cv-12831-GCS-RSW (Sept. 26, 2014). While class certification there occurred in the context of settlement, the standards are no different than certification in an adversarial context. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

accepted" that a class of forty or more members is sufficient to satisfy the numerosity requirement, and both the Sixth Circuit and courts in this District have certified classes with as few as thirty-five members. *Davidson v. Henkel Corp.*, 302 F.R.D. 427, 436 (E.D. Mich. 2014) (certifying class of forty-nine plaintiffs).

Here, discovery has confirmed that between 2009 and 2013, the average number of Michigan residents who purchased subscriptions to any Time magazine through a third-party agent ranged from ████████████████████████ ████████████████████████████████████ ████████████████████. (TIME Publisher Statements (Group Ex. R) at 000190-194.) As such, there is little question that the proposed Class is sufficiently numerous.

### 2.   The Claims of the Proposed Class Share Common Questions of Law and Fact.

The second requirement of Rule 23(a)—commonality—is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To demonstrate commonality, the claims of all class members "must depend upon a common contention," determination of the truth or falsity of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Whirlpool*, 722 F.3d at 852. This inquiry focuses on "whether a class action will generate common answers that are likely to drive resolution of the lawsuit." *Id*. There need only be a single common question in order to certify a class. *Id*. at 853.

Here, the common contention on which the claims of all members of the proposed class depend is that Time disclosed each class member's magazine subscription records—including full name, home address, and magazine title—to Acxiom and Wiland in violation of the VRPA. Determination of the truth or falsity of this contention will resolve an issue—indeed, *the* issue—central to the validity of each class member's claims in one stroke. Determining whether Time disclosed class members' information in violation of the VRPA raises numerous common questions that track the elements required to establish Plaintiff's claim, including: (1) whether Time is "engaged in the business of selling at retail . . . written materials," (2) whether Plaintiff and the proposed class purchased written materials from Time, (3) whether Time disclosed to Acxiom and Wiland "information concerning the purchase . . . of those materials by a customer," and (4) whether the disclosed records or information indicated the identity of the Plaintiff and the proposed class. M.C.L. § 445.1712; *see also* Hon. William B. Murphy & John VandenHombergh, *Michigan Non-Standard Jury Instr. Civil § 32:10* (2014). As such, it is a common question whether Plaintiff and the proposed class members all suffered the same injury that entitles them to damages as a result. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Each of these legal questions can be determined on a class-wide basis, using the same evidence regarding Time's practices that affected each Michigan resident who purchased a

15

subscription to *TIME*, *Fortune*, or *Real Simple* from a Time subscription agents.

Numerous courts, including this Court in *Halaburda v. Bauer Publ'g Co.,* have held that cases like this one—in which defendants are accused of uniformly disclosing information protected by a privacy statute—raise common issues of fact or law. *See, e.g., In re Netflix Privacy Litig.*, 2012 WL 2598819, at *3 (N.D. Cal. July 5, 2012) ("There are questions of law or fact common to class members because all claims for relief arise from [defendant's] stated policy for and a uniform practice of retaining and disclosing [statutorily-protected information]— affecting all those individuals in the same way.") (internal citation omitted); *Supnick v. Amazon.com, Inc.*, 2000 WL 1603820, *1 (W.D. Wash. May 18, 2000) (finding commonality established where defendants engaged in common course of conduct toward every member of proposed class: disclosing their personal information without their consent); *Rice v. U.S.*, 211 F.R.D. 10, 14 (D.D.C. 2002) ("[C]ommonality and typicality are established by the central fact of the apparent wholesale release of [statutorily-protected information] and by the fact that the suit alleges the same type and amount of harm to each class member."); *Parker v. Time Warner Entertainment Co.*, 239 F.R.D. 318, 329-30 (E.D.N.Y. 2007) (commonality established where "the claims are derived from the same legal theory and based upon the same factual question—whether class members were injured because of [defendant's] disclosure of their [statutorily-protected

information] without properly notifying them of that practice").

In addition, Time's potentially available statutory defenses can and do present additional common questions. *See, e.g., Miller v. Optimum Choice, Inc.,* 2006 WL 2130640, at *7 (D.Md. July 28, 2006) ("Because the affirmative defenses are common across the putative class members, the defenses would not operate to destroy the predominance of common questions across the class, but would instead provide an additional link of commonality between the class members.") So while Time's disclosures could be permissible with the written permission its subscribers, no possible individual issue exists as consent can be shown on a class-wide basis from ███████████████████████ ████████████████. (Breininger Dep. at 174:17-175:10); *see also Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 393 (N.D. Ohio 2012) (finding issue of consent a common question where defendant "admitted at deposition that he did not have consent from any person, or take steps to confirm that consent was made . . . [and] defendant is unable to realistically argue that individual issues regarding consent outweigh the commonality.")

Similarly, whether conduct falls within the statutory exception allowing for disclosure of protected information "[i]f the disclosure is for the exclusive purpose of marketing goods and services directly to the consumer" and, if so, whether "written notice that the customer may remove his or her name at any time" was

given is also a common question. M.C.L. § 445.1713(d). First, because Time's purposes for the at-issue disclosures were identical with respect to all proposed class members, whether such disclosures were made *exclusively* for the "purpose of marketing goods and services directly to the consumer" will have a common answer based on the same evidence from Defendant.[11] Second, because Time's purported opt-out notices were the same for each at-issue magazine, whether such notices were sufficient under the VRPA is a legal question common to all proposed class members and can be determined as a matter of law. *See*, *e.g.*, *Jackson v. Detroit Med. Ctr.,* 278 Mich. App. 532, 544-45 (2008) (finding that the sufficiency of a written notice statutorily required by the M.C.L. is an issue of law for the court); *c.f. Banks v. Exxon Mobil Corp.*, 725 N.W.2d 455 (Mich. 2007) (finding the question of whether a defect has existed for a sufficient length of time and under circumstances that the defendant is deemed to have notice is a question of fact).

Accordingly, Rule 23(a)(2)'s commonality requirement is satisfied.

### 3. Plaintiff's Claims are Typical of the Proposed Class Members' Claims.

---

[11] While consideration of the merits is limited on class certification, discovery has shown that  (*see*, *e.g.*, Ex. F at 001661; Ex. G at 009252-9259) and (2) . As such, the Court will likely never have to evaluate the sufficiency of the opt-out notices.

The third Rule 23(a) requirement—typicality—is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of all other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.* 75 F.3d 1069, 1082 (6th Cir. 1996). This requirement "insures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Whirlpool*, 722 F.3d at 852-53. As the Sixth Circuit has noted, "[t]he premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

Here, Plaintiff's VRPA claim arises out of the same course of conduct, is based on the same statute as the claims of every member of the proposed class, and if successful will result in identical statutory payments. Plaintiff and the proposed class all purchased their subscriptions to *TIME*, *Fortune*, and *Real Simple* magazines in the same manner, and Time disclosed the names and subscription data of *all* such customers to Acxiom and Wiland. If these disclosures violate the VRPA, then by pursuing her own interests in prosecuting her claim, Plaintiff will advocate for the interests of the entire class. If she wins, the whole class wins, and

19

the typicality requirement is therefore satisfied. *See, e.g., Date v. Sony Elecs., Inc.*, 2013 WL 3945981, *3 (E.D. Mich. July 31, 2013) ("Because all Class Members' claims arise from the same course of conduct . . . their claims are based on the same legal theory and the typicality requirement, which is not onerous, is met."); *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997). (finding typicality met where "[t]he class representatives' claims arise from precisely the same events, legal documents, and consequences and legal theories affecting all [class members]").

### 4.  Plaintiff and her Counsel Will Adequately Represent the Class.

The final Rule 23(a) requirement—adequacy—is met where Plaintiff "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this requirement, Plaintiff "[1] must have common interests with the unnamed class members; and [2] will vigorously prosecute, using qualified counsel, the interests of the class." *In re CMS*, 225 F.R.D. at 544. Here, as discussed above, Plaintiff and the proposed class members have common interests because they were all harmed in the same way by Time. The monetary and injunctive relief sought by Plaintiff through this suit is the same (no more, no less) than the relief that every class member could seek for the violations alleged here.

Further, Plaintiff has vigorously pursued these common interests and will continue to do so. Plaintiff has engaged in extensive written discovery, took the

20

deposition of Time's Rule 30(b)(6) designee, and sat for her own deposition. (Scharg Decl. ¶¶ 2-3.) In addition, she is represented by extremely qualified counsel. Plaintiff's counsel have extensive experience in class actions of similar size, scope, and complexity to the instant action. (*Id.* ¶¶ 4.) They regularly engage in major complex litigation involving consumer privacy statutes (including the VRPA), have the resources necessary to see this litigation through to its conclusion, and have frequently been appointed lead class counsel by courts throughout the country. (*Id.* ¶¶ 4-5.) Indeed, this Court previously appointed Plaintiff's counsel to represent a class of magazine subscribers with similar VRPA claims against a publisher, where counsel negotiated a favorable class settlement. (*Id.* ¶¶ 5.) As such, Rule 23(a)(4)'s adequacy requirement is met.

## B.   The Proposed Class Falls within Rule 23(b).

In addition to meeting all four of Rule 23(a)'s prerequisites for certification, the proposed class must also fall within one of the subsections of Rule 23(b). Here, the proposed class falls within Rule 23(b)(3).

The purpose of Rule 23(b)(3) is "to cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (internal quotations omitted). A court may certify a class under Rule 23(b)(3) where "the

21

questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed class here satisfies both prongs of Rule 23(b)(3).

### 1.   Common Questions of Law and Fact Predominate.

The "focus of the predominance inquiry" is whether the proposed class "is sufficiently cohesive to warrant adjudication by representation." *Whirlpool*, 722 F.3d at 860. The predominance test "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). "The predominance requirement is met if [a] common question is at the heart of the litigation." *Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Here, as discussed above with respect to Rule 23(a)'s commonality and typicality requirements, it is. Each element of Plaintiff's claim, and Time's statutory defenses, presents common questions of law resolvable through the same evidence, all of which focuses on Time's conduct, rather than individual class members'. Time disclosed the subscription records of all proposed class members to Acxiom and Wiland, and the disclosures violate the VRPA. The common questions that will answer this

question are central to this litigation, and predominate over any individual issues.[12]

As the Sixth Circuit has explained, "[c]ases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Powers*, 501 F.3d at 619. In *Powers*, like here,

> [Plaintiff] has asserted a single factual theory of wrongdoing and seeks to recover based on the single legal claim that [Defendant] violated class members' . . . rights. The dispositive facts and law are the same as to each class member. This is sufficient to satisfy both the commonality and predominance requirements.

*Id*. Because Time engaged in one course of conduct with respect to all members of the class, their claims "will prevail or fail in unison," and the predominance prong of Rule 23(b)(3) is met. *Whirlpool*, 722 F.3d at 859 (quoting *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013)).

## 2.   A Class Action is Superior to Other Available Methods of Adjudication.

Like predominance, the superiority prong of Rule 23(b)(3) is also satisfied here. "Where many individual inquiries are necessary, a class action is not a superior form of adjudication. However, where a threshold issue is common to all class members, class litigation is greatly preferred." *Young*, 693 F.3d at 545. Here, as discussed above, all questions necessary to determine whether Time violated the

---

[12]   Indeed, it's not clear there are *any* individual issues in this lawsuit, in light of Time's admission that no customer purchasing a subscription through a third-party gave written permission for the disclosures. (Breininger Dep. at 174:17-175:10.)

VRPA are common to all class members, rendering each member's claim susceptible to resolution in one suit with common evidence. A class action suit is a much more efficient use of judicial and party resources than—and thus, superior to—multiple individual suits. *See In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 326 (E.D. Mich. 2001) ("[P]roceeding with this . . . litigation as a class action will achieve economies of both the litigants' and the Court's time, efforts and expense. Repeatedly litigating the same issues in individual suits, if certification were denied,. . . would consume many more judicial resources than addressing them at a single blow. . . .") (internal quotations omitted); *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 610-11 (E.D. Mich.1985) (noting conservation of judicial resources as a reason class action was superior); *id.* at 614 ("Significant judicial economies are achieved by one rather than ninety-one determinations of . . . common questions. . . .).

In addition, many members of the proposed class may not even be aware that Time is disclosing their reading habits to Acxiom and Wiland. Where consumers are unlikely to discover (and vindicate) injuries absent certification of a class, class treatment is superior to the alternatives. *Young*, 693 F.3d at 545-46.

The proposed class satisfies the predominance and superiority prongs of Rule 23(b)(3) and meets the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a). As such, the Court should certify the proposed class.

### C.    Plaintiff's Counsel Should Be Appointed Class Counsel.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider (1) counsel's work in identifying or investigating potential claims, (2) their experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) their knowledge of the applicable law, and (4) the resources counsel has committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). As discussed above, Plaintiff's counsel have extensive experience prosecuting privacy class actions, including a similar VRPA suit on behalf of a class of magazine subscribers against another publisher. (Scharg Decl. ¶ 5.) Importantly, Plaintiff's counsel have diligently investigated and prosecuted *this* matter by dedicating substantial resources to the investigation and litigation of the claims for the benefit of the proposed class. (*Id.* ¶ 6.) Accordingly, Plaintiff respectfully requests that this Court appoint Ari J. Scharg of Edelson PC as class counsel.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order (1) certifying the proposed Class of with Plaintiff as class representative, (2) appointing Ari J. Scharg of Edelson PC as class counsel, and (3) granting such other and further relief as this Court deems equitable and just.

Dated: March 13, 2015                         Respectfully submitted,

                                              **Rose Coulter-Owens**, individually
                                              and on behalf of all others similarly
                                              situated


                                              By:   /s/ Ari J. Scharg
                                                    One of her attorneys

Henry M. Scharg
LAW OFFICE OF HENRY M. SCHARG
302 W. Main Street
Northville, Michigan 48167
Tel: (248) 596-1111
Fax: (248) 596-1578
hmsattyatlaw@aol.com

Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
J. Dominick Larry
nlarry@edelson.co
EDELSON LLC
350 N. LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

*Counsel for Plaintiff Rose Coulter-Owens and the putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Ari J. Scharg, an attorney, certify that on March 13, 2015, I served the above and foregoing ***Plaintiff's Motion for Class Certification*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.


/s/ Ari J. Scharg