UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSE COULTER-OWENS, individually and
on behalf of all others similarly situated,

        Plaintiff,

                               CASE NO. 12-CV-14390
v.                               HONORABLE GEORGE CARAM STEEH

TIME, INC., a Delaware Corporation,

        Defendant.

_____/

OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION TO CERTIFY CLASS (DOCS. #82, 83)

This matter is before the court on plaintiff's motion for class certification (Docs. #82, 83). Plaintiff brings this putative class action under Michigan's Video Rental Privacy Act ("VRPA"), Mich. Comp. Laws §§ 445.1711, et seq., alleging that defendant improperly disclosed the private information of people who subscribed to *TIME*, *Fortune*, and *Real Simple* magazines through third-party websites.[1] For the reasons that follow, plaintiff's motion for class certification will be granted.

I. BACKGROUND

Plaintiff Rose Coulter-Owens, on behalf of herself and a putative class, brought this action against defendant Time, Inc., the publisher of the magazines *TIME*, *Fortune* and

_____

[1] This case, assigned to Judge Gershwin Drain, and *Grenke v. Hearst Communications, Inc.*, No. 12-cv-14221, were reassigned to the docket of this court in January 2013 for the limited purpose of coordinated or consolidated pretrial proceedings with *Halaburda v. Bauer Publishing Co.*, No. 12-12831. Since then, the *Grenke* case was dismissed pursuant to a joint motion by the parties, and the *Halaburda* case settled.

*Real Simple*, among others.  Plaintiff alleges that Michigan consumers who purchased these three magazines through defendant's third-party agents on the Internet, such as www.magazines.com (as opposed to having purchased the magazines directly through defendant), had their "record or information concerning the purchase" unlawfully disclosed to two marketing companies defendant does business with, in violation of the VRPA. Plaintiff "subscribed to Time magazine through a BizRate promotion process which allowed her to purchase a subscription to Time magazine at a discounted rate. . . Additionally, Plaintiff subscribed to other Time magazines, including Fortune and Real Simple through similar BizRate promotions."  (Def's. Resp. to First Set of Interrogs. No. 4).

The VRPA directs:

> Except as provided in section 3 or as otherwise provided by law, a person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings shall not disclose to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer.

Mich. Comp. Laws § 445.1217 (footnote omitted).

Plaintiff seeks to certify the following class:

> All Michigan residents who between March 31, 2009 and November 15, 2013 purchased a subscription to *TIME*, *Fortune*, or *Real Simple* magazines through any website other than Time.com, Fortune.com, and RealSimple.com.

When a person orders one of defendant's magazines through a third party agent, certain information is collected for defendant, such as the subscriber's name, address and magazine choice.  (Exhibit D to Scharg Decl., Disclosure List Fields).  This information, through an automated process, is sent to defendant's fulfillment center to process the order.  (Breininger Dep. 133:5-9).  Subscriber information is later sent by defendant to

multiple third parties for different reasons.  (Def's. Resp. to Second Set of Interrogs. #4).

Relevant here, plaintiff challenges defendant's practices in sending subscriber information

to two specific companies.

First, all of defendant's subscriber information — including people who purchase a

subscription from one of defendant's third party agents — is sent by defendant to Acxiom

Corporation ("Acxiom"), a "marketing database vendor," on a weekly or bi-weekly basis.

(Breininger Dep. 19:8-9; 67:15-21; 180:13-21).  According to defendant, Acxiom "has some

limited access to subscriber information for the purposes of managing and performing

technical troubleshooting related to the subscriber database, to assist Time in fulling list

rental orders, and to append data to assist in marketing to customers."  (Def's. Resp. to

First Set of Interrogs. No. 3).   Essentially, "when someone's order comes [in], the

information that's sent to [defendant's] fulfillment center about [the order] then is sent to

Acxiom."  (Breininger Dep. 19:17-20).  Acxiom then appends the lists it receives from

defendant with additional information, such as the subscriber's age, income level, ethnicity,

marital status and health status, among other information.  (*Id.* 235:8-236:8).  This

information is allegedly rented to companies who want to target specific audiences.  For

example, in 2012, millions of defendant's subscribers received a "Mitt Romney For

President" mailer, while others received a mailer from "AARP."  *See* (Doc. #85-6).

Second, defendant also discloses certain subscriber information for the magazines

*TIME*, *Fortune* and *Real Simple* — customer names, addresses and magazine titles

ordered — to a third-party database cooperative, Wiland Direct ("Wiland"), on a quarterly

basis.  (Breininger Dep. 72:16-18; 76:8-18; 86:15-19).  Defendant began disclosing

subscriber information of *Time* in 2007 (Scharg Declr. Ex. M), *Fortune* in 2009 (*id.*), and

-3-

*Real Simple* in 2010 (*Id.*).  Wiland "offers a variety of services to magazine publishers, including assisting with subscriber acquisition and reactivating expired subscribers." (Pl's. Mot. at 8; Doc. #83 at 16).  Defendant's disclosure of customer information to Wiland allows it to be part of the cooperative and access information contributed by other companies to Wiland.  (Breininger Dep. 88:20-24); *see also* (Scharg Declr. Ex. K, Wiland Direct Cooperative Database Agreement for Publishers).  In other words, defendant contributes to the Wiland database so that it can take advantage of the information contributed to the database by other companies.  The origin of a subscriber's information is anonymous to other users of the cooperative.  (Breininger Dep. 21:9-24).  Time benefitted to the tune of millions of dollars from its subscriber list revenue business from 2008 through 2013.  (Def's. Resp. to First Set of Interrogs. No. 10).

Defendant's third-party rental customers use the subscription information to send mailers, fundraising and nonprofit offers to the subscriber, among other things.  Each of the three magazines at issue provided notice to subscribers to opt-out somewhere inside the magazines, and defendant provides notice of the ability to opt out on its website, bills and renewal notices.  For example, inside of defendant's magazines, subscribers are notified that "[w]e [defendant] make a portion of our mailing list available to reputable firms."  *See* (Landis Declr. Ex. T, *Fortune* Magazine Notice).  On invoices, customers are informed that, "[o]ccasionally we [defendant] make a portion of our mailing list available to carefully selected firms whose products might be of interest to you.  If you would prefer not to receive mailings or e-mails from these companies, please initial in the space provided." *See* (Landis Declr. Ex. Z, *Time* Magazine Invoice).

-4-

Plaintiff contends that defendant's disclosure of customer information to Acxiom and Wiland violates the VRPA because the information is disclosed without a customer's written consent and the disclosures are not made for the "exclusive purpose of marketing goods and services directly to the consumer."

The VRPA allows for disclosure of a customer's information in only limited circumstances:

> A record or information described in section 2 may be disclosed only in 1 or more of the following circumstances:
>
> (a) With the written permission of the customer.
>
> (b) Pursuant to a court order.
>
> (c) To the extent reasonably necessary to collect payment for the materials or the rental of the materials, if the customer has received written notice that the payment is due and has failed to pay or arrange for payment within a reasonable time after notice.
>
> (d) If the disclosure is for the exclusive purpose of marketing goods and services directly to the consumer. The person disclosing the information shall inform the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information.
>
> (e) Pursuant to a search warrant issued by a state or federal court or grand jury subpoena.

Mich. Comp. Laws § 445.1713.

Plaintiff's putative class action complaint is in three counts: Count One- Violation of the Video Rental Privacy Act, Mich. Comp. Laws § 445.1712; Count Two- Breach of Contract; and Count Three- Unjust Enrichment. Plaintiff, however, seeks class certification only on the VRPA claim. *See* (June 2, 2015 Hearing Tr. 43:19-23, Doc. #115).

Defendant argues that the court should decline to certify the proposed class. First, defendant argues that the proposed class is not ascertainable. Second, defendant argues that the court should decline to certify the proposed class because the factors required pursuant to Rule 23(a) and (b) of the Federal Rules of Civil Procedure have not been satisfied.

The motion to certify has been fully briefed. The court held a hearing to address the motion on June 2, 2015, ultimately taking the motion under advisement. This opinion and order constitutes the court's decision on the motion.

## II. LEGAL STANDARD

In order to determine whether to grant class certification, the court is required to engage in a "rigorous analysis" which may require analysis behind the pleadings. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Gooch v. Life Investors Ins. Co.*, 672 F.3d 402, 417–18 (6th Cir. 2012). "The class-action device is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrand*, 133 S. Ct. 1426, 1432 (2013) (internal quotations and citations omitted). Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979). For in such cases, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 155 (1982) (internal quotation marks and citations omitted). District courts have broad

-6-

discretion in certifying class actions, and their decisions on whether to certify a class will only be set aside under the abuse of discretion standard. *Califano*, 442 U.S. at 703.

In order to be classified as a class action, the four threshold requirements of Rule 23(a) must be met which requires numerosity, commonality, typicality and adequacy of representation. In addition to satisfying those prerequisites, the action must fall within one of the three categories of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Here, plaintiff contends that Rule 23(b)(3) has been met. Rule 23(b)(3) requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1084 (6th Cir. 1996). Plaintiffs bear the burden of proving that they satisfy all the requirements for class certification. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 241 (6th Cir. 1994).

## III. ANALYSIS

The court addresses the parties' arguments related to class certification in turn. First, the court discusses whether plaintiff's proposed class is ascertainable. Second, the court conducts the "rigorous analysis" required under Rule 23(a) and (b) to determine whether to certify plaintiff's proposed class.

### A. Ascertainability

At the outset, defendant argues that plaintiff's proposed class is not ascertainable, and, therefore, should not be certified. An ascertainable class is "an implied prerequisite of Federal Rule of Civ Procedure 23." *In re OnStar Contract Litig.*, 278 F.R.D. 352, 373 (E.D. Mich. 2011) (quotation marks and citation omitted). "[T]he identity of class members

-7-

[must be] ascertainable by reference to objective criteria." *Garrish v. United Auto., Aerospace, and Agricultural Implement Workers of Am.*, 149 F.Supp.2d 326, 331 (E.D. Mich. 2001) (citation omitted). To be ascertainable, the description of the class needs to be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012).

Here, plaintiff's proposed class is all Michigan residents who "purchased a subscription to *TIME*, *Fortune*, or *Real Simple* magazines through any website other than" defendant's direct websites for a specific period of time. Defendant makes multiple arguments as to why this proposed class is not ascertainable.

First, defendant argues that the proposed class definition turns on whether a person is a purchaser as opposed to a subscriber, and, therefore, one must look to the third parties from whom magazine subscriptions were purchased to determine if a person falls within the proposed class definition. That information is not in defendant's possession. Plaintiff responds that the proposed class members all purchased magazine subscriptions from defendant's authorized agents, information that is easily accessible to defendant even if it is not currently in defendant's records. In addition, plaintiff contends that the proposed class can obtain the information from the third party agents in the course of discovery because the third parties, under contract with defendant, are required to maintain the records of purchasers for a period of six years.

Plaintiff has the better of the argument. The question is not — as defendant frames it — whether records of a purchase are within its possession. Rather, the inquiry in determining if the proposed class definition is ascertainable is whether it is defined in a way

-8-

that makes it "administratively feasible for the court to determine whether a particular individual is a member."  *Young*, 693 F.3d at 538.  Plaintiff's proposed class definition satisfies this inquiry.  The proposed class is limited to:

- Michigan residents

- who purchased a subscription to *TIME, Fortune*, or *Real Simple*

- between March 31, 2009 and November 15, 2013

- through any website other than Time.com, Fortune.com, and Realsimple.com

Each of the factors above is determined by objective criteria rendering the proposed class definition ascertainable.  It makes no difference whether this information is in defendant's possession.  Ultimately, it is each class member's burden to establish that they fall within the class definition.

Second, defendant avers that it is unable to determine who a purchaser is in every circumstance because a purchaser is not always a subscriber and that information is not provided to defendant.  (Simoneau Supplemental Declr. ¶¶ 4-5, 11).  For example, many people purchase subscriptions as gifts for their spouses or parents.  Defendant contends that there is no way of knowing who the purchaser is in these instances.  According to defendant, in 58% of third party subscriptions, it cannot be determined whether the subscription was purchased via a website, mail or by telephone because the third party offered multiple ways to subscribe and did not provide that information to defendant.  (*Id.* ¶ 12).  Defendant concedes that sometimes, depending on the promotion a subscriber took advantage of when purchasing a subscription, defendant could ascertain the method of purchase.  (*Id.* ¶ 10).  Plaintiff responds that defendant's records show whether a magazine

subscription was purchased as a gift.  But defendant replies that this is not the case for purchases made from its third party agents.  In any event, however, plaintiff contends that this information can easily be obtained through inquiry from the individual subscriber or the third party seller.

Whether a purchaser is also the subscriber is an issue that can be ascertained by reference to objective criteria.  All that is needed to determine whether a purchaser is also a subscriber is a comparison of the billing information and the subscriber information.  This is information that can be obtained from the third party agents of defendant.  Again, it will be each class member's burden to show that he or she falls within the class definition.  This is an issue for discovery, not an attack on the ascertainability of the proposed class.

Next, defendant argues that there is no way to determine whether a magazine subscription was purchased from a third party agent using the Internet as opposed to mail orders or via telephone.  Third-party agents sell subscriptions online or through vouchers.[2] Like defendant's first two arguments, this argument fails to persuade.  To the extent that this information is not available in the records of the third party agents, which would seem unlikely, the individual purchasers may be in possession of evidence to support the fact that a magazine subscription was purchased using the Internet.  For example, in many instances, e-mail confirmations of Internet purchases are sent to the purchaser.  These e-mail confirmations may serve as evidence to establish that a particular customer falls within the proposed class definition.  Thus, in circumstances where defendant or its third party

---

[2] A voucher for a subscription is given when a person orders a subscription through a fundraiser.  (Breininger Dep. 128:7-15).

agents cannot ascertain whether a purchase was made using the Internet, there are other ways to obtain the same information.

Finally, defendant argues that, because the proposed class purchased magazine subscriptions from third parties, not from defendant directly, there is no viable claim under the VRPA because the magazine subscriptions were not purchased "at retail" as defined by the VRPA.  Defendant points to Judge Ludington's opinion in *Kinder v. Meredith*, No. 14-cv-11284, 2014 WL 4209575 (E.D. Mich. Aug. 26, 2014).  In *Kinder*, the plaintiff alleged that she purchased magazine subscriptions directly from the defendant.  *Id.* at *6.  Because "at retail" is not defined in the VRPA, Judge Ludington turned to the Oxford English Dictionary, which defines "retail" as "[t]he action or business of selling goods in relatively small quantities for use or consumption rather than for resale."  *Id.*  In determining that the plaintiff stated a VRPA claim, Judge Ludington explained:

> Here, Kinder's allegations meet *Iqbal*'s requirements: she alleges that she purchased the subscription directly from Meredith, *i.e.*, she did not purchase the subscription from any other entity (such as third-parties).  Thus, although Kinder did not provide the exact method she used to subscribe, she did claim that she purchased them directly from Meredith.  Therefore, Kinder has adequately alleged that she purchased her magazines from Meredith at retail.

*Id.*

In contrast with *Kinder*, defendant argues that plaintiff's proposed class definition is limited to purchases of subscriptions from third parties over the Internet.  Defendant contends that, by definition, the entire proposed class did not purchase magazine subscriptions from defendant "at retail," as it is defined in the VRPA, because purchases made by customers from defendant's third party agents are not "at retail" purchases.

-11-

While defendant's argument may have some merit (which is yet to be seen), it is an affirmative defense, not an attack on the ascertainability of the proposed class. Moreover, when considering defendant's argument under the Rule 23(a) factors, it is an affirmative defense that is common to the entire proposed class and will be addressed collectively when deciding defendant's anticipated dispositive motion.

In sum, defendant's argument that the putative class is unascertainable does not carry the day. The proposed class is ascertainable by reference to objective criteria.

## B. The Rule 23(a) Factors

The court turns next to the Rule 23(a) factors and conducts the necessary "rigorous analysis.".

### 1. Numerosity

To prove numerosity, plaintiff must "demonstrate that the putative class is 'so numerous that joinder of all members is impracticable.' *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005) (citing Fed. R. Civ. P. 23(a)(1)). "There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079 (citation omitted). Where the plaintiff shows "substantial numbers of affected consumers," it is enough to satisfy the numerosity requirement. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012).

Plaintiff contends that the amount of potential consumers who, between 2009 and 2013, purchased subscriptions to one of defendant's magazines through a third-party reseller on the Internet are numerous — between 440,000 to 530,000 consumers. *See* (Pl's. Br. at 14; Def's. Resp. to Second Set of Interrogs. No. 1). Defendant does not

challenge this number or otherwise contend that the numerosity factor is not met in this case.  This factor favors class certification.

## 2. Commonality

Commonality requires the plaintiff to show that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  *See Dukes*, 131 S. Ct. At 2550–51.  In other words, the plaintiff must "demonstrate that the class members 'have suffered the same injury[.]" *Id.* at 2551 (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)).  The class' claims "must depend upon a common contention . . . of such a nature that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *In re Whirepool Corp. Front-Loading Washer Prods. Liability Litigation*, 722 F.3d 838, 852 (6th Cir. 2013) (citation and internal quotation marks omitted).

Here, the litigation is driven by issues that are common to the entire putative class. As to the burden of the class to establish a VRPA violation, the common legal issues include determining (a) whether defendant was "engaged in the business of selling at retail . . . books or other written materials"; and (b) whether defendant disclosed "a record or information concerning the purchase" that "identifies the identity of the customer."  The factual issues are likewise common to the class, the most important being whether a person's information was disclosed.  Similarly, addressing defendant's affirmative defenses requires consideration of issues that are common to the class.  For example, as explained above, defendant argues that the putative class did not purchase magazine subscriptions from defendant at retail because they made the purchases from third party websites. Resolving this legal issue is common among the entire class — if defendant prevails in this

-13-

argument, the entirety of the class claims fail; if defendant does not prevail, the entirety of the class claims proceed.  Likewise, defendant argues that the disclosures to Acxiom and Wiland were done for the "exclusive purpose" of "marketing goods and services directly" to the consumers, and that defendant provided written notice of a subscriber's ability to opt-out of disclosure.  If this is true, defendant is permitted by statute to disclose the information to Acxiom and Wiland.  This too is a legal issue that, once determined by the court, will resolve the claims of the entirety of the proposed class "in one stroke."  Assuming it is later determined that the disclosures were done for the exclusive purpose of marketing goods and services directly to the consumers, the court will need to address plaintiff's argument that the opt-out notices provided to consumers by defendant are legally insufficient, an argument that is also common to the entire class.  Conversely, if the court determines that the disclosures were not done for the exclusive purpose of marketing goods and services directly to the consumers, defendant's opt-out argument is irrelevant as it applies to the putative class.

Defendant argues that determining whether a subscriber opted-out of allowing defendant to disclose personal information to third parties must be decided on an individual basis because some people opted-out and some did not.  However, the court must first determine whether defendant's disclosures were for the "exclusive purpose" of marketing goods and services directly to the consumers before ever reaching the opt-out issue.  Moreover, as explained above, if the court does reach the opt-out issue, plaintiff's argument that defendant's opt-out notices were legally insufficient is an issue that can be resolved on a classwide basis.

-14-

Also significant is defendant's admission that it disclosed subscriber information to Acxiom even if a subscriber opted-out.  (Breininger Dep. 215:22-216:6).  Relatedly, defendant's opt-out notice was not available on any third-party agent website at the time a subscription was purchased, nor is there any evidence to suggest that consumers were notified of the disclosure to Acxiom at the time they purchased their magazine subscriptions.  (*Id.* 156:1-6).  In fact, it is undisputed that at the time plaintiff and others subscribed to defendant's magazines through a third-party agent, defendant had not yet obtained their permission to disclose their information.  (*Id.* 174:17-22; 175:5-10).

Given the admission that disclosures to Acxiom occur with or without the return of an opt-out notice, the potential mitigation of defendant's liability relates only to opt-out notices forwarded to Wiland.  However, even those opt-out notices may not correct the information already disseminated to the multiple co-op users who appear to receive the transaction's information before opt-out notices can be returned.

In sum, defendant's argument that it provided notice to opt-out is not an impediment to class certification because discovery has already established that defendant disclosed information from customers who opted-out of disclosure.

Defendant also argues that the issue of damages is not common among the putative class.  The VRPA provides for "[a]ctual damages, including damages for emotional distress, or $5,000.00, whichever is greater."  Mich. Comp. Laws § 445.1715(a).  Defendant contends that the named plaintiff seeks actual damages and emotional distress as opposed to statutory damages, which may be different from the rest of the putative class.  At oral argument, plaintiff clarified that the named plaintiff, as well as the remainder of the class, are not proceeding under a theory of actual damages.  (June 2, 2015 Hearing Tr. 47:15-

12).  Statutory damages are set at $5,000.00 to each customer whose record or information was disclosed.  And the statute does not read "up to" or "no greater than" $5,000 per customer; it unambiguously states that damages are set at $5,000 per customer.  Thus, the fact that plaintiff has not advanced an overall damages model for the class is not an impediment to certification given that the class will be seeking damages set by statute.

Defendant argues that plaintiff's statement that it is only pursuing statutory damages is a "bait and switch" from the theory plaintiff was proceeding under since the inception of this case.  (June 2, 2015 Hearing Tr. 51:19-24).  The court disagrees.  The relief requested in the complaint mirrors the relief available under the VRPA, Mich. Comp. Laws § 445.1715(a), which is either actual damages or statutory damages (whichever is greater), plead in the alternative.  After having the opportunity to conduct discovery, plaintiff has decided to proceed under a statutory damages theory.  This is not inconsistent with plaintiff's complaint which pleads both theories as alternatives.

When considering the totality of the legal and factual issues, the commonality factor favors class certification.

### 3. Typicality

Typicality "determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. . . ."  *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc) (citation omitted).  "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class."  *Id.*

-16-

Plaintiff contends that her claims are typical of the claims of the class because all of the claims arise out of the same course of conduct — defendant's wrongful disclosure of a customer's "record or information concerning the purchase." Indeed, plaintiff and the proposed class purchased one of three magazines (*TIME*, *Fortune*, or *Real Simple*) in the same manner (through the Internet), and defendant allegedly disclosed each plaintiff's "record or information concerning the purchase" to Acxiom or Wiland. Therefore, plaintiff argues that, "[i]f these disclosures violate the VRPA, then by pursuing her own interests in prosecuting her claim, Plaintiff will advocate for the interests of the entire class. If she wins, the whole class wins, and the typicality requirement is therefore satisfied." Pl's. Br. at 19–20.

Defendant counters that plaintiff's claims are not typical of the class because plaintiff states that the only notice she received that her personal information would be sent to third parties (and that she could opt out of disclosure) was contained in the actual magazines she subscribed to. However, defendant argues that some of the other class members also received notice of their ability to opt out on defendant's website or in bills/renewal notices. *See, e.g.*, (Landis Declr. Exs. S, T, U, V, W, X, Y, Z, AA, BB). Therefore, typicality is lacking, according to defendant.

The court is not persuaded by defendant's argument. As explained above, if defendant's disclosure of customer information was for the "exclusive purpose of marketing goods and services directly to the consumer," that is the only time a determination will need to be made whether adequate notice was given to opt-out of disclosure. However, whether the disclosures meet the direct marketing exception is a preliminary legal question common to the entire class. And whether the opt-out notices were sufficient (plaintiff says they were

-17-

not) is also a common question.  Moreover, as explained above, defendant's Rule 30(b)(6) witness testified that disclosures were made to Acxiom even if opt-out notices were received by defendant.  Therefore, the notice to opt-out (whether sufficient or not) may not even be relevant to the underlying issues.

Defendant also argues that plaintiff's claims are not typical of the proposed class because plaintiff had knowledge as early as 2009 that defendant made subscriber lists available to third parties.  (Pl's. Dep. 92:6-14).  However, plaintiff testified at her deposition that someone told her about defendant's practices of providing third parties with subscriber information.  (*Id.* 93:4-7).  Plaintiff did not testify that she found out about the practice through a notice that she could opt-out.  And she testified that she did not call or otherwise contact defendant to remove her information from the disclosure list because she did not know what to do.  (*Id.* 95:3-21).  Plaintiff's knowledge of defendant's practices, standing alone, does not make her different than the remainder of the class.

For the above reasons, the typicality factor favors class certification.

### 4. Adequacy

The Supreme Court has explained, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem Prods.*, 521 U.S. at 625 (citation omitted).  Adequacy requires the class representative "be part of the class and possess the same interest and suffer the same injury as the class members."  *Id.* (citation and internal quotation marks omitted).  Essentially, the court must "determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and . . . whether the class members have interests

that are not antagonistic to one another." *Beattie*, 511 F.3d at 562 (citation and internal quotation marks omitted).

### a. Antagonism

Defendant argues that antagonism exists here because it has a defense unique to the named plaintiff.  As explained, plaintiff admitted to having actual notice of defendant's practices of disclosing consumer records and information no later than a few weeks after subscribing to defendant's magazines.  However, plaintiff did not opt-out of disclosure or otherwise contact defendant.  Defendant cites a Second Circuit case for the proposition that a class representative is inappropriate where the representative's claim is subject to unique defenses including having notice of the alleged misconduct.  *See Gary Plastic Packaging v. Merrill Lynch*, 903 F.2d 176, 179 (2d Cir. 1990).

Defendant's argument, however, misses the mark.  As explained above, even if the court reaches the opt-out inquiry (which requires first addressing numerous issues common and typical of the entire class), it is essentially irrelevant at this point that plaintiff did not opt-out given defendant's admission that disclosures were made to Acxiom even if opt-out notices were received.  Moreover, plaintiff testified at her deposition that defendant never provided her with notice to opt-out.  Accordingly, defendant does not have a defense unique to the named plaintiff.  Defendant has not provided a sufficient basis for its position that plaintiff cannot adequately represent the interests of the proposed class.  There is no evidence to support defendant's position that plaintiff's claims are in conflict with the claims of the remainder of the class.

### b. Qualified class counsel

As it relates to having qualified class counsel, plaintiff points out that her counsel was previously appointed to represent a class of magazine subscribers with similar VRPA claims against a publisher. That case resulted in a favorable class settlement.

Defendant does not challenge plaintiff's counsel's qualifications. The court determines that counsel is qualified to serve as class counsel especially given counsel's prior experience in handling a class action lawsuit dealing with the same claims before this court.

### C. Rule 23(b)(3): Predominance and superiority

Having determined that the Rule 23(a) factors have been satisfied, the court turns next to Rule 23(b)(3). To satisfy Rule 23(b)(3), the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." As the Sixth Circuit has explained, "[t]he rule is designed to achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 630 (6th Cir. 2011) (citation and internal quotation marks omitted).

### a. Predominance

Defendant argues that, even if plaintiff satisfies the Rule 23(a) factors, she fails to satisfy the higher threshold of predominance "because individualized questions overwhelm common questions with respect to whether each class member had their information

-20-

disclosed to Wiland, whether each class member received notice of Time's marketing practices, and whether each class member was damaged." Def's. Resp. Br. at 19–20.

First, as it relates to the disclosures to Wiland, defendant argues that, depending when a person subscribed to a particular magazine during the proposed class period, their information may or may not have been disclosed to Wiland. For example, defendant did not start disclosing subscriber information for the magazine *Real Simple* until October 2010, and stopped disclosing the information in March 2013. Hearing Tr. 35:10-19. Therefore, defendant argues that individualized questions arise whether a particular subscriber's information was even disclosed to Wiland.

Defendant's argument is weak given the admission that *all* of its subscribers' information was disclosed to Acxiom, regardless whether a subscriber opted-out of disclosure. Even if there are issues related to the disclosure of information to Wiland, it is undisputed that all of the proposed class members' information, upon purchasing a subscription to one of the three magazines, was disclosed to Acxiom.

Second, whether there are individual differences in the notice a particular subscriber received regarding defendant's marketing practices (through the magazine, on defendant's website, or through some other means), as explained above, is also irrelevant given defendant's admission that subscriber information was sent to Acxiom regardless of a subscriber's communication to defendant to opt-out of disclosure.

Finally, whether each class member was damaged is not an issue. As explained above, plaintiff is proceeding under a statutory damages theory. Each disclosure, by statute, entitles recovery of $5,000.00, a sum certain.

The court is satisfied that plaintiff has shown predominance.

b. Superiority

Next, defendant argues that a class action is not superior to other available methods for fairly and efficiently adjudicating the controversy. Specifically, defendant points to the fact that class actions are "designed primarily to allow the vindication of rights in cases where the monetary amount at stake would not provide adequate incentive for any individual to bring a solo action." *Abby v. City of Detroit*, 218 F.R.D. 544, 549 (E.D. Mich. 2003). But here, defendant argues that subscribers have every incentive to file their own lawsuits and recover up to $5,000 in statutory damages per violation.

"Rule 23(b)(3) is designed 'not solely as a means for assuring legal assistance in the vindication of small claims, but, rather, to achieve the economies of time, effort and expense.'" *Bobbitt*, 252 F.R.D at 344 (citation omitted). In this case, a class action lawsuit, rather than potentially hundreds of separate lawsuits, achieves economies of time, effort and expense. Because the Rule 23(a) factors all favor class certification, as do economies of time and judicial resources, a class action lawsuit makes more economical sense. Moreover, given the commonalities, it makes sense to proceed as a class action and address the issues one time rather than potentially hundreds of separate cases.

IV. CONCLUSION

For the reasons that follow, plaintiff's motion for class certification is GRANTED. Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, the court certifies the following class:

> All Michigan residents who between March 31, 2009 and November 15, 2013 purchased a subscription to *TIME*, *Fortune*, or *Real Simple* magazines through any website other than Time.com, Fortune.com, and RealSimple.com.

IT IS SO ORDERED.

Dated:  July 27, 2015

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 27, 2015, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk