IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ROSE COULTER-OWENS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TIME INC., a Delaware Corporation,<br><br>Defendant. | Case No. 2:12-cv-14390-GCS-MKM<br><br>Hon. George C. Steeh |

# DECLARATION OF LINDA MOORE IN SUPPORT OF TIME'S MOTION FOR SUMMARY JUDGMENT

I, Linda Moore, hereby declare as follows:

1. I have been employed by Acxiom Corporation ("Acxiom") since 1995. My current position is Client Services Manager. I have been in this position since March 2009.

2. One of my responsibilities in my current role is to serve as the account representative overseeing Acxiom's relationship with Time. I have been the account representative overseeing Acxiom's relationship with Time since April 2011. As such, I am familiar with the services Acxiom provides for Time and the parties' business relationship, generally. The statements in this declaration are based upon my personal knowledge. If called upon to do so, I could and would testify thereto under oath.

1

3. Acxiom began providing services to Time in 2006, when Acxiom entered into a Services and Data Use Agreement dated May 3, 2006 with Southern Progress Corporation (the "Agreement"). The Agreement was later assigned to Time. Under the terms of the Agreement, the services provided by Acxiom to Time were to be set forth in various statements of work. Among the statements of work executed by Acxiom and Time was the Amended and Restated Statement of Work #001, dated March 31, 2009.

4. During the time period between March 31, 2009 and November 15, 2013, Acxiom provided several different services to Time pursuant to the Agreement and statements of work.

5. One service Acxiom provided Time was housing and maintaining Time's consumer marketing database. Specifically, when Time wanted marketing materials sent to a universe of Time subscribers Time, either directly or through its list manager, would enter into Acxiom-created software tools called ListKey or Rapidus, the criteria Time wanted to use to identify the universe of subscribers to be reached.

6. [REDACTED]

▮▮▮▮▮▮▮▮▮▮

7. Acxiom had no discretion in this process with respect to the criteria used to select names, the list of names selected, or the sending of the lists. Rather, all of these things were dictated by the criteria and instructions provided by Time (or its list manager). Acxiom provided the functionality and programs necessary to generate and distribute the lists as directed by Time.

8. As part of housing and maintaining Time's consumer marketing database, Acxiom also administered opt outs of list rentals on Time's behalf. Specifically, when a Time subscriber opted out of a specific type of marketing, Time provided that data to Acxiom, and then Acxiom's software automatically added the appropriate "do not promote" tag to the subscriber's name in Time's consumer marketing database. Acxiom's software also integrated Direct Marketing Association's opt out data into Time's consumer marketing database when a Time subscriber put his or her name on the Direct Marketing Association's "do not mail list." A subscriber opting out of list rental either through the DMA or Time would no longer have his or her name included in the type of list rental he or she opted out of, even if he or she otherwise would have met the selection criteria provided by Time, because Time excludes all people who have opted out when requesting subscriber lists.

3

9. My understanding is that prior to Acxiom taking over the function of housing and maintaining Time's consumer marketing database and administering subscriber opt outs, Time performed those functions itself.

10. ████████████████████████████████████████████████████████████████████████

11. Acxiom did not play any role in determining, and had no discretion regarding, when and why Time created a model, or the purpose for which Time used the model. Rather, Acxiom provided the statistical analysis support to assist Time in the creation of these models. Nor did Acxiom have any input regarding how Time used the information generated by the models. Acxiom did not use Time's subscriber data, including any modeled data, for Acxiom's own commercial purposes or to provide services to other Acxiom customers.

12. During the same period, another service Acxiom provided to Time was supplementing Time's subscriber lists with demographic information about those subscribers that Acxiom's had in its own databases.

13. The name of a specific Time magazine or magazines a person subscribed to was not used in connection with this service.

4

14. 

15.

16.  Indeed, for all of the services Acxiom provided to Time during the period of March 31, 2009 to November 15, 2013, Acxiom was only allowed to use Time's subscriber data as required to perform its obligations to Time under the parties' Agreement. Acxiom could not, and did not, use Time subscriber data for

any other purpose, such as Acxiom's own commercial purposes or to provide services to Acxiom customers other than Time. At all times Time's subscriber data remained Time's property notwithstanding that it might have been housed on Acxiom's servers or run through Acxiom's computer programs in connection with the services Acxiom provided Time.

 I declare the following under penalty of perjury that the foregoing is true and correct.


Executed on July 30, 2015.

                _Linda Moore_ (signature)
                Linda Moore