# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ROSE COULTER-OWENS,
individually, and on behalf of all others
similarly situated,

               Plaintiff,

    v.

TIME INC., a Delaware Corporation,

             Defendant.

Case No. 2:12-cv-14390-GCS-MKM

Hon. George C. Steeh

**PLAINTIFF'S REPLY IN
SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

Henry M. Scharg – P28804
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: 248.596.1111
Fax: 248.671.0335

Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 N. LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

*Class Counsel*

Time admits that it disclosed to third parties Acxiom Corporation and Wiland Direct information about its customers' magazine purchases that is protected by the VRPA. Still, Time says it's not liable because: (1) Plaintiff did not purchase the magazines "at retail," (2) the disclosures to Acxiom were permitted because it is an "agent," and (3) the disclosures to Wiland fell within the VRPA's marketing purpose exception. As explained in Plaintiff's opening brief (Dkt. 126 ("MSJ")), her response to Time's motion for summary judgment (Dkt. 137), and below, Time misunderstands the law and the facts. The evidence shows that all elements of a VRPA claim are met and neither of Time's affirmative defenses applies. Plaintiff is entitled to summary judgment.

## I.    TIME IS ENGAGED IN THE BUSINESS OF SELLING WRITTEN MATERIALS "AT RETAIL."

Time's argument that Class members did not purchase their magazine subscriptions "at retail" misreads the facts and the plain language of the VRPA. First, the VRPA doesn't require Class members to have purchased magazines at retail; rather, it applies to *companies* "engaged in the business of selling [written materials] at retail." M.C.L. § 445.1712. Time is so engaged and, thus, falls within the VRPA's purview. (MSJ at 9-13; *see also* Dkt. 137 at 18-22.)

In response, Time suggests there must be a "retailer-customer relationship" for the "at retail" element. (Dkt. 142 ("Resp.") at 8.) Assuming that's true, such a relationship exists between Time and Class members. Class members are the final

1

consumers of the magazines (they purchase for their own consumption) and are, thus, the "customers" referenced in the statute. (*See* MSJ at 9-10 (explaining that a retail sale is a sale for the customer's own use); Dkt. 137 at 18-19 (same).) As Time's Rule 30(b)(6) designee explained, even when sales agents are used, the end-buyers are still *Time's* customers. (Breininger Tr.[1] 8:6-14 (agreeing that "third-party agents for magazine subscriptions . . . [are the] people that sell magazines for [Time].").) Even Time admits that it does not sell subscriptions to agents, who then offer them for resale. (*See* Resp. at 9.) (*See also* MSJ at 9-10 (explaining the difference between sales at retail versus at wholesale); Dkt. 137 at 19 (same).)

Further, , (Resp. at 9), is of no moment—given that *Time* (not the agents) (Ex. F to Resp. at 000053; Breininger Tr. 140:10-13; MSJ at 11-12.)[2]

Finally, Time's position would completely undermine the purpose of the

---

[1] Cited excerpts from the Breininger Deposition Transcript are attached to the Declaration of Ari J. Scharg, submitted herewith, as Exhibit A.

[2] In *World Book, Inc. v. Department of Treasury*, 590 N.W.2d 293 (Mich. 1999), the Michigan Supreme Court treated a similar arrangement as constituting sales "at retail" under a different statute. There, a publisher used salespersons to sell encyclopedias and other materials. The salespersons took orders and collected deposits, while the orders were sent to the publisher who fulfilled them. *Id*. at 405. While Time notes that the issue in that case was *where* the sales took place (Dkt. 142 at 9 n.5), it cannot dispute that the publishers' sales there were sales "at retail."

statute. The VRPA was designed to protect the privacy of Michiganders' choice in reading materials. (Dkt. 53 ¶ 18 (quoting House Legislative Analysis Section, H.B. No. 5331, Jan. 20, 1989) ("[A] person's choice in reading … is a private matter[.]").) Letting Time disclose its customers' magazine choices because orders are initiated by its sales agents would render the Act's protections meaningless.

## II.   THERE IS NO EXCEPTION FOR DISCLOSURE TO AGENTS, AND REGARDLESS, ACXIOM IS NOT TIME'S AGENT.

Time accuses Plaintiff of hiding the VRPA's "language authorizing disclosures to agents." (Resp. at 10.) But the VRPA doesn't allow disclosures *to* agents; it prohibits disclosures *by* agents. M.C.L. § 445.1712. Indeed, the VRPA prohibits disclosures "to any person, other than the customer." *Id*. As explained in her response to Time's MSJ, the plain language of the statute contains no exception for disclosure to agents, nor can one be implied from the fact that it contemplates disclosures *by* agents (given that agents may, as Time's sales agents do here, receive protected information directly from customers). (Dkt. 137 at 8-9.)

Regardless, Acxiom was not Time's agent. Time provides no support from Michigan agency law, and the only evidence it cites is the declaration of Acxiom's Client Services Manager ("Moore Decl.," Dkt. 144-3), who says Acxiom could only use Time's subscriber data in line with the parties' agreement. (Resp. at 11.) But that's not the test for agency, and Time and Acxiom's agreement to limit the use of the data doesn't establish a principle-agent relationship. ▮▮▮▮▮▮▮▮

███████████████████████████████████████████████

█████████████████████████ (*See* Ex. M to MSJ (Dkt. 127-14) at 001009

███████████████████████████████████████████████

███████████████████████████████████████████████

Further, as explained in Plaintiff's response to Time's MSJ, the defining element of agency is the principal's right to control the actions of the agent and, under Michigan law, the principal must have the right to control "the methods and means of accomplishing" that result. (Dkt. 137 at 10-11.) And here, Time *lacked* such control over Acxiom. (*Id.* at 11.) Thus, even if there were an exception in the VRPA permitting disclosure to third-party agents, Acxiom was not Time's agent.

## III.   THE DISCLOSURES TO WILAND DO NOT FALL WITHIN THE EXCLUSIVE-PURPOSE-OF-MARKETING EXCEPTION.

Finally, Time argues that its disclosures to Wiland fall within the VRPA's exclusive-purpose-of-marketing exception. The exception is straightforward and in no way "superfluous" or "unconstitutionally vague:" a disclosure of consumer data "for the exclusive purpose of marketing goods and services directly to the consumer" is permitted (assuming sufficient notice of the ability to opt out is given); disclosures for other purposes are not. M.C.L. § 445.1713(d). (*See* Dkt. 137 at 21.) Thus, if Time gave a customer's data to a company seeking to market goods and services to that customer, the disclosure wouldn't violate the VRPA.

But that's not happening here. Time doesn't provide its customer lists to

4

Wiland so *other* companies can market goods and services to Time's customers.

Rather, it discloses its lists as a form of currency to buy access to *other* companies'

customer lists, so that it can market its magazines to *other* consumers. (*See* MSJ at

22; Dkt. 137 at 13-15.) (*See also* Class Cert. Order (Dkt. 117) at 4.) Thus, even if

Time expected the Wiland disclosures to result in *some* marketing of goods and

services to its customers, that was not the *exclusive* purpose of the disclosures,

which is what the statutory exception expressly requires. M.C.L. § 445.1713(d).

Although Time's use of its own subscribers' data to "buy" access to other

consumers' data is dispositive, it also provides the data to political and charitable

groups. (MSJ at 21.) Time asserts that Plaintiff hasn't established that such groups

used Time's customer lists for purposes other than marketing goods and services,

because they may sell goods or "provide experiences." (Resp. at 14-15.) Time gets

the burden backwards. As an affirmative defense, *Time* must establish that its

disclosures fall within the exception. *See Bell v. Ruby*, No. 99-72917, 2000 WL

356354, *3 (E.D. Mich. Feb. 28, 2000). To prevail with an affirmative defense,

*Time* must offer "significant probative evidence" that the disclosures were for the

exclusive purpose of marketing. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706

(6th Cir. 2006) (internal quotations omitted); *accord Lamson & Sessions Co. v.

ATS Logistics Servs., Inc.*, No. 05-2702, 2006 WL 3064098, *4 (N.D. Ohio Oct.

26, 2006). Suggesting that charities may also sell goods or services isn't enough.

As a last-ditch effort to avoid liability, Time attempts to re-litigate its failed argument that the exception is constitutionally problematic under *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653 (2011). (Dkt. 137 at 22-25). First, because Time has "draw[n] into question" the constitutionality of the VRPA but failed to comply with Fed. R. Civ. P. 5.1 or L.R. 9.1, the Court should not even consider its argument. *See Jones v. U-Haul Co. of Mass. & Ohio Inc.*, 16 F. Supp. 3d 922, 941 (S.D. Ohio 2014) (refusing to consider or certify constitutional argument on party's failure to file notice required by Fed. R. Civ. P. 5.1). In any event, and as Plaintiff previously explained, the Vermont statute was only unconstitutional because its stated purpose was to prohibit advertising, rather than to protect a "privacy interest by allowing the information's sale or disclosure in only a few narrow and well-justified circumstances." (Dkt. 26 at 15 (quoting *Sorrell*, 131 S. Ct. at 2668).) Here, the VRPA succeeds where the Vermont act failed and this Court remains correct in its prior holding that "dismissal under *Sorrell* [is] inappropriate based on the significant distinctions between the two cases." (Dkt. 47 at 14).

Regardless, the VRPA's marketing purpose exception still doesn't apply because Time didn't provide its customers with sufficient notice of their right to opt out. (*See* MSJ at 24; Dkt. 137 at 16-18.) To this point, Time's main response is that because the VRPA doesn't say *when* notice must be given, it can freely disclose its customers' data, so long as notice is given eventually. (Resp. at 24-25.)

6

Thus, Time suggests that its almost unreadable in-magazine notices are excused because it arguably provides better notices in "bills and renewal notices." (Resp. at 23.) But by the time a typical subscriber receives a renewal notice (e.g., a year after subscribing), her information would have been disclosed many times over. (*See* MSJ at 5-6.) And on Time's logic—which would eviscerate the entire point of the VRPA (*see supra* p. 3)—it could wait two, three, or even ten years before providing the required notice, but still be covered under the exception.[3] Because it offers no other evidence , Time cannot excuse its Wiland disclosures by relying on the statute's exclusive-purpose-of-marketing defense. *See Wright*, 455 F.3d at 706.

In the end, the undisputed facts establish each element of Plaintiff's VRPA claim, and do not establish either of Time's asserted affirmative defenses. As a result, this Court should grant Plaintiff's motion for summary judgment.

Dated: October 29, 2015                    Respectfully submitted,

                                           By:   /s/ Ari J. Scharg
                                                 Class Counsel

---

[3] Time suggests that its notices were compliant because ███████████ ████████ (Resp. at 23.) ██████████████████████████ Even the Moore Declaration admits that ███████████████████████████ ██████ (Moore Decl. ¶ 8.) (*See generally* www.DMAChoice.org.) Likewise, Time suggests that because its in-magazine notices match the font size of its USPS notices, both must be compliant. But even though the font of its in-magazine notices is only part of the problem, (MSJ at 24-25), Time offers *no* facts to suggest its selected font size *complies with* (as opposed to being *subject to*) any standard.

## <u>CERTIFICATE OF SERVICE</u>

I, Ari J. Scharg, an attorney, certify that on October 29, 2015, I served the above and foregoing ***Plaintiff's Reply in Support of Motion for Summary Judgment*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

_____/s/ Ari J. Scharg_____