# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ROSE COULTER-OWENS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TIME INC., a Delaware Corporation,<br><br>Defendant. | Case No. 2:12-cv-14390-GCS-MKM<br><br>Hon. George C. Steeh |

## **TIME'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Marc Zwillinger
Jacob Sommer
Jeffrey Landis
ZWILLGEN PLLC
1900 M St. NW, Ste. 250
Washington, DC 20036
(202) 706-5205
marc@zwillgen.com
jake@zwillgen.com
jeff@zwillgen.com

Robert M. Jackson (P40723)
Arthur T. O'Reilly (P70406)
HONIGMAN MILLER SCHWARTZ AND COHN LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI 48226
(313) 465-7430
rjackson@honigman.com
aoreilly@honigman.com

With each successive brief, Plaintiff offers new and novel interpretations of the VRPA that stray further from the statute's text. Plaintiff now asserts that the VRPA does not authorize companies to use agents (and by extension employees) to conduct business, notwithstanding language saying the opposite. Plaintiff also reads requirements into the direct marketing exception that do not appear in the statute—such as that notice be provided at the outset of the subscription or in some particular location or font size. Besides miscasting the statute itself, Plaintiff obfuscates facts to try to create disputes of material fact where none exist. But the undisputed facts are clear: Acxiom was Time's agent because Time controlled every relevant aspect of Acxiom's work hosting Time's database. The ministerial contract provisions Plaintiff points to do not change this result. Likewise, in arguing that Time's in-magazine notices were insufficient, Plaintiff continues to ignore that Time provided notice on its website, and in bills and renewal notices sent to consumers. The VRPA's language and the material facts at hand lead to only one conclusion: Time is entitled to summary judgment.

**I.  Time's Use of Acxiom To Host Its Database Does Not Violate the VRPA**

    **A.  The VRPA Authorizes Disclosure to Agents and Employees**

The VRPA allows companies to use agents. The VRPA limits the ability of "a person, or an employee or agent of the person" to disclose information. M.C.L. § 445.1712. Disclosures to a company's agents, like disclosures to its employees,

1

do not violate the VRPA. Otherwise, the VRPA's language regarding agents and employees would be meaningless.

Plaintiff argues the "employee or agent" language applies only if an agent receives information directly from the customer. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. (Pl.'s Resp.) at 8, ECF No. 137. Plaintiff's example—a consumer that subscribes to a Time magazine through a third-party agent—demonstrates the absurd results of her interpretation. *See id.* at 8-9. Under her theory, the agent could not give Time the consumer's name and magazine title for Time to fulfill the subscription. Nor could the agent provide that information to its own employees. The agent would have to address the magazine, deliver it, and handle all transactions, utilizing no third parties, for a magazine it did not publish. Plaintiff's interpretation also makes no sense because it would prevent Time employees that directly receive subscriptions from entering the subscriber's name into Time's database or sharing the information with any other employee—both of which would be disclosures to someone other than the customer under Plaintiff's theory.

The VRPA contemplates that a company, its employees, and its agents can exchange information to conduct business. This reflects "the unremarkable fact that no business is an island and that [publishers], like many other businesses, 'may use third parties in their business operations. . . .'" *Rodriguez v. Sony Computer Entm't Am., LLC*, 801 F.3d 1045 (9th Cir. 2015). Plaintiff's interpretation renders

2

all publishers islands. This absurd result should be avoided. *See Lockhart v. Napolitano*, 573 F.3d 251, 261 (6th Cir. 2009) ("[A]bsurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.")

### B. Acxiom Was Time's Agent

Plaintiff does not dispute that Time controlled what Acxiom could do with Time's data (use it only to perform work for Time); to whom Acxiom could disclose Time's data (nobody); and how Acxiom generated lists of names for Time (from criteria Time provided). *See* Time Mot. for Summ. J. ("Time Mot.") at 11-15, ECF No. 119. Nor can Plaintiff dispute that Time had a designated person to "[p]rovide authority and judgment required for making all relevant decisions," "coordinate and prioritize," and "focus on tactical daily operation."[1] Plaintiff instead argues that Acxiom was not Time's agent because Time did not control "the methods and means" by which Acxiom performed its obligations for Time. *See* Pl.'s Resp. at 9-11. This argument fails for several reasons.

***First***, the "methods and means" language Plaintiff cites describes a characteristic of an independent contractor, not an agent. *See Aero Taxi-Rockford v. Gen. Motors Corp.,* No. 259565, 2006 WL 1479915, at *5 (Mich. Ct. App. May 30, 2006). *Aero Taxi-Rockford* stands for the proposition that for an entity to be an independent contractor, it cannot be "subject to the control of his employer as to

---

[1] *See* Oct. 1, 2015 Decl. of Ari Scharg in Supp. of Pl.'s Resp. (ECF No. 141), Ex. I at TIME_RCO_000890.

3

the methods and means of accomplishing the work but only as to the results to be accomplished by the work." *Id.* But this does not make controlling "methods and means" a prerequisite for agency because entities often serve as both agents and independent contractors. *See* Restatement (Second) of Agency § 2(3) (1958) ("An independent contractor … may or may not be an agent."); *see also Eyerman v. Mary Kay Cosmetics, Inc.*, 967 F.2d 213, 219 (6th Cir. 1992) (noting that "a person may be both an independent contractor and an agent").

**Second**, Plaintiff misstates the control required. The right of control "need not extend to every aspect of the alleged principal and agent's association." *Gen. Acquisition, Inc. v. GenCorp Inc.*, 766 F. Supp. 1460, 1469 (S.D. Ohio 1990). For example, "[a]n employer's inability to control a worker's every move hardly negates an employment relationship." *Pasieka v. Chaves*, No. 304190, 2012 WL 5233619, at *5-6 (Mich. App. Oct. 23, 2012). Indeed, *Pasieka* specifically disavowed the idea that a principal's "inability to control the mechanics of [an agent's] medical or surgical treatment of patients eliminates any agency relationship." *Id.* at *5.

Plaintiff identifies no significant aspects of control Acxiom had over Time's data, instead pointing to ministerial contractual provisions allowing Acxiom to select file formats, resolve technical problems, and approve equipment installations. *See* Pl.'s Resp. at 11. But Acxiom's ability to approve equipment

4

installed in its facilities does not make it less of an agent when hosting Time's data than laborers employed to empty a carload of coal would not be agents because "they can shovel right-handed or left-handed, start at one end of the car or the other." *Pasieka*, 2012 WL 5233619, at *5 (quoting *Powell v. Employment Sec Comm.*, 345 Mich. 455, 471 (1956) (Smith, J., dissenting)).

*Third*, a contract provision referring to Acxiom as an independent contractor does not negate agency because "[w]hether a relationship is characterized as agency in an agreement between parties or in the context of industry or popular usage is not controlling." Restatement (Third) Of Agency § 1.02 (2006). Rather, "if an act done by one person on behalf of another is in its essential nature one of agency, the one is the agent of such other notwithstanding he is not so called." *Van Pelt v. Paull*, 150 N.W.2d 185, 188 (Mich.App. 1967). The nature of the relationship, not its label, must control. Otherwise, companies could escape liability merely by labeling agents as independent contractors in their contracts. *See, e.g. Eyerman*, 967 F.2d at 219.[2]

## II. Time's Participation in the Wiland Co-op Does not Violate the VRPA

### A. Disclosures to Wiland Were for Marketing Purposes

Plaintiff does not dispute that the information Time disclosed to Wiland was

---

[2] Plaintiff suggests that the Court should not resolve this issue on summary judgment. *See* Pl.'s Resp. at 12. The irrelevant contractual terms Plaintiff points to, however, cannot defeat summary judgment. *See Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006).

used solely to send marketing materials to the person whose information was disclosed. Plaintiff instead argues that the direct marketing exception should not apply because Time also received names from Wiland, and because charitable and political organizations were members of Wiland. *See* Pl.'s Resp. at 14-16. Neither of these things renders the direct marketing exception inapplicable.

Plaintiff's argument that the exception should not apply where Time got access to information "about *other* customers" is a strawman. *See id*. at 14 (emphasis in original). Time's motivation for participating in the Co-op, and any benefits it received are irrelevant. *See* Time Opp. to Pl.'s Mot. for Summ. J. (Time Opp.) at 20-21, ECF No. 142. Plaintiff admits as much, noting that "the marketing of goods and services must be made directly *to Time's customer's* – i.e., to the same persons whose magazine subscription records were disclosed." *See* Pl.'s Resp. at 14 (emphasis in original). But the relevant "persons" are those whose information Time disclosed to Wiland, not persons Wiland disclosed to Time. It is undisputed that this former group's information was used solely for marketing.[3]

### B. Time's Notices Were Sufficient Under the VRPA

Plaintiff does not dispute that Time provided written notice that subscribers

---

[3] *See* Aug. 31, 2015 Decl. of Jeffrey Landis in Supp. of Time's Mot. for Summ. J. (ECF No. 120), Ex. I at 21:8-22:2. Plaintiff's argument that the direct marketing exception does not apply because Wiland members included charitable and political organizations is also unavailing. *See* Time Opp. at 13-19.

could opt out of disclosures to Wiland in multiple locations. Instead, Plaintiff argues that the in-magazine notices were insufficient due to their location and font. *See* Pl.'s Resp. at 14-17. Time's Motion for Summary Judgment explains why this is incorrect. *See* Time Mot. at 16-20. Plaintiff now argues that Time's notices should have been provided when the class "first subscribed" or "prior to disclosing their [] information to Wiland." *See* Pl.'s Resp. at 16. The Michigan Legislature has included temporal requirements in consumer statutes when it intended that they apply. *See* Time Opp. at 24. The VRPA contains no such requirement. Moreover, even if it did, Time's website notice satisfied it.[4]

### III.  Class Members Did Not Purchase from Time at Retail

To counter the argument that because the class purchased subscriptions from third parties, they do not meet the VRPA's "at retail" requirement, Plaintiff points to definitions of "retail," such as the "the sale of goods or commodities to ultimate consumer" and "a sale, lease or rental of tangible personal property for any purpose other than for resale, sublease, or sub-rent." *See* Pl.'s Resp. at 19. These definitions have a common element absent with respect to Time: a sale. Time sold nothing to the class. They were not "customers" purchasing from Time "at retail."

Dated:  October 29, 2015          /s/ Jeffrey Landis

---

[4] Plaintiff asserts that she has been "consistent" that Time's website notice should not matter. Pl.'s Resp. at 17, n.5. Plaintiff may have consistently asserted as much, but that assertion is inconsistent with her previous position that "the VRPA only requires that written notice be made, and not received." *See* Time Mem. at 20.

Marc Zwillinger
Jeffrey Landis
Jacob Sommer
ZWILLGEN PLLC
1900 M St. NW, Ste. 250
Washington, DC 20036
(202) 706-5203

Robert M. Jackson (P40723)
Arthur T. O'Reilly (P70406)
HONIGMAN MILLER SCHWARTZ
AND COHN LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI 48226
(313) 465-7430
rjackson@honigman.com
aoreilly@honigman.com

*Counsel for Defendant Time, Inc.*

## CERTIFICATE OF SERVICE

I certify that on October 29, 2015, I electronically filed the foregoing Time's Reply Memorandum in Support of Motion for Summary Judgment with the Clerk of the Court via the ECF system, which will send a notification of such filing to all counsel of record.

/s/ Jeffrey Landis
Jeffrey Landis