# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

ROSE COULTER-OWENS,
individually, and on behalf of all others
similarly situated,

                Plaintiff,

   v.

TIME INC., a Delaware Corporation,

                Defendant.

Case No. 2:12-cv-14390-GCS-MKM

Hon. George C. Steeh

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY PENDING *SPOKEO* AND CERTIFY QUESTIONS TO MICHIGAN SUPREME COURT**

Henry M. Scharg – P28804
hmsattyatlaw@aol.com
LAW OFFICE OF HENRY M. SCHARG
718 Ford Building
Detroit, Michigan 48226
Tel: 248.596.1111
Fax: 248.671.0335

Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 N. LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

*Class Counsel*

# ISSUES PRESENTED

(1)     Should the Court stay these proceedings pending the decision in *Spokeo, Inc. v. Robins*, 742 F.3d 409 (9th Cir. 2014), cert. granted, 135 S. Ct. 1892 (2015) (No. 13-1339, OT 2015 Term), even though (i) Defendant could have sought a stay over six months ago, (ii) Sixth Circuit precedent precludes the issuance of a stay, (iii) the Supreme Court's decision in *Spokeo* will have no effect on this case, and (iv) a delay stands to prejudice Plaintiff and the certified class?

Plaintiff's Answer: No.

(2)     Should the Court certify interpretative issues regarding the Video Rental Privacy Act to the Michigan Supreme Court, even though this Court—like any federal court sitting in diversity—can resolve such questions within the context of this litigation and unnecessary certification will, at best, cause additional delay and further prejudice to Plaintiff and the certified class?

Plaintiff's Answer: No.

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Halaburda v. Bauer Publ'g Co.*, LP,
No. 12-cv-12831, 2013 WL 4012827 (E.D. Mich. Aug. 6, 2013)

*Imhoff Investment, L.L.C. v. Alfoccino, Inc.*,
792 F.3d 627 (6th Cir. 2015)

*In re Carter*, 553 F.3d 979 (6th Cir. 2009)

*Kinder v. Meredith Corp.*,
No. 14-cv-11284, 2014 WL 4209575 (E.D. Mich. Aug. 26, 2014)

*McClellan v. Young*, 421 F.2d 690 (6th Cir. 1970)

*Meredith v. City of Winter Haven*, 320 U.S. 228 (1943)

*Pack v. Damon Corp.*,
No. 03-cv-73601, 2006 WL 1156489 (E.D. Mich. May 1, 2006)

*Pennington v. State Farm Mut. Auto. Ins. Co.*,
553 F.3d 447 (6th Cir. 2009)

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*,
No. 04-cv-73400, 2009 WL 3390244 (E.D. Mich. Oct. 20, 2009)

## TABLE OF CONTENTS

INTRODUCTION .................................................................................. 1

I.    THIS MATTER SHOULD NOT BE STAYED PENDING SPOKEO .... 1

    A.    Time's Delay in Seeking the Stay Is Inexcusable ........................... 3

    B.    The Supreme Court's Consideration of *Spokeo* Does Not Alter
        Binding Sixth Circuit Precedent Establishing that Plaintiff and
        the Class Have Article III Standing ................................................ 6

    C.    The Ultimate Ruling in *Spokeo*—Whatever It Is—Will Not
        Affect Plaintiff's and the Class Members' Standing Here ............. 8

    D.    The Balance of Harms Weighs in Favor of Denying the Stay ...... 11

II.   THERE IS NO NEED TO CERTIFY QUESTIONS TO THE
      MICHIGAN SUPREME COURT .............................................. 14

    A.    There Is No Reason To Burden the Michigan Supreme Court
        Because a Reasonably Clear and Principled Course Exists for
        Answering Each of the Proposed Questions .................................. 17

        1.    Proposed question 1: agency ................................................ 17

        2.    Proposed question 2: "at retail" .......................................... 19

        3.    Proposed questions 3 and 4: the exclusive purpose of
            marketing exception ........................................................... 20

    B.    Certification of the Proposed Questions at This Late Stage of the
        Litigation Serves Only to Delay Final Resolution and Prejudice
        Plaintiff and the Class ................................................................ 22

CONCLUSION ................................................................................ 25

# TABLE OF AUTHORITIES

## UNITED STATES SUPREME COURT CASES

*Landis v. N. Am. Co.*,
　　299 U.S. 248 (1936) ................................................................... 11

*Lehman Bros. v. Schein*,
　　416 U.S. 386 (1974) ................................................................... 15

*Meredith v. City of Winter Haven*,
　　320 U.S. 228 (1943) ................................................................... 15

*Spokeo, Inc. v. Robins*,
　　135 S. Ct. 1892 (2015) ................................................................. 3

## UNITED STATES CIRCUIT COURT OF APPEALS CASES

*In re Aqua Dots Products Liab. Litig.*,
　　654 F.3d 748 (7th Cir. 2011) ....................................................... 10

*Berrington v. Wal-Mart Stores, Inc.*,
　　696 F.3d 604 (6th Cir. 2012) ................................................. 16, 25

*In re Carter*,
　　553 F.3d 979 (6th Cir. 2009) ....................................................... 6

*City of Columbus, Ohio v. Hotels.com, L.P.*,
　　693 F.3d 642 (6th Cir. 2012) ....................................................... 14

*Imhoff Investment, L.L.C. v. Alfoccino, Inc.*,
　　792 F.3d 627 (6th Cir. 2015) ....................................................... 6

*Knox v. Eli Lilly & Co.*,
　　592 F.2d 317 (6th Cir. 1979) ....................................................... 16

*McClellan v. Young*, 421 F.2d 690 (6th Cir. 1970) ................................. 6

*Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*,
　　565 F.2d 393 (6th Cir. 1977) ....................................................... 13

*Pennington v. State Farm Mut. Auto. Ins. Co.,*
    553 F.3d 447 (6th Cir. 2009) ........................................................ 16

*Spokeo. McClellan v. Young,*
    421 F.2d 690 (6th Cir. 1970) ..................................................... 6, 7

*State Auto Prop. & Cas. Ins. Co. v. Hargis,*
    785 F.3d 189 (6th Cir. 2015) ........................................................ 16

*Transamerica Ins. Co. v. Duro Bag Mfg. Co.,*
    50 F.3d 370 (6th Cir. 1995) .......................................................... 18

*Yong v. I.N.S.,*
    208 F.3d 1116 (9th Cir. 2000) ........................................................ 7

## UNITED STATES DISTRICT COURT CASES

*Bacon v. Stiefel Labs., Inc.,*
    837 F. Supp. 2d 1280 (S.D. Fla. 2011) ........................................... 5

*County of Wayne v. Philip Morris Inc.,*
    99-76097, 2000 WL 34226614 (E.D. Mich. Aug. 25, 2000) ....................... 15

*Desfassiaux v. Blatt, Hasenmiller, Leibsker & Moore, LLC,*
    No. 14-cv-8663, 2015 WL 6798301 (N.D. Ill. Oct. 30, 2015)............... 12, 14

*Duchene v. Westlake Serv., LLC,*
    No. 13-cv-01577 (W.D. Pa. July 22, 2015)................................................ 4

*Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp.,*
    No. 15-cv-04767 (C.D. Cal. June 24, 2015 and August 20, 2014) ............... 4

*F.D.I.C. v. First Am. Title Ins. Co.,*
    No. 14-cv-13624, 2015 WL 418122, (E.D. Mich. Jan. 30 2015).......... 11, 13

*Halaburda v. Bauer Publ'g Co., LP, No.*
    12-cv-12831, 2013 WL 4012827, (E.D. Mich. Aug. 6, 2013) ................... 20

*Hotwire Dev., LLC v. Logitech Int'l S.A.,*
    No. 09-cv-02383, 2010 WL 3523073, (D. Ariz. Sept. 3, 2010).................... 5

*Kinder v. Meredith Corp.,*
 No. 14-cv-11284, 2014 WL 4209575, (E.D. Mich. Aug. 26, 2014) ...... 10, 20

*Lamar Advert. Co. v. Charter Twp. of Clinton,*
 241 F. Supp. 2d 793 (E.D. Mich. 2003) ....................................................... 15

*Larson v. Trans Union, LLC,*
 No. 12-cv-05726 (N.D. Cal. June 3, 2015) ................................................... 4

*Larsen v. Trans Union, LLC,*
 No. 12-cv-05726, 2015 WL 3945052 (N.D. Cal. June 26, 2015) ............... 14

*Pack v. Damon Corp.,*
 No. 03-cv-73601, 2006 WL 1156489, (E.D. Mich. May 1, 2006).............. 15

*Patel v. Trans Union, LLC,*
 14-cv-00522 (N.D. Cal. July 16, 2015) ........................................................ 4

*In re Pike,*
 62 B.R. 765 (W.D. Mich. 1986) ................................................................... 23

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan,*
 No. 04-73400, 2009 WL 3390244, (E.D. Mich. Oct. 20, 2009) ........... 15, 25

*Ramirez v. TransUnion,*
 No. 12-cv-00632, (N.D. Cal. May 4, 2015) ............................................ 4, 13

*Salvatore v. Microbilt Corp.,*
 No. 14-cv-1848 (M.D. Pa. July 30, 2015) ..................................................... 4

*Sanofi-Synthelabo v. Apotex Inc.,*
 No. 02 CIV. 2255, 2010 WL 1541435 (S.D.N.Y. Apr. 15, 2010) ................ 5

*Speer v. Whole Food Mkt. Grp., Inc.,*
 No. 14-cv-3035, 2015 WL 2061665 (M.D. Fla. Apr. 29, 2015) ................... 7

*Starbucks Corp. v. Lundberg,*
 No. cv.02-948-HA, 2004 WL 2554578 (D. Or. Nov. 10, 2004) ................... 7

*Stone v. Sterling Infosystems, Inc.,*
 No. 15-cv-00711, 2015 WL 4602968, (E.D. Cal. May 22, 2015)................. 4

*Thompson v. United States,*
    101 Fed. Cl. 416, 424 (2011) ........................................................................ 16

*United States v. Mandycz,*
    321 F. Supp. 2d 862 (E.D. Mich. 2004) ...................................................... 5

*Williams v. Elephant Insurance Co.,*
    No. 15-cv-00119 (E.D.Va. May, 21, 2015) .................................................. 4

*Woods v. Caremark PHC, L.L.C.,*
    No. 4:15-cv-00535-SRB, 2015 WL 6742124 (W.D. Mo. Nov. 2, 2015) ....... 7

## STATE SUPREME COURT CASES

*Bradley v. Saranac Community Schools Bd. of Educ.,*
    565 N.W.2d 650 (Mich. 1997) ................................................................... 18

*In re Certified Questions from U.S. Court of Appeals for Sixth Circuit,*
    696 N.W.2d 687 (Mich. 2005) ................................................................... 16

*World Book, Inc. v. Dep't of Treasury,*
    590 N.W. 2d 293 (Mich. 1999) .................................................................. 20

## STATE COURT OF APPEAL CASES

*Krupp PM Eng'g, Inc. v. Honeywell, Inc.,*
    530 N.W.2d 146 (Mich. App. Ct. 1995) .................................................... 22

*Latimer v. William Mueller & Son, Inc.,*
    386 N.W.2d 618 (Mich. App. Ct. 1986) .................................................... 22

*People v. Hughes,*
    855 N.W.2d 209 (Mich. Ct. App. 2014) .................................................... 19

**OTHER SOURCES**

M. Bryan Schneider, *"But Answer Came There None": The Michigan*
  *Supreme Court and the Certified Question of State Law,*
  41 Wayne L. Rev. 273 (1995) ..................................................................... 16

M.C.L. § 445.1712.......................................................................... 19, 20

*Spokeo Oral Argument Before the U.S. Supreme Court,*
  The National Law Review (Nov. 11, 2015) .................................................. 8

## INTRODUCTION

The purpose of Time's 11th-hour motion to stay this case pending the outcome of *Spokeo v. Robins* and to certify four questions to the Michigan Supreme Court is obvious: Time desperately desires to avoid a ruling on dispositive cross-motions for summary judgment now pending before this Court. This is evidenced by the fact that the two requests are completely at odds: Does Time want the parties to stop working on this case, or just pack up and head to Lansing? If Time really believed that the Supreme Court's decision in *Spokeo* would affect the outcome of this case, it would have moved for a stay months ago, shortly after the Supreme Court granted the petition for certiorari in April. Likewise, if Time really thought that the Michigan Supreme Court could provide useful or necessary guidance into the state law issues in this case, it would have sought certification at some earlier point in the last three years of litigation when these issues arose in prior briefing and discovery.

The only thing Time's two requests have in common is that they each seek to unnecessarily postpone a dispositive ruling here. As explained below, both requests should be denied.

## I.     THIS MATTER SHOULD NOT BE STAYED PENDING *SPOKEO*.

Time's request that this case be stayed pending a ruling in *Spokeo* should be denied for four reasons. ***First***, Time—without explanation—waited over six

months before seeking a stay, completely undermining its assertion that a stay is necessary now. During that time discovery was completed, a class was certified, and cross-motions for summary judgment were briefed and are pending. A stay at this juncture simply is not warranted.

**Second**, the fact that the Supreme Court granted certiorari in *Spokeo* in no way alters Sixth Circuit precedent establishing that Plaintiff and the class have Article III standing here. And as the Sixth Circuit has explained, when it has already decided an issue, district courts in this Circuit are bound by that determination and do not have authority to delay proceedings and await a ruling by the Supreme Court in some other case.

**Third**, the outcome of *Spokeo* will not affect Plaintiff's and the class members' Article III standing in any event. Based on the *Spokeo* oral argument, it is very unlikely that the Supreme Court will address the broad question of whether invasion of a legal right is alone sufficient to establish Article III standing. More importantly, however, even if the Court were to do so and hold that plaintiffs need to have suffered an injury-in-fact separate and apart from an invasion of their statutory rights, Plaintiff and the class members have suffered such injury here.

**Finally**, the balance of harms weighs in favor of denying the stay. Plaintiff and the class continue to be harmed by Time's ongoing disclosure of their statutorily-protected information to third-party data miners. Any delay in obtaining

2

ultimate injunctive relief to stop this conduct exacerbates this harm. In contrast, Time suffers no harm if the stay is denied—other than potentially losing summary judgment, but that does not warrant a stay of the litigation. Alternatively, if both cross-motions for summary judgment are denied and the case set for trial—at which point this Court can, if necessary, reevaluate how to proceed in light of *Spokeo*—Time's litigation costs are almost entirely behind it.

### A. Time's Delay in Seeking the Stay Is Inexcusable.

Time—despite its purported concern for the unnecessary expenditure of judicial and party resources—inexplicably waited until the last possible moment to move to stay these proceedings. The Supreme Court agreed to hear the *Spokeo* matter over six months ago, in April, *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892, 191 L. Ed. 2d 762 (2015), so it's entirely unclear (other than being motivated by the prospect of losing summary judgment) why Time waited until now to ask for a stay based on *Spokeo*. And now, Time gives no answer for why it waited so long after the Supreme Court decided to hear *Spokeo* to request a stay. Time certainly can't say that it didn't know about *Spokeo* until now; in July, it filed an amicus brief in support of Spokeo before the Supreme Court, and in August, it discussed *Spokeo* in its summary judgment motion. (Dkt. 119 at 23-24.) Yet still Time chose not to file a motion to stay this litigation at either of those times.

Defendants in other cases didn't seem to have any problem filing stay

motions months before. In all but one of the cases cited by Time where litigation was stayed pending *Spokeo*, the stay issue was raised no later than July.[1] And in the remaining case, where a motion to stay wasn't filed until August 20 (still nearly three months before Time got around to filing its stay motion), the case had only just been filed at the end of June and the motion to stay was the first thing filed by the defendant in that case.[2]

The only reasonable explanation for Time's delay—and by all appearances, the correct one—is that it sees the writing on the wall. Cross-motions for summary judgment are fully briefed and set to be argued next month. So Time seems to be trying anything—including seeking contradictory forms of relief (a stay of all proceedings, but new proceedings in state court)—to avoid a ruling on those motions. But fear of losing is not a justification for a stay.

---

[1] *Duchene v. Westlake Serv., LLC*, No. 13-cv-01577, Dkt. 88  (W.D. Pa. July 22, 2015) (motion to stay); *Patel v. Trans Union, LLC*, 14-cv-00522, Dkt. 103 (N.D. Cal. July 16, 2015) (motion to stay); *Salvatore v. Microbilt Corp.*, No. 14-cv-1848, Dkt. 15 (M.D. Pa. July 30, 2015) (motion to stay); *Stone v. Sterling Infosystems, Inc.*, No. 15-cv-00711, 2015 WL 4602968, Dkt. 18 (E.D. Cal. May 22, 2015) (motion to stay); *Larson v. Trans Union, LLC*, No. 12-cv-05726, Dkt. 82 (N.D. Cal. June 3, 2015) (briefing submitted in support of court's *sua sponte* suggestion that case be stayed); *Williams v. Elephant Insurance Co.*, No. 15-cv-00119, Dkt. 34 (E.D.Va. May, 21, 2015) (motion to stay); *Provo v. Rady Children's Hosp. San Diego*, No. 15-cv-0081, Dkt. 24 (S.D. Cal. June 15, 2015) (motion to stay); *Ramirez v. TransUnion*, No. 12-cv-00632, Dkt. 177 (N.D. Cal. May 4, 2015) (motion to stay).

[2] Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp., No. 15-cv-04767, Dkt. 1 (Complaint filed on June 24, 2015), 23 (moving to stay filed on August 20, 2014) (C.D. Cal.).

Time has offered absolutely no explanation for its delay in seeking this stay until the eve of argument on cross-motions for summary judgment. Yet Courts often consider the stage of litigation as a factor in deciding whether to issue a stay, and the fact that this case has been pending for over three years—through motion practice and discovery and class certification and briefing on summary judgment—strongly counsels against a stay here. *See, e.g., Sanofi-Synthelabo v. Apotex Inc.*, No. 02-cv-2255, 2010 WL 1541435, at *2 (S.D.N.Y. Apr. 15, 2010) ("[T]he extremely late stage of this protracted litigation weighs against a stay[.]"); *Bacon v. Stiefel Labs., Inc.*, 837 F. Supp. 2d 1280, 1282 (S.D. Fla. 2011) ("Given the late stage of this lengthy litigation … this Court declines to exercise its discretion to stay the proceedings before it."). *Cf. Hotwire Dev., LLC v. Logitech Int'l S.A.*, No. 09-cv-02383, 2010 WL 3523073, at *1 (D. Ariz. Sept. 3, 2010) (granting stay where "[d]efendants *did not* move for a stay at an unduly late stage of the proceedings") (emphasis added).

Time's unwarranted and unexplained delay in waiting until this late stage of the litigation before seeking a stay is reason alone to deny the request. *See, e.g., United States v. Mandycz*, 321 F. Supp. 2d 862, 866 (E.D. Mich. 2004) (holding that "[w]hile Defendant is certainly entitled to wait until the final days" to seek to stay litigation, doing so "does not suggest that there is a pressing need for … further delay").

5

**B.    The Supreme Court's Consideration of *Spokeo* Does Not Alter Binding Sixth Circuit Precedent Establishing that Plaintiff and the Class Have Article III Standing.**

Regardless, even if Time had more expeditiously sought a stay pending *Spokeo* (or at least plausibly explained its delay in not doing so), a stay would still not be warranted here. Time asserts that a ruling in *Spokeo* will determine whether Plaintiff has Article III standing here. But binding Sixth Circuit precedent already establishes that she does. *See, e.g., In re Carter*, 553 F.3d 979, 989 (6th Cir. 2009) ("[T]he actual or threatened injury required by Article III may exist solely by virtue of statutes creating legal rights, *the invasion of which creates standing*.") (internal quotations omitted, emphasis in original); *Imhoff Investment, L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015) ("[T]he invasion of [statutes creating legal rights] creates standing, even though no injury would exist without the statute.") (internal quotations omitted). A grant of certiorari in a case out of another circuit does not make this Sixth Circuit precedent any less binding on this Court.

Furthermore, not only must this Court continue to follow binding Sixth Circuit precedent, it is "without authority to defer action in [this case] to await a ruling by the Supreme Court" in *Spokeo*. *McClellan v. Young*, 421 F.2d 690, 691 (6th Cir. 1970). As the Ninth Circuit has explained, "once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and

6

have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority." *Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) (citing *McClellan*).

While *McClellan* and *Yong* involved habeas proceedings, "there is no indication … that this principle is limited to habeas corpus proceedings." *Starbucks Corp. v. Lundberg*, No. 02-cv-948, 2004 WL 2554578, at *1 (D. Or. Nov. 10, 2004) (holding, in an intellectual property case, that "[t]his court does not have authority to await a ruling by the Supreme Court when the Ninth Circuit has already decided an issue of law"). And indeed, multiple district courts have recently refused to stay various cases under this principle in precisely the circumstances present here. *See, e.g., Woods v. Caremark PHC, L.L.C.*, No. 15-cv-00535, 2015 WL 6742124, at *3 (W.D. Mo. Nov. 2, 2015) (denying motion to stay, noting that "[a]lthough the Court recognizes that Spokeo *might* impact this case, Eighth Circuit precedent presently provides Plaintiff has standing to bring this claim") (emphasis in original); *Speer v. Whole Food Mkt. Grp., Inc.*, No. 14-cv-3035, 2015 WL 2061665, at *1 (M.D. Fla. Apr. 29, 2015) ("The Court concludes … that a grant of certiorari by the Supreme Court does not change the law and does not constitute new law [and] that a stay of these proceedings to await a decision from the Supreme Court in *Spokeo* is not warranted.").

In short, this Court is bound by current Sixth Circuit precedent establishing

7

that Plaintiff and the class have standing, and they are entitled to proceed with their claims. As such, it cannot wait and see whether the Supreme Court will, in another case, somehow undermine the continuing vitality of their standing.

**C.    The Ultimate Ruling in *Spokeo*—Whatever It Is—Will Not Affect Plaintiff's and the Class Members' Standing Here.**

Even if this Court *did* have authority to wait and see whether *Spokeo* will somehow upset the current law of this Circuit, there is no reason to do so. Here, whatever the ultimate ruling in *Spokeo*, it will not affect Plaintiff's and the class members' standing to pursue their claims against Time.

As an initial matter, based on how the *Spokeo* oral argument played out, it is extremely unlikely that the Supreme Court will issue a ruling beyond the federal statute at issue and the narrow facts of that case. *See Spokeo Oral Argument Before the U.S. Supreme Court*, The National Law Review (Nov. 11, 2015), http://www.natlawreview.com/article/spokeo-oral-argument-us-supreme-court. Indeed, the justices' debate was focused on the actual statute at issue there, the Fair Credit Reporting Act, and the kinds of injury congress sought to protect against by enacting it. *Compare, e.g.,* Tr. of Oral Arg., *Spokeo, Inc. v. Robins*, at 11:9-14 ("[T]his statute is entirely about preventing the dissemination of inaccurate credit reports which [Congress] seem[s] to think is both something that harms the individual personally and also harms larger systemic issues. And then they gave the cause of action to the people it harmed personally.") (Kagan, J.) *with id.* at

8

20:22-24 ("[I]n fact, Congress has not identified misinformation as a sueable harm. That's not what this statute does.") (Scalia, J.).

Furthermore, even if the Supreme Court were to rule broadly, *Spokeo* expressly involves only federal—not state—statutes. As Time correctly notes, the question presented to the Supreme Court in *Spokeo* was "[w]hether *Congress* may confer Article III standing upon a plaintiff who suffers no concrete harm … by authorizing a private right of action based on a bare violation *of a federal statute*." (Dkt. 156 at 5-6) (emphasis added). That question raises a host of separation of powers concerns that were the focus of the Supreme Court briefing. *See, e.g.,* Pet. Br. at 18-35; Resp. Br. at 48-51; U.S. Br. at 23-27. Here, in contrast, Plaintiff and the class seek relief only under state law, and thus, even a broad ruling in *Spokeo* would not have any affect on whether they have Article III standing to pursue their state law claims.

More importantly, however, even if the Supreme Court were to rule in *Spokeo* that Article III injury-in-fact requires some sort of actual harm above and beyond invasion of a statutory right (and that ruling applied to invasion of state statutory rights), Plaintiff and the class would *still* have Article III standing because they have suffered such actual harm. Specifically, Plaintiff and the class assert and have presented evidence that because what they paid for (magazine subscriptions plus protection of their private reading choices) was not what they

9

actually received (magazine subscriptions *without* such privacy protections), they suffered actual economic harm.[4] (Dkt. 53 ¶¶ 55, 81-83, 104-05); (Rose Coulter-Owens Dep. Tr. at 184:13–185:5, attached as Exhibit A to the Declaration of Ari J. Scharg.) *See also Kinder v. Meredith Corp.*, No. 14-cv-11284, 2014 WL 4209575, at *7 (E.D. Mich. Aug. 26, 2014) (rejecting argument that magazine subscriber "lost nothing of value" when publisher "retained [plaintiff's] subscription fees but disclosed her personal reading information"); *In re Aqua Dots Products Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) ("The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing.") Consequently, Plaintiff and the class have alleged actual economic injury in addition to the invasion of their rights under the VRPA. Unlike in *Spokeo*, where the plaintiff had not paid any money to the defendant and had simply been a victim of its statutory violation, Plaintiff and the class members here are all out real money that they paid from their pockets.[5]

---

[4] In fact, Time itself argued at the class certification stage that plaintiff and the other class members were required to proceed on their theory of actual damages which could exceed the potential statutory damages available. (*See* Dkt. 93 at 22 (arguing that because amended complaint is "premised on a theory of actual harm . . . [Plaintiff] cannot now switch to a statutory damages theory[.]").) It is at best disingenuous for Time to now claim a complete absence of actual harm.

[5] That Plaintiff and the class are seeking to recover statutory damages rather than their actual overpayment damages in no way means that they did not suffer these actual losses, or that those losses cannot serve as the injury-in-fact supporting

At the end of the day, whatever happens in *Spokeo*, Plaintiff and the class will continue to have Article III standing here.

**D.    The balance of harms weighs in favor of denying the stay.**

Finally, in addition to Time's delay in seeking a stay until this late stage of the litigation, this Court's duty to apply binding Sixth Circuit precedent and not wait around for a possible contrary ruling of the Supreme Court, and the fact that the ultimate ruling in *Spokeo* will not be dispositive here, a balance of the respective harms to Time and the class likewise weighs against staying these proceedings.

"The party seeking the stay has the burden of 'mak[ing] out a clear case of hardship or inequity in being required to go forward.'" *F.D.I.C. v. First Am. Title Ins. Co.*, No. 14-cv-13624, 2015 WL 418122, at *2 (E.D. Mich. Jan. 30 2015) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). Here, Time has utterly failed to meet this burden. Aside from vague assertions of "expenses" and "burdensome work ahead" (dkt. 156 at 16-17), it points to absolutely no hardship it will face from allowing this litigation to continue and this Court to rule on the fully-briefed cross-motions for summary judgment. On the other hand, preparing for the summary judgment hearing—which this Court has already ruled will go

---

Article III standing. As this Court previously recognized, Plaintiff and the class are entirely within their rights to seek the greater of actual or statutory damages. (*See* dkt. 117 at 16.)

11

forward (dkt. 158)—Time has nothing left to do at this point, certainly no "burdensome work" that will incur vast "expenses." And while Time frets about "the arduous task of preparing for a trial" (dkt. 156 at 17), whether it will need to do so depends not on the outcome of *Spokeo*, but on how this Court rules on the cross-motions for summary judgment. Allowing this Court to consider and rule on those motions in no way harms Time. *See, e.g., Desfassiaux v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, No. 14-cv-8663, 2015 WL 6798301, at *6 (N.D. Ill. Oct. 30, 2015) (ruling on summary judgment motion before considering motion to stay pending *Spokeo*).[6]

In contrast to the complete lack of harm to Time in allowing this Court to consider and rule on the cross-motions for summary judgment, staying the litigation would harm Plaintiff and the class. Time continues to disclose Plaintiff's and the class's private information to third-party data miners (*see, e.g.*, dkt. 126 at 3) (citing evidence that Time discloses all of its subscriber information to Acxiom "on a weekly or bi-weekly basis"), and any delay in obtaining ultimate injunctive

---

[6] Time also asserts that a stay will conserve judicial resources and "safeguard taxpayers' money." (Dkt. 156 at 14-15, 17.) Time's concern for this Court and the taxpayers—while admirable—rings hollow in light of its decision to wait until the last possible moment to seek the stay. Certiorari was granted in *Spokeo* just days after class certification briefing was complete, and well before this Court ruled on it. If Time really cared about this Court's time and resources—rather than just postponing a decision on summary judgment—it would have brought this motion months ago before this Court had to decide class certification.

relief to stop that conduct exacerbates the harm. This stands in marked contrast to the case cited by Time for the proposition that there is no prejudice to Plaintiff from a delay. (Dkt. 156 at 16) (citing *Ramirez v. Trans Union, LLC*, No. 12-cv-00632, 2015 WL 6159942 (N.D. Cal. June 22, 2015)). In *Ramirez*, the "Defendant ha[d] modified the conduct about which Plaintiff complains." 2015 WL 6159942 at *2. Here, Time has *not* modified the challenged conduct, and continues to disclose her—and the other class members'—private information to data miners. Thus, Plaintiff and the class are entitled to a prompt determination of whether Time's conduct violates the law, and "[t]he Sixth Circuit … has warned 'that a court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights … without undue delay.'" *F.D.I.C.*, 2015 WL 418122 at *2 (quoting *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977)).

*     *     *

As explained above, there are multiple reasons not to grant the requested stay, but it is worth reiterating perhaps the most salient: *the outcome of Spokeo will not affect Plaintiff's standing here*. Even if the Supreme Court radically alters the law of Article III standing by requiring that plaintiffs suffer an actual economic injury above and beyond an invasion of their statutory rights, Plaintiff and the class have suffered such an injury by overpaying for magazine subscriptions that were

13

supposed to protect their privacy.

In any event, though, a stay is not appropriate at this juncture. This Court should at the very least proceed to rule on the fully-briefed cross-motions for summary judgment. *See Desfassiaux*, 2015 WL 6798301 at *6.[7] Depending on that ruling, the parties and the Court could always re-examine the appropriateness of a stay at that time.

## II.    THERE IS NO NEED TO CERTIFY QUESTIONS TO THE MICHIGAN SUPREME COURT.

Time also requests—tellingly not in the alternative—that this Court certify four questions to the Michigan Supreme Court. This request, too, should be denied.

The decision whether or not to certify questions to a state supreme court lies "within the sound discretion of the district court." *City of Columbus, Ohio v. Hotels.com, L.P.*, 693 F.3d 642, 654 (6th Cir. 2012). That said, district courts should not "trouble [their] sister state courts every time an arguably unsettled question of state law comes across [their] desks." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The absence of state court precedent directly on point alone counsels against certification. *Pack v. Damon*

---

[7]    In addition to *Desfassiaux*, which ruled on a summary judgment motion before deciding whether to stay pending *Spokeo*, the court in one of the cases cited by Time essentially took this approach as well, ruling—albeit tentatively—on a fully briefed motion for class certification before staying the case. *Larsen v. Trans Union, LLC*, No. 12-cv-05726, 2015 WL 3945052, at *8 (N.D. Cal. June 26, 2015).

*Corp.*, No. 03-cv-73601, 2006 WL 1156489, at *1 (E.D. Mich. May 1, 2006) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974)). Indeed, "the mere difficulty in ascertaining local law is no excuse for remitting the parties to a state tribunal for the start of another lawsuit." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, No. 04-cv-73400, 2009 WL 3390244, at *1 (E.D. Mich. Oct. 20, 2009) (quoting *Lehman Bros.*, 416 U.S. at 390-91).[8]

Federal courts sitting in diversity are authorized—indeed, bound—"to decide questions of state law whenever necessary to the rendition of a judgment," and refusing to do so "merely because answers to the questions of state law are difficult or uncertain or have not yet been given by the highest court of the state would thwart the purpose of" diversity jurisdiction. *Meredith v. City of Winter Haven*, 320 U.S. 228, 234-35 (1943); *Lamar Advert. Co. v. Charter Twp. of Clinton*, 241 F. Supp. 2d 793, 798 (E.D. Mich. 2003) (citing *Meredith*). Thus, even in the case of a state law question of first impression, the Sixth Circuit has repeatedly instructed that where "a reasonably clear and principled course" exists,

---

[8]     That more than just a question of first impression is required before certifying a question to state court is well illustrated by one of the cases cited by Time in support of its position. *County of Wayne v. Philip Morris Inc.*, 99-76097, 2000 WL 34226614 (E.D. Mich. Aug. 25, 2000). While Time is correct that that case involved an issue "that [had] 'truly been left unsettled by the state courts,'" (dkt. 156 at 18) (quoting *Cnty. of Wayne*, 2000 WL 34226614 at *1), the issue was "one of paramount importance involving the structure, balance of power, separation of power, and functioning of Michigan governmental entities." *Cnty. of Wayne*, 2000 WL 34226614 at *1. No such fundamental issues of state governance are raised here.

the district court should decide the issue itself. *Pennington*, 553 F3d at 450;

*Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 610 (6th Cir. 2012); *State Auto*

*Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 194-95 (6th Cir. 2015).[9]

Here, there is a reasonably clear and principled course for deciding each of

the four questions Time proposes be certified, and this Court need not trouble the

Michigan Supreme Court to answer these questions. Furthermore, under this

Court's local rules, it can only certify a question to a state tribunal if "certification

of the issue will not cause undue delay or prejudice." LR 83.40(a)(3). Here, in

addition to it being unnecessary to certify the proposed questions to the Michigan

---

[9]    It is also worth noting that the Michigan Supreme Court appears unusually hostile to certification requests. *See, e.g., Thompson v. United States*, 101 Fed. Cl. 416, 424 (2011) ("The Michigan Supreme Court does not usually entertain certified questions."); M. Bryan Schneider, *"But Answer Came There None": The Michigan Supreme Court and the Certified Question of State Law*, 41 Wayne L. Rev. 273, 315 (1995) ("The Michigan Supreme Court, to say the least, is not very receptive to the certified question. Not only does the court refuse to answer most questions, but it generally fails to state the reasons for its refusal."). Indeed, the Sixth Circuit has in the past expressed frustration with that court's refusal to hear certified questions. *See Knox v. Eli Lilly & Co.*, 592 F.2d 317, 319 (6th Cir. 1979) ("This is not the first time our questions have been rebuffed by the Michigan Supreme Court, and we must frankly conclude that the promise of the certification procedure set out in [Michigan rules] appears to be illusory."). One reason for the Michigan Supreme Court's reluctance to hear certified questions may be an unresolved debate over the constitutionality of answering certified questions. *See, e.g., In re Certified Questions from U.S. Court of Appeals for Sixth Circuit*, 696 N.W.2d 687 (Mich. 2005) (Weaver, J. concurring) ("I concur in the order declining to answer the question certified by the United States Court of Appeals for the Sixth Circuit because I continue to question this Court's authority to answer such questions…. Justice Young also questions this Court's authority to answer questions certified by the federal courts … and Justice Levin has questioned this Court's authority.").

Supreme Court, Time's waiting until the last possible moment to request that this Court do so only delays final resolution of this matter to the prejudice of Plaintiff and the class.

A.   **There Is No Reason To Burden the Michigan Supreme Court Because a Reasonably Clear and Principled Course Exists for Answering Each of the Proposed Questions.**

Certification of the four proposed questions is unwarranted. None of them are so unique that current Michigan law provides no guidance on how to answer them. Rather, they are the sorts of questions that arise routinely in litigation, and there is a reasonably clear and principled course for answering each of them.

1.   **Proposed question 1: agency**

The first question Time proposes to certify is: "Whether the VRPA permits disclosures to 'agents' (and, if so, what qualifies as an 'agent' under the VRPA)?" (Dkt. 156 at 19.) While the Michigan Supreme Court has not directly answered this precise question, the ability to do so is certainly not something beyond the ken of a federal court sitting in diversity.

In arguing that the VRPA does not include an exception for disclosure of protected information to agents, Plaintiff relies on the well-known cannon of construction, *expressio unius est exclusion alterius*—the expression of one thing is the exclusion of the other. (Dkt. 137 at 8) ("Because the statute expressly includes one exception (disclosure to the customer) but not any others (such as disclosure to

17

an agent) no other exceptions apply."). The Michigan Supreme Court recognizes that cannon, *Bradley v. Saranac Community Schools Bd. of Educ.*, 565 N.W.2d 650, 656 (Mich. 1997), and it thus provides reasonable guidance to this Court in interpreting the statute. *See Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995) (holding that district court did not err in refusing to certify question where, "[a]lthough Kentucky has not addressed the exact question at issue, it does have well-established principles to govern the interpretation of insurance contracts").

Furthermore, even if there were an agency exception in the VRPA, both parties agree that under Michigan law, the defining element of agency is the principal's right to control the actions of the agent. (Dkt. 137 at 10.) And there is a vast body of Michigan law regarding the "right to control" test. For example, a Westlaw search of "right to control" within the same paragraph as "principal" and "agent" returns over fifty cases. Whether Acxiom is an agent of Time under that standard can be decided either by this Court as a matter of law (because the contract between Acxiom and Time expressly disclaimed the existence of an agency relationship) or by a properly-instructed jury (because in the absence of a clear contract, agency is normally a question for the trier of fact). (*Id.* at 11-12.)[10] Either way, there is no need to have the Michigan Supreme Court provide any

---

[10]    Time does not argue that its disclosures to Wiland fall within the purported agency exception.

18

additional guidance on agency law in order to resolve this issue consistent with its rulings.

### 2.    Proposed question 2: "at retail"

The second question Time proposes to certify is: "Whether the VRPA's 'at retail' language requires that a customer purchase materials from a company at retail in order to invoke the statute?" (Dkt. 156 at 19.) Putting aside the circularity of Time's question, the VRPA's language is clear: it applies to companies "engaged in the business of selling at retail … written materials." M.C.L. § 445.1712. And as with the first proposed question, while Michigan courts have not directly addressed the question of whether magazine publishers are engaged in the business of selling written materials at retail, there is a reasonably clear and principled course for answering this question.

Michigan law instructs that to determine the meaning of an undefined term such as "at retail," courts may look to dictionary definitions, as well as how the term is used elsewhere by the Michigan Legislature. *See People v. Hughes*, 855 N.W.2d 209, 218-19 (Mich. Ct. App. 2014). And Plaintiff's summary judgment briefing cites such sources—as well as a Michigan Supreme Court case—to assist this Court in determining the meaning of "at retail" and its application to Time. (Dkt. 126 at 9-13; dkt. 137 at 18-22.) Indeed, the Michigan Supreme Court has held that a publisher using third-party salespersons in a manner similar to Time

19

sold its products "at retail" under another statute. (*See* dkt. 137 at 22; dkt. 150 at 2 n.2) (citing *World Book, Inc. v. Dep't of Treasury*, 590 N.W. 2d 293, 298 (Mich. 1999)).

Accordingly, Michigan law provides reasonable guideposts for this Court to follow in determining whether Time sells written materials "at retail." Indeed, this Court has already once held that Time's conduct here satisfies the "at retail" requirement, (dkt. 47 at 13-14), has held in another case that a different magazine publisher does so, *Halaburda v. Bauer Publ'g Co.*, LP, No. 12-cv-12831, 2013 WL 4012827, at *7 (E.D. Mich. Aug. 6, 2013), and another federal court in this district has likewise found—also without certifying the question to the Michigan Supreme Court—that magazine publishers fall within the "at retail" coverage of the VRPA, *Kinder v. Meredith Corp.*, No. 14-cv-11284, 2014 WL 4209575, at *6 (E.D. Mich. Aug. 26, 2014).

### 3.    Proposed questions 3 and 4: the exclusive purpose of marketing exception

The final two questions that Time proposes to certify involve the exclusive purpose of marketing exception, which allows companies to disclose otherwise-protected information "for the exclusive purpose of marketing goods and services directly to the consumer," so long as the company "inform[s] the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information." M.C.L. § 445.1713(d). As an

initial matter, Time asserts this exception only with respect to its disclosures to Wiland. Thus, if this Court finds—as it should—that it need not certify the first two proposed questions (agency and "at retail"), it can go ahead and proceed to adjudicate the cross-motions for summary judgment as to Time's liability for its disclosures to Acxiom.

In any event, this Court also need not certify the last two proposed questions for another reason. As Time correctly points out, the parties dispute whether the two elements of the exception—that disclosures were made for the exclusive purpose of marketing and written opt-out notice was provided—have been satisfied. (Dkt. 156 at 21-22.) In other words, they dispute the facts.  But neither party disputes that these *are* the elements of the exception. Hence, the Michigan law is what it is, and the only question here is whether Time's conduct falls within that exception. Application of the facts to this law is something this Court can do without seeking the Michigan Supreme Court's further guidance.[11]

Time's attempt to complicate the exclusive purpose element by creating an artificial distinction between the "subjective motivation" for and the "end use" of the disclosure (dkt. 156 at 22) is pure sophistry. In any case, as Plaintiff explains in

---

[11] Time also argues that the Michigan Supreme Court should be permitted to offer a narrowing construction of the marketing exception so as to avoid any First Amendment problems. (Dkt. 156 at 22-23.) But this Court has already held that there is no First Amendment problem with the statute (dkt. 47 at 14), rendering a narrowing construction—and thus certification—unnecessary.

21

her summary judgment briefs, Time's disclosures to Wiland were not for the exclusive purpose of marketing under either purported meaning; the "subjective motivation" for the disclosures was to gain access to Wiland's valuable cooperative database, and the "end use" of the information included non-marketing purposes such as charitable and political fundraising. (Dkt. 126 at 21-22; dkt. 137 at 13-16; dkt. 150 at 4-5.)

And while Time proposes that this Court certify the question "What constitutes sufficient written notice to satisfy the notice requirement in the VRPA's direct marketing exception"—a request for an advisory opinion if ever there was one—this Court doesn't need to go to the Michigan Supreme Court to determine that fine print buried in magazines and after-the-fact bill and renewal notices are insufficient. (*See* dkt. 126 at 24-25; dkt. 137 at 16-18.) Indeed, Michigan law already provides guidance as to what constitutes sufficient written notice generally. *See, e.g., Krupp PM Eng'g, Inc. v. Honeywell, Inc.*, 530 N.W.2d 146, 149 (Mich. App. Ct. 1995) (finding that reasonable person would not have seen small, non-capitalized text on the back of a document); *Latimer v. William Mueller & Son, Inc.*, 386 N.W.2d 618, 625 (Mich. App. Ct. 1986) (finding notice not sufficient were it was not set off with contrasting color or particular emphasis).

> **B.    Certification of the Proposed Questions at This Late Stage of the Litigation Serves Only to Delay Final Resolution and Prejudice Plaintiff and the Class.**

Finally, even if certification of some or all of the proposed questions to the Michigan Supreme Court were otherwise appropriate, doing so would cause undue delay and prejudice in violation of Local Rule 83.40. As explained above, Time continues to disclose Plaintiff's and the class's private information to third-party data miners and any delay in obtaining ultimate injunctive relief to stop that conduct only exacerbates that harm. If questions were certified to the Michigan Supreme Court, delay would be inevitable. Indeed, another federal court in this state has complained of undue delay when certifying questions to the Michigan Supreme Court:

> This Court's experience with our state's certification process is … dismal. One case in this Court … was certified on November 12, 1982, yet did not reach a final resolution until November 1, 1985…. The Court notes that similar fact situations affect other parties throughout the State of Michigan…. It would be more prudent to make a decision today than to wait for the Supreme Court of Michigan to (a) decide whether to accept the case for certification and (b) to ultimately decide the issue.

*In re Pike*, 62 B.R. 765, 768 n.1 (W.D. Mich. 1986).

Time asserts that any delay would be justified by allowing the Michigan Supreme Court to weigh in on important questions regarding the VRPA. But with all due respect, the proposed questions here are run-of-the-mill questions of the type common to litigation, and that a federal court sitting in diversity is eminently competent to answer. While Time points to the *Deacon v. Pandora* case, where the Ninth Circuit certified a question involving the VRPA to the Michigan Supreme

Court, the question there was of a much more fundamental nature: whether the VRPA covers streaming media. (Dkt. 156-6.) The principals of cooperative judicial federalism seem much better served by asking the Michigan Supreme Court how a thirty-year-old state law covers modern internet technology and new methods of media distribution than whether Acxiom is an agent of Time or certain fine print complies with a statutory notice requirement.

Furthermore, as with its request for a stay, Time completely fails to explain why it waited until the last possible moment to seek certification of these questions. While Time asserts that these questions weren't "crystalized" until now (dkt. 156 at 6-7), these issues have been part of this case *for years*. Time raised the "at retail" and opt-out notice issues in its 2012 motion to dismiss, which this Court denied. (Dkt. 22 at 12, 16-18; dkt 47.) Those issues arose again—along with the exclusive purpose of marketing exception—during the class certification stage, which Time again lost. (Dkt. 117 at 11-12, 14). And to the extent Time wasn't aware of the agency issue until the time it moved for summary judgment, it has no one to blame but itself; Time fails to explain why that issue didn't "crystalize" at any point during the last three years of litigation.

The point is, Time's desire to seek the input of the Michigan Supreme Court at this late date seems to be, at best, an afterthought, and at worst, a desperate attempt to delay ruling on the cross-motions for summary judgment. Either way,

certification is not appropriate. *See, e.g., Berrington*, 696 F.3d at 610-11 (refusing to certify questions when request to certify was "raise[d] as an afterthought"); *Pipefitters*, 2009 WL 3390244, at *1 ("Defendant's decision to make this request now, after five years of litigation and a decision by this court in favor of Plaintiffs, raises concerns about dilatory tactics. Defendant could have filed this motion previously but chose not to. Defendant has not demonstrated under L.R. 83.40 that certification of the issue will not cause undue delay or prejudice to plaintiff.")

## CONCLUSION

For the foregoing reasons, Time's request to stay this matter pending *Spokeo* should be denied, as should its request to certify questions to the Michigan Supreme Court.

Respectfully submitted,       **Rose Coulter-Owens**, individually and on behalf of all others similarly situated,

By: /s/ Ari J. Scharg
       Class Counsel

Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 N. LaSalle, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

*Class Counsel*

25

## <u>CERTIFICATE OF SERVICE</u>

I, Ari J. Scharg, an attorney, certify that on November 23, 2015, I served the above and foregoing ***Plaintiff's Response to Defendant's Motion to Stay Pending Spokeo and Certify Questions to Michigan Supreme Court*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

/s/     Ari J. Scharg

26