UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSE COULTER-OWENS, individually and
on behalf of all others similarly situated,

        Plaintiff,

v.

CASE NO. 12-CV-14390
HONORABLE GEORGE CARAM STEEH

TIME, INC., a Delaware Corporation,

        Defendant.
_____/

OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DOCS. #119, 123), DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DOCS. #126, 128) AND DENYING
<u>DEFENDANT'S MOTION TO STAY/FOR CERTIFICATION (DOC. #156)</u>

This matter is before the court on the parties' cross-motions for summary judgment and the defendant's motion to stay/for certification to the Michigan Supreme Court. The court held oral argument on the motions on December 15, 2015. For the reasons that follow, defendant's motion for summary judgment will be granted, plaintiff's motion for summary judgment will be denied, and defendant's motion to stay/for certification will be denied.

I. BACKGROUND

This action was filed as a putative class action under Michigan's Video Rental Privacy Act ("VRPA"), Mich. Comp. Laws §§ 445.1711, *et seq.* Plaintiff alleges that defendant improperly disclosed the private information of people who subscribed to

defendant's magazines, *TIME*, *Fortune*, and *Real Simple*, through third-party websites. In addition, plaintiff's complaint alleges unjust enrichment under Michigan law.

The court certified the following class as it relates to the VRPA claim, only:

> All Michigan residents who between March 31, 2009 and November 15, 2013 purchased a subscription to *TIME*, *Fortune*, or *Real Simple* magazines through any website other than Time.com, Fortune.com, and RealSimple.com.

*See* (Doc. #117 at 22). Plaintiff is proceeding on an individual basis on the unjust enrichment claim.

As explained in the court's certification order, plaintiff alleges that Michigan consumers who purchased the magazines described above through defendant's third-party agents on the Internet, such as www.magazines.com (as opposed to having purchased the magazines directly through defendant), had their "record or information concerning the purchase" unlawfully disclosed to two third parties—Wiland and Axciom—in violation of the VRPA. Rather than repeat the entirety of the facts, the court incorporates by reference the background facts stated in the order certifying the class. (Doc. #117 at 1–6). The court explains the facts as necessary when discussing the parties' arguments below.

## II. CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A. Legal Standard

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed

the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distrib. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original); *see also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be

evidence from which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### B. The VRPA Claim

One disputed issue central to resolving the summary judgement motions is whether the magazine subscriptions purchased by plaintiff and the class members constitute an "at retail" purchase under the VRPA. The VRPA provides, in relevant part:

> Sec. 2. Except as provided in section 3 or as otherwise provided by law, a person, or an employee or an agent of the person, *engaged in the business of selling at retail*, renting, or lending books or other written materials . . . , shall not disclose to any person, *other than the customer*, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer.

Mich. Comp. Laws § 445.1712 (emphasis added) (internal footnote omitted).

Defendant argues that none of the proposed class members, including plaintiff, purchased magazines directly from defendant, and, thus, did not purchase the magazines "at retail." Indeed, the class is defined as those persons who, for a discrete period, purchased magazines from third-party websites. Thus, defendant argues that the VRPA is inapplicable to this action.

Plaintiff responds that it does not matter whether the magazines were purchased directly from defendant. All that matters, according to plaintiff, is that defendant is indeed engaged in the business of "selling at retail . . . written materials." In other words, plaintiff argues that there need not be a direct sale from defendant to a customer for the sale to be considered "at retail" under the VRPA, *i.e.* a retailer-customer relationship is not necessary. Because defendant sells magazines to customers, albeit not to the plaintiff and the class

members, plaintiff argues that defendant is in the business of selling magazines "at retail" and subject to the restrictions of the VRPA. Plaintiff's reading of the statute is incorrect.

This court is not the first to address the issue. Another judge in this district, Judge Thomas Ludington, considered the question in *Kinder v. Meredith Corporation*, No. 14-cv-11284, 2014 WL 4209575 (E.D. Mich. July 27, 2015). In *Kinder*, the plaintiff brought a putative class action suit against the defendant magazine publisher, Meredith Corporation ("Meredith"), alleging that Meredith disclosed her personal information to third-parties in violation of the VRPA. *Id.* at *1. Meredith filed a motion to dismiss the complaint arguing, in part, that the plaintiff had not established that the magazine subscriptions were sold at retail by Meredith because the plaintiff had not alleged how she subscribed to the Meredith's publications. *Id.* at *4–*5. Rather, the plaintiff merely alleged in the complaint that she purchased written materials "directly from" Meredith. *Id.* at *5. Given plaintiff's allegations, and the requirement on a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure to take the plaintiff's well-pleaded allegations as true, the *Kinder* court rejected Meredith's argument that the plaintiff had not established that she purchased magazines directly from Meredith. *Id.* at *6. In so doing, Judge Ludington analyzed the term "at retail" in the statute in detail.

> In analyzing the term "at retail," Judge Ludington reasoned:
>
> As Meredith correctly contends, "at retail" is not defined in the statute, and therefore it should receive "its ordinary and natural meaning." *Ltd., Inc. v. C.I.R.*, 286 F.3d 324, 332 (6th Cir. 2002). The Oxford English Dictionary defines "retail" as "[t]he action or business of selling goods in relatively small quantities for use or consumption rather than for resale." Therefore, if Kinder had purchased her magazine subscription through a third-party, rather than directly from Meredith, she would not have bought them at retail. Accordingly, Meredith argues, because Kinder has not explicitly denied

> purchasing her magazine subscription from a third-party, she has failed to allege that she purchased the subscription "at retail."
>
> Meredith's contention is without merit. Although Kinder did not provide the specific method of subscription, she alleged that she "purchased written materials directly from Meredith." Compl. ¶ 63, 64. . . Here, Kinder's allegations meet *Iqbal*'s requirements: she alleges that she purchased the subscription directly from Meredith, *i.e.*, she did not purchase the subscription from any other entity (such as third-parties). Thus, although Kinder did not provide the exact method she used to subscribe, she did claim that she purchased them directly from Meredith.

*Id.*

Here, unlike the plaintiff in *Kinder*, the entire class purchased subscriptions to defendant's magazines through third-party websites. None of the purchases were directly from defendant. The court agrees with Judge Ludington's reasoning that, under the ordinary and plain reading of the term "at retail," magazine subscription purchases from a third-party, such as the purchases involved in this case, are not encompassed by the statute. The statute covers disclosures arising out of a retailer-customer relationship.

Reading the phrase "at retail" in the context of the entire statute supports the conclusion that "at retail" does not encompass the magazine purchases at issue in this case. As explained, the statute forbids a person "*engaged* in the business of selling at retail . . . written materials" to disclose a "record or information concerning the purchase" if that disclosure is "to any other person, *other than the customer*." Mich. Comp. Laws § 445.1712 (emphasis added). "It is a fundamental canon of statutory construction that words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007) (citation and internal quotation marks omitted). When reading the term "at retail" in the context of the entire statute, it is evident that purchases by third-parties do not

fall within the statute's reach. The statute permits disclosure of a "record or information concerning the purchase" if that disclosure is to the "customer." The Oxford English Dictionary defines "customer" as "[o]ne who frequents any place of sale for the sake of purchasing." Therefore, the statute contemplates a relationship created when there is a sale "at retail"—*i.e.*, selling goods for use not for *resale*—to a "customer"—*i.e.*, the person purchasing the magazine from the seller. In this case, the sale was not between defendant (the retailer) and plaintiff/the proposed class members (the customer). Rather, it was a sale from the retailer to a reseller, then to the plaintiff/proposed class members. Therefore, it was not a sale "at retail" as contemplated by the VRPA.

The court's interpretation also makes sense when reading Section 2 of the VRPA in context with Section 3. Section 3 of the VRPA provides certain exceptions or "allowable circumstances" of a disclosure of the customer's "record or information." Mich. Comp. Laws § 445.1713. For example, one allowable circumstance for disclosure is when the customer consents in writing to the disclosure. *Id.* § 445.1712(a). For a "customer" to consent in writing to the disclosure, the statute contemplates a retailer-customer relationship. Here, that relationship is not between plaintiff and defendant, it is between plaintiff and the third-party reseller. In addition, disclosure is permitted if it is for "the exclusive purpose of marketing goods and services directly to the consumer" and the customer is informed in writing of the ability to opt-out of such disclosures. *Id.* 445.1712(d). Again, the plain reading of this portion of the statute means that the customer is informed in writing by the person selling the magazine—here, the third-parties, not defendant (*i.e.*, the "point of sale")—of the ability to opt-out. In other words, a retailer-customer relationship

is contemplated and the protections arise out of the transaction the retailer is then "engaged" in.

The court's interpretation of the statute also makes common sense. It is axiomatic that "[s]tatutes, regulations, and rules of the court must be read in a 'straightforward' and 'commonsense' manner." *In re Laurain*, 113 F.3d 595, 597 (6th Cir. 1997) (citing *Bartlik v. United States Dep't of Labor*, 62 F.3d 163, 165–66 (6th Cir. 1995) (en banc)). *See also United States v. Miami University*, 294 F.3d 797, 812 (6th Cir. 2002) ("'We read statutes and regulations with an eye to their straightforward and commonsense meanings.'"). A common sense reading of the VRPA would protect customers from unauthorized disclosures by their retailer. When a magazine is purchased, the information that forms the "record" under the VRPA is provided to the seller. It is the seller who is in a position to disclose the customer's record in the first instance. It is this disclosure that the VRPA regulates. In this case, the seller is not the defendant; the sellers are third-party resellers. Thus, to the extent there were any disclosures affecting plaintiff and the class members, the VRPA only covers any disclosures made by the third-party resellers.

The court is also mindful that, "[t]o effectuate the intent of the Legislature, we interpret every word, phrase, and clause in a statute to avoid rendering any portion of the statute nugatory or surplusage." *Herald Co., Inc. v. Eastern Mich. Univ. Bd. of Regents*, 719 N.W.2d 19, 23–24 (Mich. 2006) (footnote omitted). Here, plaintiff's reading of the statute would render the portion of the statute "other than the customer" surplusage because, under plaintiff's reading, there is no need for a retailer-customer relationship. Such a reading offends the rule of statutory construction that words and phrases shall be read to avoid rendering any portion of the statute surplusage. *See Robinson v. City of*

*Lansing*, 782 N.W.2d 171, 181 (Mich. 2010) ("[S]tatutory provisions should not be construed in a manner that renders language within those provisions meaningless[.]")

Plaintiff contends that, "even when [defendant] uses subscription agents, it is undisputed that [defendant] is still the actual entity that sells magazine subscriptions directly to customers 'at retail.'" (Pl's. Resp. Br. at 20–21). Plaintiff points to the deposition testimony of Time's Vice President of Marketing, Scott Breininger. Breininger testified at his deposition that, instead of selling multiple subscriptions to resellers, who then resell the subscription to customers such as plaintiff and the class members, the resellers first obtain an order from a customer and then purchase the subscription from defendant. Thus, plaintiff argues that defendant is still the entity that sells the magazine subscriptions to the customers. Plaintiff's argument fails.

Defendant has multiple "resale agreements" with third-parties, such as Magazines.com. These resale agreements require the third-parties to sell subscriptions to customers, while defendant simply delivers the subscriptions. In these resale agreements, each particular reseller agrees to "provide a toll free customer service number" for purchasers of subscriptions. (Def's. Mot. Ex. F, Resale Agreement between defendant and Magazines.com). Moreover, the reseller acknowledges being the "retailer and reseller of all magazine subscriptions." (*Id.*). The agreements reflect that the third-party is the reseller of the magazines and the point of contact for customers. This is different than a subscription agent who essentially serves as a middleman. The court agrees with defendant that the fact that defendant did not first sell a packet of subscriptions to third-party sellers for resale is a distinction without a difference. Defendant correctly reasons "[t]hat third-party sellers sell the subscriptions first, and then (sometimes) remit

payment to [defendant], as opposed to 'buying' subscriptions from [defendant] up-front and re-selling them to subscribers, [which] does not change that the third-party seller is transacting with the 'customer' 'at retail.'" (Def's. Resp. Br. at 9).

For these reasons, defendant is entitled to summary judgment on the VRPA claim.

C. The Unjust Enrichment Claim[1]

Defendant also seeks summary judgment on plaintiff's unjust enrichment claim. Plaintiff is proceeding on an individual basis, rather than on a classwide basis, on the unjust enrichment claim. Defendant is entitled to summary judgment on this claim.

To succeed on an unjust enrichment claim under Michigan law, the plaintiff is required to prove "(1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v. Bank of New York Mellon*, 831 N.W.2d 897, 905 (Mich. Ct. App. 2012). "'One is not unjustly enriched . . . by retaining benefits involuntarily acquired which law and equity give him absolutely without any obligation on his part to make restitution.'" *Id.* at 23 (citations omitted). In other words, "'[n]o person is unjustly enriched unless the retention of the benefit would be unjust.'" *Tkachik v. Mandeville*, 790 N.W.2d 260, 266 (Mich. 2010) (quoting *Buell v. Orion State Bank*, 41 N.W.2d 472 (Mich. 1950)).

Defendant argues that plaintiff did not confer a benefit directly to defendant because she purchased magazines from third-party resellers, not from defendant. Moreover,

---

[1] This claim is brought as an alternative claim to plaintiff's breach of contract claim. It is undisputed that the parties do not have a contractual relationship. Thus, plaintiff cannot proceed on a breach of contract theory.

defendant contends that the alleged detriment to plaintiff—a portion of the magazine price going towards ensuring confidentiality—is not supported by any evidence.

Plaintiff opposes summary judgment on the unjust enrichment claim in a footnote of her brief. *See* (Pl's Resp. Br. at 3–4 n.2). First, plaintiff says that it is undisputed that she paid defendant for her magazine subscriptions through a subscription agent. Second, plaintiff argues that defendant profited off of its subscriber list revenue benefit to her detriment.

Here, assuming that defendant received a benefit from plaintiff— (1) the discounted purchase price of the magazines, which, eventually was paid to defendant from third-party resellers, and (2) plaintiff's personal reading information—plaintiff has not established that defendant's retention of the benefit would be unjust. Plaintiff's theory is that retention of the benefit is unjust because defendant violated the VRPA. However, as explained, defendant is entitled to summary judgment on the VRPA claim. Thus, plaintiff has not offered any evidence that establishes an unjust retention of benefits by the defendant. Defendant is entitled to summary judgment on the unjust enrichment claim.

D. Article III Standing and Subject-Matter Jurisdiction

Although the court denied defendant's motion to dismiss on the grounds that plaintiff lacks Article III standing, defendant raises the issue again. Defendant argues that plaintiff does not have Article III standing because the only injury alleged is a statutory injury under the VRPA. The court sees no reason to revisit its prior ruling. For the reasons explained in the court's order denying defendant's motion to dismiss, plaintiff has Article III standing.

Defendant also argues that the court lacks subject-matter jurisdiction because Michigan law prohibits class actions for statutory damages where the statute at issue does

not expressly authorize such suits. *See* Mich. Court Rule 3.501(A)(5) ("An action for a penalty or minimum amount of recovery without regard to actual damages imposed or authorized by statute may not be maintained as a class action unless the statute specifically authorizes its recovery in a class action."). Here, defendant contends that the VRPA does not authorize class actions for statutory damages, and, therefore, the court lacks subject-matter jurisdiction to proceed. The court disagrees.

Plaintiff's action is brought under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The Supreme Court addressed a similar issue in *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). New York law, similarly to Michigan, prohibits class actions in suits seeking penalties or statutory minimum damages. *Shady Grove*, 559 U.S. at 396 (citation omitted). The Court held that the Federal Rules of Civil Procedure, rather than New York law, applied because the New York law prohibiting statutory-damage class actions was procedural in nature. *Id.* at 408–09. The Court recognized that its holding may result in forum shopping. However, "[t]he short of the matter is that a Federal Rule governing procedure is valid whether or not it alters the outcome of the case in a way that induces forum shopping. To hold otherwise would be to 'disembowel either the Constitution's grant of power over federal procedure' or Congress's exercise of it." *Id.* at 416 (citation omitted).

This case is no different than *Shady Grove*. The issue is the same: whether Michigan's court rule trumps application of the Federal Rules of Civil Procedure in this specific instance. The Supreme Court has already decided the issue. Federal Rule of Civil Procedure 23 governs class actions in federal court; MCR 3.501(A)(5) has no application

in this case. Thus, defendant's argument that the court lacks subject-matter jurisdiction is without merit.

### III. DEFENDANT'S MOTION TO STAY/FOR CERTIFICATION

Finally, defendant seeks an order staying this matter until the United States Supreme Court issues its decision in *Spokeo, Inc. v. Robins*, 742 F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S.Ct. 1892 (2015) (No. 13-1339, OT 2015 Term). In *Spokeo*, which has already been argued before the Court, the Court is considering whether a statutory injury is sufficient to allege an injury-in-fact for purposes of Article III standing. The court sees no reason to wait for the Supreme Court to issue an opinion in *Spokeo* given that there is no certainty that *Spokeo* is going to have an impact on this case.

In addition, defendant seeks to certify certain questions regarding the interpretation of the VRPA to the Michigan Supreme Court. Having addressed the statutory interpretation questions above, defendant's request is moot. Federal courts are fully equipped to address state law matters, even when there is a dearth of state law authority. When a federal district court applies Michigan substantive law in the absence of Michigan Supreme Court precedent, the court must anticipate how the Michigan Supreme Court would decide the particular issues presented. *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607–08 (6th Cir. 2012) (citing *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys. Inc.*, 249 F.3d 450, 454 (6th Cir. 2001)). The court's analysis above does just that, applying Michigan's statutory interpretation principles. Thus, the court declines to certify any questions to the Michigan Supreme Court.

IV. CONCLUSION

For the reasons explained above, defendant's motion for summary judgment is GRANTED, plaintiff's motion for summary judgment is DENIED, and defendant's motion to stay/for certification is DENIED. This case is DISMISSED.

IT IS SO ORDERED.

Dated: February 16, 2016

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 16, 2016, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk